# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

RENALDA BENALLY, as Administrator of the Estate of GIBSON BENALLY, and on her own behalf,

    Plaintiff,

v.

COCONINO COUNTY;
COCONINO COUNTY JAIL DISTRICT;
JAMES DRISCOLL, Sheriff of Coconino County;
BRET AXLUND, Chief Deputy Sheriff of Coconino County;
AB STAFFING SOLUTIONS LLC;
MEDICAL DIRECTOR LINDSEY ROBBINS;
NURSE SUPERVISOR LISA HIRSCH
NURSE LEANN JAMES;
NURSE SHEILA LAWVER;
NURSE SHELLY CERSOSIMO;
NURSE SUMMER WOLFE;
NURSE FATIMA LAH;
NURSE DAYNE HEATH;
NURSE JANEEN FRASER;
NURSE TATE;
DETENTION SERGEANT OBRIEN;
NAVAJO COUNTY JAIL DISTRICT;
NAVAJO COUNTY;
DAVID CLOUSE, Sheriff of Navajo County;
ERNIE GARCIA, Chief Deputy Sheriff of Navajo County;
ADVANCED CORRECTIONAL HEALTHCARE, INC.;
USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C.;
WEXFORD HEALTH SOURCES, INC.;
NURSE DEBORAH WILLIAMS;
NURSE DESIREE SHIELDS;
NURSE APRIL PERKINS;

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Renalda Benally, as Administrator of the Estate of Gibson Benally and on her own behalf, brings this action against the above-named Defendants, and states as follows:

## PARTIES

1. Plaintiff RENALDA BENALLY is the daughter of GIBSON BENALLY, and the duly appointed Administrator of the Estate of Gibson Benally. Mr. Benally's estate was filed in the Probate Division of the Superior Court of Navajo County, Arizona, and Renata Benally was appointed as the estate's administrator.

1. Defendants COCONINO COUNTY and the COCONINO COUNTY JAIL DISTRICT (collectively, "COCONINO COUNTY") are political subdivisions of the State of Arizona. They are authorized to sue and be sued under Arizona law. They operate and oversee the Coconino County jail.

2. Defendant James DRISCOLL is the elected sheriff of Coconino County. He is statutorily responsible for the management of the Coconino County jail. He was also responsible for supervising other employees and for ensuring that all Coconino County Jail policies and regulations were properly implemented for the benefit and safety of the prisoners in the jail. He is sued in his official and individual capacities.

3. Defendant Brent AXLUND is the Chief Deputy Sheriff of Coconino County. He was also responsible for supervising other employees and for ensuring that all Coconino County Jail policies and regulations were properly implemented for the benefit and safety of the prisoners in the jail.

4. AB STAFFING SOLUTIONS LLC is an Arizona company. During the events giving rise to this case, it had a contract with the Coconino County Jail District to provide medical staff at the Coconino County jail.

5.     At all times relevant to her involvement in the case, Medical Director Lindsey ROBBINS was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC at the Coconino County Jail. She was responsible for providing medical care to prisoners at the Coconino County Jail, including Gibson Benally, at all times relevant to this complaint. She was responsible for effectively applying Coconino County Jail policies and to ensure the safety of prisoners.

6.     At all times relevant to her involvement in the case, Nurse Supervisor Lisa HIRSCH was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC at the Coconino County Jail. She was responsible for providing medical care to prisoners at the Coconino County Jail, including Gibson Benally, at all times relevant to this complaint. She was responsible for effectively applying Coconino County Jail policies and to ensure the safety of prisoners.

7.     Defendant Nurse Sheila LAWVER worked as a medical provider at the Coconino County jail.  On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

8.     Defendant Nurse Shelly CERSOSIMO worked as a medical provider at the Coconino County jail.  On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

9.     Defendant Nurse Summer WOLFE worked as a medical provider at the Coconino County jail.  On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

10. Defendant Nurse Fatima LAH worked as a medical provider at the Coconino County jail. On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

11. Defendant Nurse Dayne HEATH worked as a medical provider at the Coconino County jail. On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

12. Defendant Nurse Janeen FRASER worked as a medical provider at the Coconino County jail. On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

13. Defendant Nurse TATE. On information and belief, this defendant was employed by COCONINO COUNTY and/or by AB STAFFING SOLUTIONS LLC.

14. Defendant DETENTION SERGEANT OBRIEN is a correctional officer at the Coconino County jail.

15. Defendants NAVAJO COUNTY and the NAVAJO COUNTY JAIL DISTRICT (collectively, "NAVAJO COUNTY") are political subdivisions of the State of Arizona. They are authorized to sue and be sued under Arizona law. They operate and oversee the Navajo County jail.

16. David CLOUSE is the elected sheriff of Navajo County. He is statutorily responsible for the management the Navajo County jail. He was also responsible for supervising other employees and for ensuring that all Navajo County Jail policies and regulations were properly implemented for the benefit and safety of the prisoners in the jail. He is sued in his individual and official capacities.

17. Defendant Ernie GARCIA is Chief Deputy Sheriff of Navajo County. He was also responsible for supervising other employees and for ensuring that all Navajo County Jail policies and regulations were properly implemented for the benefit and safety of the prisoners in the jail.

18. Defendant ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ACH") is a private correctional contractor. Through March 13, 2022, it was the healthcare provider for the Navajo County jail.

19. Defendant USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C. is a professional services company. On information and belief, through March 13, 2022, it subcontracted to Defendant ACH to provide medical staffing for the Navajo County jail.

20. Defendant WEXFORD HEALTH SOURCES, INC. is a private correctional contractor. Beginning on March 14, 2022, it was the healthcare provider for Navajo County jail.

21. The following defendants are medical personnel who worked at the Navajo County jail:

22. Defendant Nurse Deborah WILLIAMS worked as a medical provider at the Navajo County jail. On information and belief, this defendant was employed by NAVAJO COUNTY, ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and/or WEXFORD HEALTH SOURCES, INC.

23. Defendant Nurse Desiree SHIELDS worked as a medical provider at the Navajo County jail. On information and belief, this defendant was employed by NAVAJO COUNTY, ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and/or WEXFORD HEALTH SOURCES, INC.

24. Defendant Nurse April PERKINS worked as a medical provider at the Navajo County jail. On information and belief, this defendant was employed by NAVAJO COUNTY, ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and/or WEXFORD HEALTH SOURCES, INC.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

25. Venue is proper under 28 U.S.C. § 1391(b). One or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## FACTS

26. Gibson Benally was a 53-year-old man who lived in Chinle, Arizona with his family.

27. On Friday, March 4, 2022, Mr. Benally was arrested and brought to the Navajo County Jail in Holbrook, Arizona.

28. During intake, Mr. Benally told staff he had high blood pressure and suffered from back pain. He told the Jail staff that he was being treated with medication for both of these conditions. He also gave Jail staff the name of his primary care physician. This information was recorded on Mr. Benally's intake form.

29. High blood pressure is a potentially serious medical condition that requires both monitoring and appropriate medication.

30. Back pain severe enough to require medication is a serious medical condition.

31. The information Mr. Benally provided should have prompted action. But because it was a weekend, nobody at the jail attempted to measure Mr. Benally's blood pressure, and for several days nobody attempted even to begin filling his prescriptions.

32. Over the course of his detention at the Navajo County jail, medical staff made little effort to provide Mr. Benally with his blood pressure and pain medication.

33. After a delay of several days in verifying Mr. Benally's medications, staff at Navajo County jail administered his medications sporadically, and Mr. Benally went days at a time without receiving any of his medications, and without blood pressure medications of any kind. On information and belief, the medical staff who failed to obtain or administer Mr. Benally's medications included the following individuals: Defendants PERKINS, SHIELDS, and Deborah WILLIAMS.

34. Without his medications, Mr. Benally's health deteriorated. During the relatively short period he was at the Navajo County jail, he lost weight, had sunken eyes, lost color in his face, and felt a great deal of pain and discomfort.

35. These were signs of a serious medical condition, but It was obvious even to a lay person that the Defendants PERKINS, SHIELDS, and WILLIAMS, who were aware of Mr. Benally's sporadic medication, but they failed to intervene to secure appropriate medical care for Mr. Benally.

36. The result was that when Mr. Benally was transferred from the Navajo County Jail to the Coconino County jail on March 24, 2022, Coconino staff measured his blood pressure at 166/117, which is often treated as a hypertensive emergency.

37. Once he was at Coconino County jail, Mr. Benally told Defendants Leann JAMES and Sheila LAWVER, nurses at Coconino County Jail, that he suffered from high blood pressure and back pain, and was on several medications to treat these serious medical conditions.

38. That information was corroborated by the Coconino jail's own medical records going back to 2017, which showed that in the past Mr. Benally had been measured multiple times with high blood pressure.

39. A history of hypertension indicates an elevated risk of multiple serious medical conditions, including heart failure, stroke, blood clots, and pulmonary embolism.

40. Defendants Leann JAMES and Sheila LAWVER communicated Mr. Benally's condition to other nurses at the Jail, including Defendants Shelley CERSOSIMO, Summer WOLFE, and Fatima LAH.

41. Defendants JAMES, LAWVER, CERSOSIMO, WOLFE, and LAH knew Mr. Benally had serious medical conditions, knew he was not receiving his medication as prescribed, and knew he was losing weight, feeling unwell, looking unwell, and experiencing other serious symptoms.

42. Despite this knowledge, Defendants JAMES, LAWVER, and CERSOSIMO, WOLFE, and LAH did not contact Mr. Benally's doctor or take the necessary action to ensure that Mr. Benally received prompt medical attention for his emergent symptoms.

43. Around 7:00 p.m. on April 17, 2022 Mr. Benally reported, on information and belief, problems with dizziness and shortness of breath. He was seen by Defendant Nurse Dayna HEATH, but she made no attempt to diagnose the cause of his condition.

44. Around or shortly after midnight on the morning of April 18, 2022, Coconino County jail correctional staff called Defendant Nurse HEATH to Mr. Benally's bunk in F-Pod.

Mr. Benally told Defendant HEATH that he was feeling very weak and dizzy. His heart rate was elevated and his blood pressure was high, at 142/106. Defendant HEATH, however, left without attempting to diagnose the cause of Mr. Benally's symptoms. Instead she told him to rest on his left side and notify medical staff if his symptoms changed.

45. At around 4:55 p.m. on the afternoon of April 18, Mr. Gibson attempted to stand up from his bunk and was unable to do so. Another detainee on Mr. Benally's pod contacted a guard, Defenant OBRIEN, who contacted Defendant Janeen FRASER, a nurse.

46. Nurse FRASER entered the pod at approximately 5:05 p.m. Mr. Benally told Nurse FRASER that he was short of breath and that he was dizzy. Nurse FRASER saw that other detainees were trying to help Mr. Benally by placing wet washcloths on his head and chest.

47. Nurse FRASER took Mr. Benally's vitals, and upon seeing that they were within normal limits, she made no other attempt to identify the cause of his symptoms. Instead she told Mr. Benally to drink more water, watched as he was escorted to a pod table to eat dinner, and left the pod at approximately 5:10 p.m.

48. Almost immediately, while he was still at the pod table, Mr. Benally became dizzy. Other detainees on the pod came to help him, and contacted Defendant OBRIEN. Defendant OBRIEN called Nurse FRASER back to the pod, and she arrived at approximately 5:13 p.m. Nurse FRASER was told that Mr. Benally could not stand up and was dizzy, and had begun placing a wet washcloth on his head. Nurse FRASER began to examine Mr. Benally at the table, during which Mr. Benally placed his head on the table multiple times, and was hyperventilating so vigorously that the sound was picked up by the jail pod video cameras. Nurse FRASER measured Mr. Benally's vitals, showing dramatically increased blood pressure

and on O2 saturation of 92% which is a sign of hypoxia, or a lack of oxygen entering the bloodstream.

49.     Nurser FRASER responded by repeatedly instructing Mr. Benally to slow down his breathing.  After he did, Defendant OBRIEN had to assist Mr. Benally to his bunk.  When that was done, Nurse FRASER left the dorm at approximately 5:21 p.m.

50.     Nurse FRASER did not try to determine the cause of Mr. Benally's symptoms, seeking emergency assistance, or ordering monitoring of Mr. Benally.

51.     A few minutes later, at 5:25 p.m., Mr. Benally began breathing loudly at his bunk.  At approximately 5:32 p.m. another detainee again pressed the emergency call button and told Defendant OBRIEN that Mr. Benally's chest pains were getting worse.

52.     Defendant OBRIEN relayed this information to the jail's medical unit, and at 5:36 p.m. another nurse, Defendant, referred to as a "different detention nurse."[1]  On information and belief, this person was either Nurse JAMES, Nurse HEATH, or Nurse TATE, who, on information and belief, were the other three nurses on duty at the jail at the time.  Plaintiff alternatively alleges that Nurses JAMES, HEATH, and TATE were each the "different detention nurse" who transported Mr. Benally in the wheelchair.

53.     The "different detention nurse" (Nurses JAMES, HEATH, or TATE) did not attempt to diagnose the cause of Mr. Benally's condition or obtain emergency help for him.  Instead the "different detention nurse" (Nurses JAMES, HEATH, or TATE) delivered Mr. Benally to the jail's medical unit, for "monitoring." At the time he was brought to the medical unit, his breathing was so labored that it was notable on recordings picked up by the jail's video cameras.

---

[1]  The description of a "different detention nurse" is made in the Investigation Report prepared by the Coconino County Sheriff regarding Mr. Benally's death:

54. Defendant Nurse FRASER was notified of these events by 5:53 at the latest, including Mr. Benally's third emergency and transport to the medical unit, but she took no steps to determine the cause of Mr. Benally's continuing condition and took no steps to obtain medical care for him.

55. Mr. Benally's transfer to the jail's medical unit did not mean that his symptoms were being addressed or diagnosed. He was not attended by medical personnel, no monitoring devices were placed on him, and he was given no medical interventions such as oxygen. Instead, he was simply placed in another cell, and he was "monitored" by way of occasional cell checks into his cell.

56. Defendant OBRIEN assisted in transporting Mr. Benally from the pod to the jail's medical unit, but despite his alarming symptoms being ignored by the jail's medical staff, Defendant OBRIEN did not intervene and obtain medical help for Mr. Benally.

57. Despite his emergent condition, Mr. Benally was left unmonitored in the medical unit. Jail records indicate that Mr. Benally was left unmonitored for around twenty minutes after arriving at the medical unit.

58. Defendant FRASER knew that chest pain and shortness of breath, accompanied by the other symptoms that Mr. Benally had reported, was an emergent medical issue that required immediate evaluation and treatment by in an emergency-room setting.

59. Despite this knowledge, Defendant FRASER failed to take (or instruct Jail staff to take) any meaningful response to Mr. Benally's medical emergency. She did not instruct the Jail staff to transport Mr. Benally to the emergency room where he could be evaluated, closely monitored, and treated with supplemental oxygen, anti-coagulation, medication or other methods

to stabilize his condition. Instead, she told Mr. Benally to calm down and repeatedly tried to leave his side, even though non-medical staff could see his life was in serious danger.

60. Defendant FRASER's command that Mr. Benally calm down and slow his breaching exacerbated put his life further in danger, as his oxygen saturation indicated that he would not be able to receive sufficient oxygen if he slowed down his breathing.

61. It was obvious that Defendant FRASER's instructions were incorrect and reckless, but the Defendant JAMES, HEATH, and TATE who were was on duty, aware of Mr. Benally's medical condition, and who communicated with Defendant FRASER at the time, failed to intervene to secure appropriate medical care for Mr. Benally.

62. At 6:03 p.m., a guard arrived on the medical unit to conduct cell checks. Upon looking into Mr. Benally's cell, the guard noticed Mr. Benally face-down and attempted to gain his attention. Mr. Benally was unresponsive, and the guard called a "Code 3." Staff arrived and attempted to revive Mr. Benally, but they were unable to do so. He was pronounced dead shortly thereafter.

63. An autopsy was performed on Mr. Benally. The autopsy report documented Mr. Benally's cause of death as pulmonary thromboembolism due to deep vein thrombosis.

## COUNT I
## 42 U.S.C. § 1983 – DENIAL OF MEDICAL CARE
## (DEFENDANTS – NAVAJO COUNTY JAIL)

64. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

65. In the manner described more fully above, Defendants WILLIAMS, SHIELDS, and PERKINS were aware of Gibson Benally's medical needs and the seriousness of his medical needs, and knew the risk of harm to Mr. Benally if he did not receive appropriate medical care.

Despite that knowledge, Defendants failed to provide him with proper medical care or access to medical care, or intervene to provide such care, in violation of the United States Constitution.

66. As a result of Defendants' unjustified and unconstitutional conduct, Mr. Benally experienced injuries, including but not limited to pain, suffering, emotional distress, and death.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Benally's rights.

68. Alternatively, Defendants were deliberately indifferent to Mr. Benally's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or reckless indifference to Ms. Boyer's health and safety.

69. Mr. Benally's injuries were also caused by the policies and practices of NAVAJO COUNTY, NAVAJO COUNTY JAIL DISTRICT, ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and WEXFORD HEALTH SOURCES, INC.

70. Specifically, there exist policies and widespread practices within the Navajo County Jail, and the facilities services by ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and WEXFORD HEALTH SOURCES, INC. pursuant to which detainees receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which (1) healthcare staff commonly disregard reports by patients of objectively serious medical needs; (2) healthcare staff refuse to provide adequate treatment to patients complaining of serious medical conditions or in need of medications; (3) healthcare staff fail to ensure continuity of care among medical and correctional staff; (4) employees prioritize profits and maintaining a competitive edge as a low-cost vendor at the expense of constitutionally adequate care; (5) inadequate levels of health care staffing are provided, including inadequately qualified staff; and

(6) healthcare staff fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper.

71.     These policies and practices were allowed to flourish because Defendants NAVAJO COUNTY, NAVAJO COUNTY JAIL DISTRICT, CLOUSE, GARCIA, ACH, USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., and WEXFORD HEALTH SOURCES, INC. were indifferent do them. These same defendants directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, the same defendants violated Mr. Benally's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations. The above-described policies and practices were able to exist and thrive because these same defendants were deliberately indifferent to the problem, thereby effectively ratifying it.

**COUNT II**
**42 U.S.C. § 1983 – DENIAL OF MEDICAL CARE**
**(DEFENDANTS – COCONINO COUNTY JAIL)**

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

73.     In the manner described more fully above, Defendants JAMES, LAWVER, CERSOSIMO, WOLFE, LAH, HEATH, FRASER, TATE, and OBRIEN were aware of Gibson Benally's medical needs and the seriousness of his medical needs, and knew the risk of harm to Mr. Benally if he did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide him with proper medical care or access to medical care, or intervene to provide such care, in violation of the United States Constitution.

74. As a result of Defendants' unjustified and unconstitutional conduct, Mr. Benally experienced injuries, including but not limited to pain, suffering, emotional distress, and death.

75. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Benally's rights.

76. Alternatively, Defendants were deliberately indifferent to Mr. Benally's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or reckless indifference to Ms. Boyer's health and safety.

77. Mr. Benally's injuries were also caused by the policies and practices of COCONINO COUNTY, COCONINO COUNTY JAIL DISTRICT, and AB STAFFING SOLUTIONS LLC.

78. Specifically, there exist policies and widespread practices within the Coconino County jail, pursuant to which detainees receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which (1) healthcare staff commonly disregard reports by patients of objectively serious medical needs; (2) healthcare staff refuse to provide adequate treatment to patients complaining of serious medical conditions or in need of medications; (3) healthcare staff fail to ensure continuity of care among medical and correctional staff; (4) inadequate levels of health care staffing are provided, including inadequately qualified staff; and (5) healthcare staff fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper.

79. These policies and practices were allowed to flourish because Defendants COCONINO COUNTY, COCONINO COUNTY JAIL DISTRICT, DRISCOLL, AXLUND, ROBBINS, HIRSCH, and AB STAFFING SOLUTIONS LLC. were indifferent do them. These same defendants directly encouraged the very type of misconduct at issue in this case, failed to

provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, the same defendants violated Mr. Benally's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations. The above-described policies and practices were able to exist and thrive because these same defendants were deliberately indifferent to the problem, thereby effectively ratifying it.

## COUNT III
## MEDICAL MALPRACTICE
### (DEFENDANTS JAMES, LAWVER, CERSOSIMO, WOLFE, LAH, HEATH, FRASER, TATE, WILLIAMS, SHIELDS, and PERKINS)

80. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

81. As described more fully herein, Defendants JAMES, LAWVER, CERSOSIMO, WOLFE, LAH, HEATH, FRASER, TATE, WILLIAMS, SHIELDS, and PERKINS owed Mr. Benally a duty of care similar to medical professionals with similar qualifications.

82. As described more fully herein, Defendants JAMES, LAWVER, CERSOSIMO, WOLFE, LAH, HEATH, FRASER, TATE, WILLIAMS, SHIELDS, and PERKINS breached that their duty of care to Mr. Benally.

83. As a proximate result of these breaches, Mr. Benally was injured, suffered pain and emotional damage, and died.

## COUNT IV
## SURVIVAL
### (ALL DEFENDANTS)

84. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85. In the manner described more fully above, Defendants' wrongful acts and omissions ultimately caused the death of Mr. Benally. In the interim, before he ultimately died, Mr. Benally suffered other damage to his person pursuant to Ariz. Rev. Stat. § 14-3110.

86. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

87. As a result of these actions, Mr. Benally suffered severe injuries, including physical pain, emotional distress, and ultimately death.

88. This Count is brought by the Estate of Gibson Benally, by personal representative Renalda Benally.

## COUNT V
## WRONGFUL DEATH
## (ALL DEFENDANTS)

89. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

90. In the manner more fully described above, the defendants negligently, recklessly, and willfully caused the death of Mr. Benally. Mr. Benally therefore had (as alleged in Counts I – IV above) a valid claim for damages against the Defendants at the time of his death.

91. Therefore, Mr. Benally's daughter, Renalda Benally, and Mr. Benally's other survivors, have suffered, and will continue to suffer, significant emotional distress and harm, including but not limited to the loss of society and companionship with Mr. Benally.

92. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

93. This Count is brought by the Estate of Gibson Benally, by personal representative Renalda Benally, and by Renalda Benally, on her own behalf and on behalf of Mr. Benally's survivors.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (DEFENDANTS JAMES, LAWVER, CERSOSIMO, WOLFE, LAH, HEATH, FRASER, TATE, WILLIAMS, SHIELDS, PERKINS, and OBRIEN)

94. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

95. In the manner described more fully above, by causing the death of Gibson Benally, the Defendants intended to cause both physical and emotional distress.

96. In so doing, the Individual Defendants' conduct was extreme and outrageous and caused Mr. Benally severe, disabling physical distress, emotional distress, and untimely death.

97. The Individual Defendants' conduct also imposed harm on Plaintiff Renalda Benally, who suffered, and continues to suffer, severe emotional harm on account of the Individual Defendants' conduct.

98. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

99. This Count is brought by the Estate of Gibson Benally, by personal representative Renalda Benally, and Renalda Benally, on her own behalf.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: March 12, 2024                    By: */s/ Lee Phillips*

Arthur Loevy *pro hac vice forthcoming*           Lee Phillips, ASB #009540
Stephen Weil *pro hac vice forthcoming*           Law Office of Lee Phillips, P.C.
Maria Makar *pro hac vice forthcoming*            209 N. Elden Street
Megan Porter *pro hac vice forthcoming*           Flagstaff, Az 86001
Loevy & Loevy                                     928.779.1560
311 N. Aberdeen Street                            leephillips@leephillipslaw.com
Chicago, IL 60607
(312) 243-5900