Ashlee B. Hesman, Bar #028874
Kristina R. Rood, Bar #035097
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
ahesman@strucklove.com
krood@strucklove.com

*Attorneys for Coconino County, Coconino County Jail District, James Driscoll, Bret Axlund, Patrick O'Brien, Navajo County, Navajo County Jail District, Ernie Garcia, and David Clouse*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Renalda Benally, as Administrator of the Estate of Gibson Benally, and on her own behalf,<br><br>Plaintiff,<br><br>v.<br><br>Coconino County, et al.,<br><br>Defendants. | NO. 3:24-cv-08049-MTL (MTM)<br><br>**COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (DKT. 65)** |

Defendants Coconino County, Coconino County Jail District, James Driscoll, Bret Axlund, Lisa Hirsch, Leann James, Sheila Lawver, Shelly Cersosimo, Summer Wolfe, Janeen Fraser, Patrick O'Brien, Navajo County Jail District, Navajo County, David Clouse, and Ernie Garcia ("County Defendants") move to dismiss all claims pled against them in Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 65.)[1]

**I.   Background**

The decedent Gibson Benally ("Decedent") was a pre-trial detainee housed at the Navajo County Jail and Coconino County Jail in Arizona from March 4, 2022 to April 18,

---

[1] Pursuant to LRCiv 12.1(c), Defense counsel certifies that they telephonically conferred with Plaintiffs' counsel regarding the "issues asserted in the [M]otion." LRCiv. 12.1(c). Plaintiffs oppose the relief requested.

2022. (Dkt. 65 at ¶¶ 27, 37, 46, 68.)

Plaintiffs allege that Decedent was arrested on March 4, 2022, at which time he was booked into the Navajo County Jail. (*Id.* at ¶¶ 27–28.) Plaintiffs allege that Decedent informed "staff" at intake that he was being treated with medication for high blood pressure and back pain and provided the name of his primary care physician. (*Id.* at ¶ 29.) Plaintiffs allege that "staff" at the Navajo County Jail sporadically provided Decedent his high blood pressure and pain medication after a delay in verifying his medications. (*Id.* at ¶ 34.) Plaintiffs also allege that Decedent "went days at a time without receiving any medications" and his health deteriorated as a result. (*Id.* at ¶ 35.)

Plaintiffs allege that Decedent was transferred to the Coconino County Jail on March 24, 2022, at which time "staff" measured his blood pressure at 166/117. (*Id.* at ¶ 37.) Plaintiffs allege that he notified Nurses James and Lawver that he was being treated with medication for high blood pressure and back pain and that Nurses James and Lawver communicated this to other nurses, including Nurses Cersosimo, Wolfe, and Lah. (*Id.* at ¶¶ 38, 41.) Plaintiffs allege that Nurses James, Lawver, Cersosimo, Wolfe, and Lah did not contact Decedent's primary care physician "or take the necessary action to ensure that [Decedent] received prompt medical attention for his emergent symptoms" despite this knowledge. (*Id.* at ¶ 42.)

Plaintiffs further allege that at approximately 7:00 p.m. on April 17, 2022, Decedent reported that he experienced dizziness and shortness of breath (although Plaintiffs do not identify who Decedent allegedly reported this to). (*Id.* at ¶ 44.) Plaintiffs allege that Nurse Heath saw him in response but did not "diagnose the cause of his condition." (*Id.*) Later that night and/or in the morning of April 18, 2022, Plaintiffs allege that Coconino County Jail "correctional staff" called Nurse Heath to Decedent's cell and notified her that Decedent was weak and dizzy and his blood pressure was 142/106. (*Id.* at ¶ 45.) Plaintiffs allege that she left his cell without diagnosing the cause of his symptoms. (*Id.*)

At approximately 4:55 p.m. on April 18, 2022, Plaintiffs allege Decedent attempted to stand in his cell but was unable to do so. (*Id.* at ¶ 46.) Plaintiffs allege "[a]nother detainee

on [Decedent's] pod contacted [Sergeant] O'Brien, who contacted" Nurse Fraser. (*Id.*) Between 5:05 p.m. and 5:10 p.m., Nurse Fraser took Decedent's vitals, which were within normal limits, and Plaintiffs allege that, although she observed other detainees placing wet washcloths on his head and chest, she did not diagnose the cause of his symptoms and told Decedent to drink water. (*Id.* at ¶¶ 47–48.) Plaintiffs allege that Decedent again became dizzy and other detainees contacted Sergeant O'Brien in response. (*Id.* at ¶ 49.) Sergeant O'Brien again contacted Nurse Fraser, and Plaintiffs allege she arrived back to the pod at 5:13 p.m. (*Id.*) Plaintiffs allege that Nurse Fraser examined Decedent, at which time Plaintiffs allege Decedent placed his head on a table and was hyperventilating. (*Id.* at ¶ 51.) Plaintiffs allege she took his vitals, which showed increased blood pressure and a SpO2 of 92%. (*Id.* at ¶ 52.) Plaintiffs also allege Nurse Fraser advised Decedent to slow his breathing and that Sergeant O'Brien assisted Decedent back to his bunk, at which time Nurse Fraser left the pod. (*Id.* at ¶ 53.)

Plaintiffs allege that, a few minutes later, a detainee notified Sergeant O'Brien that Decedent's chest pains were getting worse and that Sergeant O'Brien relayed that information to the medical unit. (*Id.* at ¶¶ 56–57.) Plaintiffs allege that Sergeant O'Brien and a "nurse" assisted Decedent to the medical unit for monitoring. (*Id.* at ¶¶ 57–58, 62.) Plaintiffs allege that Decedent was not attended by medical personnel in the medical unit, no monitoring devices were placed on him, and he was not given oxygen, and, despite this, Plaintiffs allege that Sergeant O'Brien "did not intervene and obtain medical help." (*Id.* at ¶¶ 61–62.) At approximately 6:03 p.m., Plaintiffs allege "a guard arrived in the medical unit to conduct checks," at which time he observed Decedent unresponsive in his cell. (*Id.* at ¶ 68.) Plaintiffs allege Decedent was pronounced dead shortly thereafter and an autopsy showed his cause of death was a pulmonary thromboembolism due to deep vein thrombosis. (*Id.* at ¶¶ 68–69.)

## II.     Plaintiffs' First Amended Complaint Fails to State a Claim for Relief.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of 'further factual enhancement." *Id*. at 678 (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 662.

A complaint must allege sufficient factual matter that is "plausible on its face." *Id*. at 678. Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. Although in ruling on a Rule 12(b) motion to dismiss, the Court must accept factual allegations in the Complaint as true, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**A.    Plaintiffs' Claims Against the Entity Defendants—i.e., Coconino County, Coconino County Jail District, Sheriff Driscoll (Official Capacity), Navajo County, Navajo County Jail District, and Sheriff Clouse (Official Capacity)—are Duplicative.**

Plaintiffs sue Coconino County, Coconino County Jail District, and Sheriff Driscoll in his official capacity ("Coconino Entity Defendants") for alleged unconstitutional policies, customs, and practices that were the moving force behind an alleged violation of Decedent's rights. (Dkt. 65 at ¶¶ 78–92.) Plaintiffs similarly sue Navajo County, Navajo County Jail District, and Sheriff Clouse in his official capacity ("Navajo Entity Defendants") for alleged unconstitutional policies, customs, and practices that were the moving force behind an alleged violation of Decedent's rights. (*Id.* at ¶¶ 70–77.)

An official capacity suit against a municipal officer is equivalent to a suit against the entity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Plaintiffs' official capacity

4

claims against Sheriff Driscoll and Sheriff Clouse are duplicative of their claims against Coconino County and Navajo County, respectively. Because "sheriffs in Arizona act as final policymakers for their respective counties," the proper Defendants for Plaintiffs' *Monell* claims are Sheriff Driscoll and Sheriff Clouse.[2] *See United States v. Cnty. of Maricopa*, 889 F.3d 648, 650–51 (9th Cir. 2018).

Plaintiffs also bring wrongful death and survival claims against the Coconino Entity Defendants and Navajo Entity Defendants. (Dkt. 65 at ¶¶ 97–112.) "A county jail district … has all the powers, privileges and immunities granted generally to municipal corporations by the constitution and laws of this state…." A.R.S. § 48-4002(B). "A district …, acting through its board of directors and the sheriff, may" sue and be sued. A.R.S. § 48-4002(D)(4). "[T]he county sheriff shall exercise all powers and duties in operating and managing the properties of the district…." A.R.S. § 48-4002(F). Because a jail district may be sued through its sheriff, Sheriff Driscoll and Sheriff Clouse, not the Coconino County Jail District or the Navajo County Jail District, are the proper Defendants for these claims.

Additionally, Sheriff Driscoll and Sheriff Clouse, not Coconino County or Navajo County, are the proper Defendants for these claims. A sheriff is a county officer under A.R.S. § 11-401(A)(1), and the legislature delineated certain powers and responsibilities for the sheriff, not the county. A.R.S. § 11-441. Indeed, "[a] county is not vicariously liable for the conduct of an elected official whose duties are imposed by state statutes and constitutional provisions." *Sarkis v. Maricopa Cnty.*, 2021 WL 1991857, at *2 (D. Ariz. May 18, 2021) (citation omitted). "[A] county is not liable for torts committed by its sheriff's office because it lacks control over how the sheriff conducts its official duties." *Id.* (citation omitted). Because Plaintiffs seemingly intend to hold the Coconino Entity Defendants and Navajo County Defendants vicariously liable (although this is not explicitly stated in the FAC), Sheriff Driscoll and Sheriff Clouse are the proper Defendants for these

---

[2] Because a jail district can only be sued through "its board of directors and the sheriff," Sheriffs Driscoll and Clouse, not the Jail Districts, are the proper Defendants. A.R.S. § 48-4002(D)(4).

state law claims.

Accordingly, any claims against Coconino County, Coconino County Jail District, Navajo County, and Navajo County Jail District are duplicative and must be dismissed, as they are not the proper Defendants for Plaintiffs' Monell or state law claims. Even if the Court does not dismiss them as duplicative, the Court should dismiss them for failure to state a claim as set forth in more detail below.

### B. Plaintiffs' § 1983 Claims Fail (Claims I and II).[3]

#### 1. Plaintiffs Fail to State a Plausible Underlying Constitutional Violation.

Fourteenth Amendment claims for inadequate medical care are evaluated under an "objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citation omitted). To establish a claim for inadequate medical care under the Fourteenth Amendment, Plaintiffs must show that (1) Defendants made an intentional decision with respect to the conditions under which Decedent was confined; (2) those conditions put Decedent at substantial risk of suffering serious harm; (3) Defendants did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of Defendants' conduct obvious; and (4) by not taking such measures, Defendants caused Decedent's injuries. *Id.* at 1125.

As to the second element, "the presence of a medical condition that significantly affects an individual's daily activities [] or the existence of chronic and substantial pain are examples of indications that [an inmate] has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997). "With respect to the

---

[3] Although Plaintiffs do not specify in the Complaint, Plaintiffs' § 1983 claims are survival actions brought by the Estate, as they seek to recover for injuries allegedly experienced by Decedent. (Dkt. 65 at ¶¶ 77, 91.) *See Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117, 1124 (W.D. Wash. 2012) ("A § 1983 claim 'that accrued before death survives the decedent when state law authorizes a survival action as a suitable remed[y] ... not inconsistent with the Constitution and laws of the United States....'").

6

1 third element, [Defendants'] conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1125 (citations omitted). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (citation omitted). Thus, Plaintiffs must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### a. Plaintiffs' Claim Against Sergeant O'Brien Fails.

Plaintiffs allege that on April 18, 2022 at approximately 4:55 p.m., a detainee in Decedent's housing unit notified Sergeant O'Brien that Decedent "attempted to stand up from his bunk and was unable to do so," and Sergeant O'Brien immediately contacted a nurse in response; that, at approximately 5:10 p.m., a detainee in Decedent's housing unit notified Sergeant O'Brien that Decedent was dizzy, and Sergeant O'Brien, again, immediately contacted a nurse in response; and that, at approximately 5:32 p.m., a detainee in Decedent's housing unit notified Sergeant O'Brien that Decedent's "chest pains were getting worse," and Sergeant O'Brien, again, immediately contacted a nurse in response. (Dkt. 65 at ¶¶ 46, 49–52, 57–58.) Plaintiffs also allege that Sergeant O'Brien "assisted in transporting [Decedent] from [his housing unit] to the jail's medical unit, but despite his alarming symptoms being ignored by the jail's medical staff, [Sergeant] O'Brien did not intervene and obtain medical help for [Decedent]." (*Id.* at ¶ 62.) Plaintiffs allege Sergeant O'Brien knew of Decedent's serious medical needs, "failed to provide him with … access to medical care, or intervene to provide such care," and, as a result, Decedent "experienced injuries." (*Id.* at ¶¶ 79–80.)

The above allegations fail to create a plausible inference that Sergeant O'Brien was objectively deliberately indifferent. As an initial matter, Plaintiffs' allegation that Sergeant O'Brien was aware of Decedent's serious medical needs is nothing more than a conclusory allegation, which is insufficient to state a claim against him. Indeed, Plaintiffs allege that Sergeant O'Brien is a "correctional officer as the Coconino County [J]ail." (*Id.* at ¶ 15.) They do not allege that he has any medical education, training, or experience such that it is

7

plausible to infer that he knew Decedent was experiencing a serious medical need based on the symptoms Decedent presented with. (*See id.*)

Even if Plaintiffs pled non-conclusory allegations that Sergeant O'Brien was aware of Decedent's serious medical need, Plaintiffs do not plead sufficient factual allegations to create a plausible inference that Sergeant O'Brien failed to take available measures to abate any risk to Decedent. Their allegations show to the contrary. Each time Sergeant O'Brien was allegedly notified of Decedent's medical complaints, he immediately notified nursing staff, who responded to Decedent's housing unit within minutes. (*Id.* at ¶¶ 46, 48–52, 56–57, 62.) Additionally, when Sergeant O'Brien was notified that Decedent required transport to the medical unit for additional medical care, Sergeant O'Brien immediately assisted him to the medical unit to obtain that care. (*Id.* at ¶ 62.) Plaintiffs fail to allege that Sergeant O'Brien, who is not medically trained, was required to take any additional action to obtain medical care for or intervene on behalf of Decedent. Plaintiffs therefore fail to state a claim against Sergeant O'Brien.

### b. Plaintiffs' Claim Against Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, and Deputy Sheriff Garcia Fails.

Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, and Deputy Sheriff Garcia may be held liable in their individual capacities as supervisors under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted). "The requisite causal connection can be established ... by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (internal quotations and citations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to

the rights of others." *Id.* (citation omitted).

Here, Plaintiffs' claim against Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, and Deputy Sheriff Garcia in their individual capacities fails because Plaintiffs did not plead any underlying factual allegations against them. (*See generally* Dkt. 65.) Instead, Plaintiffs pled only in conclusory fashion that Coconino County's and Navajo County's alleged unconstitutional policies and practices were allowed to "flourish" because of Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, and Deputy Sheriff Garcia's alleged deliberate indifference to them; that they "encouraged the very type of misconduct at issue"; "failed to provide adequate training and supervision of healthcare and correctional employees"; and "failed to adequately punish and discipline prior instances of similar misconduct." (Dkt. 65 at ¶¶ 77, 91.) These allegations are woefully inadequate to create a plausible inference that either Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, or Deputy Sheriff Garcia personally participated in any violation of Decedent's rights. *See Starr*, 652 F.3d at 1207. To illustrate, Plaintiffs do not plead that these Defendants knew of and ratified the medical care provided to Decedent, such that it is plausible to infer they "encouraged" and/or were personally involved in his care. Plaintiffs' conclusory allegations against Sheriff Driscoll, Deputy Sheriff Axlund, Sheriff Clouse, and Deputy Sheriff Garcia are therefore insufficient to state a claim.

      **c.**      **Plaintiffs' Claim Against Lisa Hirsch, Sheila Lawver, Leann James, Shelly Cersosimo, Summer Wolfe and Janeen Fraser Fails.**

First, similar to the aforementioned claim against the other individual Defendants, Plaintiffs' claim against Defendants Lisa Hirsch, Sheila Lawver, Shelly Cersosimo and Summer Wolfe in their individual capacities fails because Plaintiffs failed to plead sufficient factual allegations to create a plausible inference that they personally participated in any violation to Decedent's rights. *See Starr*, 652 F.3d at 1207.

Specifically, with respect to Defendant Lisa Hirsch, Plaintiff makes no specific factual allegations whatsoever as to her conduct related to the Decedent's medical care or needs. Instead, Plaintiffs simply pled in conclusory fashion that she, and other defendants,

1  "encouraged the very type of misconduct at issue in this case"; "failed to provide adequate training and supervision of healthcare and correctional employees" and "failed to adequately punish and discipline prior instances of similar misconduct." (Dkt. 65 at ¶ 91.)

Plaintiff's only allegations against Defendants Shelly Cersosimo, Sheila Lawver and Summer Wolfe are they knew about the decedent's medical history, i.e., he suffered from high blood pressure and back pain and was on several medications to treat these conditions, and that they were one of the nurses on duty. (Dkt. 65 at ¶¶ 38, 41, and 43.) Yet, Plaintiff did not allege that Defendants Shelly Cersosimo, Sheila Lawver and Summer Wolfe ever personally attended to or saw the decedent for his medical needs. These allegations, even construed in the light most favorable to Plaintiff, do not create a plausible inference that Defendants Hirsch, Cersosimo, Lawver and Wolfe were objectively deliberately indifferent, given the fact that none of them personally participated in the decedent's care.

Plaintiff alleges that Defendant Leann James might be one of the nurses -referred to as a "different detention nurse," who responded to the decedent's pod. (Dkt. 65 at ¶ 57.) Plaintiff further alleges that the "different detention nurse," after responding to the decedent's pod, transferred him in a wheelchair to the jail's medical unit for monitoring. (*Id.*) If Defendant James was indeed the "different detention nurse," by taking the decedent to the jail's medical unit in a wheel chair, she clearly was not deliberately indifferent to the decedent. Plaintiff alleges that the "different detention nurse" did not "attempt to diagnose the cause of Mr. Benally's condition or obtain emergency help for him." (Dkt. 65 at ¶ 58.) There is no evidence that any of the nurse defendants was even qualified to diagnose the decedent's condition. More importantly, as a matter of law, the "mere lack of due care by a state official," which is the most serious allegation against Defendant Leann James, "does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).)

Plaintiff alleges that Defendant Janee Fraser responded to the decedent's pod twice during his time in Coconino jail, but was not alarmed enough by the decedent's condition

to seek emergency care for him. (Dkt. 65 at ¶¶ 47, 48, 49, 50, 51, 52, 53, 54, 55, 57, 58, 60, 64, 65, 66 and 67) Plaintiff's own allegations show Defendant Fraser immediately responded to the decedent's pod twice from 5:05 pm to 5:21 p.m., and took several actions to address the decedent's condition, including taking vitals, instructing him to drink more water, making sure he could eat dinner, conducting an examination, and instructing him to slow down his breathing. Id. Based on Plaintiff's own allegations, Defendant Fraser clearly did not exhibit deliberate indifference to the decedent's condition. Again, since Plaintiff has to prove more than negligence, and a mere lack of care, without more, is insufficient to state a claim for deliberate indifference, Plaintiff's claim against Defendant Fraser fails as a matter of law as well. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).)

### 2. Plaintiffs Fail to Allege a Policy, Custom, or Practice was the Moving Force Behind any Violation of Decedent's Rights. [4]

The establishment of an underlying constitutional deprivation is a prerequisite to establishing *Monell* liability. *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008); *see also Pollard v. City of Columbus*, 780 F.3d 395, 401 (6th Cir. 2015) ("[T]he constitutional violation of a municipal official is a prerequisite to municipal liability."). Because Plaintiffs fail to plausibly allege an underlying constitutional violation, their *Monell* claims against Coconino Entity Defendants and Navajo Entity Defendants fail.[5]

Even if they alleged an underlying constitutional violation, their claims still fail, as the Complaint fails to create a plausible inference that any policy, custom, or practice was

---

[4] Claims I and II are brought against the Navajo County Jail and Coconino County Jail, respectively. (Dkt. 65 at ¶¶ 70–92.) Plaintiffs' counsel confirmed this was an informal designation, and Plaintiffs do not bring claims against the Jails. Nor could they because they are non-jural entities.

[5] Plaintiffs allege that Nurses Williams, Shields, and Perkins were medical providers at the Navajo County Jail employed by "Navajo County…." (Dkt. 65 at ¶¶ 23–25.) County Defendants take no position on whether they were employed by Navajo County for purposes of this Motion. However, to the extent they were employed by Navajo County, Plaintiffs fail to state an underlying constitutional violation against them for purposes of establishing their *Monell* claim against Navajo County.

the moving force behind any violation of Decedent's rights. Section 1983 does not permit respondeat superior liability against a governmental entity. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a governmental entity can only be subject to *Monell* liability where its policy, custom, or practice was the moving force behind an underlying constitutional violation. *Id.* at 694. Absent a formal policy, Plaintiffs may establish their *Monell* claim:

> (1) by showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policy-making authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation omitted). A practice and custom must be so "persistent and widespread" to constitute a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citation omitted).

Additionally, and in limited circumstances, a municipality's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). "[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal quotations omitted) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citation omitted).

Here, Plaintiffs allege that Coconino Entity Defendants and Navajo Entity Defendants were allegedly indifferent to the following policies and practices at the Coconino and Navajo County Jails: "(1) healthcare staff commonly disregard[ed] reports by patients of objectively serious medical needs"; (2) "healthcare staff refuse[d] to provide adequate treatment to patients complaining of serious medical conditions or in need of medications"; (3) "healthcare staff fail[ed] to ensure continuity of care among medical and correctional staff"; (4) failed to provide adequate levels of healthcare staffing; and (5) "healthcare staff fail[ed] or refuse[d] to arrange for prisoners to be treated in outside facilities…." (Dkt. 65 at ¶¶ 76, 84.) Plaintiffs also allege that they "failed to provide adequate training and supervision of healthcare and correctional employees…." (*Id.* at ¶¶ 77, 91.)

First, Plaintiffs' allegations are insufficient to state a *Monell* claim based on a theory that Coconino Entity Defendants and Navajo Entity Defendants maintained unconstitutional policies, as they fail to set out the text of the policies. *See, e.g., Sandberg v. Englewood*, 727 F. App'x, 950, 964 (10th Cir. 2018) (dismissing claim based on an unconstitutional policy because the complaint did not set out the text of any at-issue policy).

Second, these allegations are insufficient to state a *Monell* claim based on a theory that Navajo Entity Defendants maintained longstanding practices or customs because Plaintiffs fail to delineate any other instances of alleged unconstitutional conduct by Navajo Entity Defendants and/or their employees sufficient to plausibly allege an unofficial custom or practice. (Dkt. 65 at ¶¶ 70–77.) Rather, Plaintiffs rely on the instant "isolated" and "sporadic" allegation of unconstitutional conduct to establish their *Monell* claim, which is insufficient. *See, e.g., Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (finding two instances of alleged unconstitutional conduct insufficient to establish *Monell* claim); *Blanchard v. City of Los Angeles*, 2021 WL 871997, *3 (C.D. Cal. 2021) ("While the FAC cites to numerous instances, reports, and cases concerning excessive force and others that have indicated a tendency to employ excessive force by Sheriff's Deputies, these do not rise to the level of specificity for *Monell* claims."); *Hyer v. City & Cnty. of Honolulu,*

1  2020 WL 7038953 at *9 (D. Haw. Nov. 30, 2020) (dismissing *Monell* claim because "there are no facts detailing a history of incidents or any other basis to demonstrate a policy, practice, or custom by the City and County of Honolulu that caused the alleged injury in this case" and "Plaintiffs must assert facts concerning the timing and similarity of prior incidents").

While Plaintiffs allege four other instances where detainees died at the Coconino County Jail (*see* Dkt. 65 at ¶¶ 87–90), Plaintiffs fail to allege that those detainees died as a result of any alleged unconstitutional Coconino Entity Defendants' custom or practice. Even if they did, Plaintiffs still fail to plausibly allege an unconstitutional custom or practice based on those four instances because they are not sufficiently similar. *See Turner v. City of Sacramento*, 2022 WL 1608031, at *5 (E.D. Cal. May 20, 2022) (stating that, to establish a custom, plaintiff must show a "pattern through the similarity of incidents, their timing, and subsequent actions"). Plaintiffs cite the following: Kyle Martinson died in January 2019 from pneumonia caused by strep throat after he was allegedly seen hyperventilating, his vitals showed low oxygen levels, and he was not referred to the hospital; Floyd Jackson died in September 2019 from peptic ulcer disease after he was placed in a cell by himself and was not transferred to the hospital; an unknown "person" died in July 2020 from an unidentified "medical emergency" after exhibiting "alarming symptoms during the booking process" and "deteriorate[d] over the next few days"; and an unknown "person" died from suicide by hanging in February 2022. (Dkt. 65 at ¶¶ 87–90.) Plaintiffs, however, fail to allege that any of the above-mentioned individuals experienced high blood pressure and back pain, like Decedent. (*Id.* at ¶¶ 29–31.) Nor do Plaintiffs allege that medical staff allegedly failed to provide the above-mentioned individuals their medications, like Decedent. (*Id.* at ¶¶ 33–36, 38, 42.) The above instances are therefore not sufficiently similar to plausibly infer an unconstitutional custom or practice.

Third, Plaintiffs' *Monell* claim based on a failure-to-train theory similarly fails. Again, Plaintiffs fail to allege any other instances of alleged constitutional violations by untrained Navajo Entity Defendants' employees to plausibly allege that Navajo Entity

14

Defendants were on notice of any deficiency in their training program. As to Coconino Entity Defendants, Plaintiffs fail to allege that any of the above-mentioned detainee deaths were caused by deficiencies in their training program. Nor are those instances sufficiently similar to put Coconino Entity Defendants on notice of an alleged deficiency in their training program. *See, e.g., Warren v. Penzone*, 2024 WL 2246257, at *4 (D. Ariz. May 17, 2024) (finding plaintiffs' allegations were insufficient to show that "'the need for more or different training' … was 'so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' that the [defendant] 'can reasonably be said to have been deliberately indifferent to the need'"). In sum, Plaintiffs' *Monell* claim fails and must be dismissed.

## C. Plaintiffs' State Law Claims Must Be Dismissed (Claims III, IV, V, VI).

### 1. Plaintiffs Failed to File a Notice of Claim and Bring This Lawsuit Within One Year of Their Cause of Action Accruing.

Plaintiffs' state law claims—i.e., Claims IV, V, and VI—must be dismissed because they failed to file a Notice of Claim pursuant to A.R.S. § 12-821.01. Section 12-821.01 provides:

> Persons who have claims against a public entity … or a public employee shall file claims with the person or persons authorized to accept service for the public entity … or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues…. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

A.R.S. § 12-821.01(A). "Compliance with the notice provision of § 12-821.01(A) is 'mandatory' and 'essential' prerequisite to [a civil action seeking monetary damages]." *See Salerno v. Espinoza*, 115 P.3d 626, 627 (Ariz. App. 2005). When a plaintiff does not "strictly comply" with the notice-of-claim statute, "no action may be maintained." *Humphrey v. State*, 249 Ariz. 57, 63, ¶ 20 (App. 2020). Additionally, a plaintiff must bring any lawsuit against a public entity or employee "within one year after the cause of action accrues." A.R.S. § 12-821.

Here, Plaintiffs failed to file a Notice of Claim within 180 days of their cause of

action accruing. Plaintiffs claim accrued on April 18, 2022, the date Decedent died. (Dkt. 65 at ¶¶ 46, 68.) *See* A.R.S. § 12-821.01(B) (stating "a cause of action accrues when the damaged party realized he or she has been damaged and knows or reasonably should know the cause of action, source, act, event, instrumentality or condition that caused or contributed to the damage"). The deadline for Plaintiffs to serve a Notice of Claim was October 15, 2022—i.e., 180 days after their cause of action accrued. *See* A.R.S. § 12-821.01(A). To date, Plaintiffs have failed to serve a Notice of Claim on County Defendants in violation of A.R.S. § 12-821.01(A). Their state-law claims are therefore barred.

Plaintiffs' claims are also barred and must be dismissed because Plaintiffs failed to timely file this lawsuit. The deadline for Plaintiffs to file this lawsuit was March 18, 2023, one year after Plaintiffs' cause of action accrued. *See* A.R.S. § 12-821. Plaintiffs, however, did not file this lawsuit until **two** years after the cause of action accrued on March 12, 2024, and thus, their lawsuit is untimely. The Court should therefore dismiss Plaintiffs' state-law claims.

### 2. Plaintiffs Standalone Survival Claim is Duplicative (Claim IV).

The Estate brings a standalone survival claim pursuant to A.R.S. § 14-3110, asserting that Decedent allegedly experienced physical pain, emotional distress, and ultimately death as a result of Defendants' wrongful acts. (Dkt. 65 at ¶¶ 107–12.) A.R.S. § 14-3110 provides:

> Every cause of action for damages, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

"Under Arizona law, a claim under the survival statute may be brought only by a decedent's estate." *Manion v. Ameri-Can Freight Sys. Inc.*, 391 F. Supp. 3d 888, 891–92 (D. Ariz. 2019) (citation omitted). "The enactment of the survival statute extended the right of a decedent's personal representative to pursue the decedent's personal injury claim against a tortfeasor." *Id.* (citation omitted). Arizona's survival statute is a mechanism by which an

estate can pursue a claim that a decedent would have been permitted to pursue had he survived; it does not create a standalone cause of action. *See Barragan v. Superior Ct. of Pima Cnty.*, 470 P.2d 722, 724 (Ariz. App. 1970) ("A survival statute … does not create a new claim but merely prevents abatement of the injured person's claim and provides for its enforcement by his personal representative.").

Here, the Court should dismiss Plaintiff's standalone survival claim because it is not permitted under Arizona law and because it is duplicative of their § 1983, medical malpractice, and intentional infliction of emotional distress claims, which are survival actions seeking to recover for alleged pre-death injuries to Decedent. (Dkt. 65 at ¶¶ 72, 80, 96, 109.) The Court should also dismiss this claim, as the Estate attempts to recover for Decedent's pre-death pain and suffering, which they cannot do. *See* A.R.S. § 14-3110.

### 3. Plaintiffs Fail to State a Plausible Intentional Infliction of Emotional Distress Claim.

To establish an intentional infliction of emotional distress claim, Plaintiffs must plead the following:

> [F]irst, the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.

*Minta v. Bell Atl. Sys. Leasing Int'l*, 905 P.2d 559, 562–63 (Ariz. App. 1995) (citation omitted). Plaintiffs "must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 563 (internal quotations and citation omitted).

Plaintiffs failed to do this. Plaintiffs allege that "Defendants' conduct was extreme and outrageous and caused [Decedent] severe, disabling physical distress, emotional distress, and untimely death." (Dkt. 65 at 109.)[6] This is nothing more than the threadbare

---

[6] Plaintiffs' allegation against "Defendants," collectively, "with no distinction as to what acts are attributable to whom," is insufficient. *See Correa v. Glendale Police Dep't*,

17

recitals of the elements of an intentional infliction of emotional distress claim. Additionally, and as stated above, Plaintiffs' allegations do not show that Sergeant O'Brien's conduct was "extreme and outrageous" such that it could be described as "utterly intolerable in a civilized community." Quite the opposite. Sergeant O'Brien's conduct showed that he responded appropriately and provided Decedent access to medical care when he was notified of Decedent's medical condition. The Court should therefore dismiss this claim.

### III.  Conclusion

For the foregoing reasons, Defendants Coconino County, Coconino County Jail District, James Driscoll, Bret Axlund, Lisa Hirsch, Sheila Lawver, Summer Wolfe, Janeen Fraser, Patrick O'Brien, Navajo County Jail District, Navajo County, David Clouse, and Ernie Garcia respectfully request that the Court dismiss Plaintiffs' First Amended Complaint in its entirety.

---

2024 WL 315290, at *3 (D. Ariz. Jan. 19, 2023) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citation omitted) (stating, albeit in the context of a § 1983 claim, that the complaint must make clear "who is alleged to have done what to whom" to give the defendants fair notice as to the basis of the claims against them)).

DATED this 13th day of August, 2024.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Kristina R. Rood
   Ashlee B. Hesman
   Kristina R. Rood
   3100 West Ray Road, Suite 300
   Chandler, Arizona 85226

*Attorneys for Defendants Coconino County, Coconino County Jail District, James Driscoll, Bret Axlund, Patrick O'Brien, Navajo County, Navajo County Jail District, Ernie Garcia, and David Clouse*

BEAUGUREAU, HANCOCK, STOLL & SCHWARTZ, P.C.

By /s/ David L. Stoll (with permission)
   David L. Stoll
   Shimin Luo
   302 East Coronado Road
   Phoenix, Arizona 85004

*Attorneys for Defendants Coconino County, Coconino County Jail District, Lisa Hirsch, Summer Wolfe, Janeen Fraser, Leann James, Sheila Lawver and Shelly Cersosimo*

# CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Lee Phillips  leephillips@leephillipslaw.com
Seven H. Weil  weil@loevy.com

David L. Stoll  dstoll@bhsslaw.com

Brandi C. Blair  bblair@jshfirm.com
John A. Klecan  jklecan@jshfirm.com

Sarah L. Barnes  slb@bowwlaw.com
  kel@bowwlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

/s/ E. Glover