**WO**                                                                                          JL

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renalda Benally, | No.  CV-24-08049-PCT-MTL (MTM) |
| Plaintiff, | |
| v. | **ORDER** |
| Coconino County, et al., | |
| Defendants. | |

On March 12, 2024, Plaintiff Renalda Benally, on her own behalf and on behalf of the estate of Gibson Benally, filed a Complaint asserting claims under § 1983 and related state-law claims regarding the death of her father, Gibson Benally ("Benally"), while he was in the custody of Navajo and Coconino Counties.[1]  (*Id.*)  On July 12, 2024, certain Defendants filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 58.)

On July 30, 2024, Plaintiff filed a First Amended Complaint (FAC) asserting § 1983

---

[1] Defendants are Coconino County, Coconino County Jail District, Sheriff James Driscoll, Chief Deputy Sheriff Bret Axlund, and Sergeant O'Brien; AB Staffing Solutions LLC and the following employees of AB Staffing Solutions and/or Coconino County: Medical Director Lindsey Robbins, Nurse Supervisor Lisa Hirsch, and Nurses Leann James, Sheila Lawver, Shelly Cersosimo, Summer Wolfe, Fatimah Lah, Dayne Heath, Janeen Fraser, and Tate; Navajo County, the Navajo County Jail District, Sheriff David Clouse, Chief Deputy Sheriff Ernie Garcia, Sheriff David Clouse; Advanced Correctional Healthcare, Inc., USA Medical & Psychological Staffing, S.C., Wexford Health Sources, Inc., and Nurses Deborah Williams, Desiree Shields, and April Perkins.  (Doc. 1.)

medical care claims and related state-law claims of medical malpractice, survival, wrongful death, and intentional infliction of emotional distress.[2]  (Doc. 65.)  On August 13, 2024, Defendants Coconino County, Coconino County Jail District, Navajo County, Navajo County Jail District, Axlund, Cersosimo, Clouse, Driscoll, Fraser, Garcia, Hirsch, James, Lawver, O'Brien, and Wolfe filed a Motion to Dismiss the First Amended Complaint for failure to state a claim.  (Doc. 74.)  Plaintiff requested and was granted leave to file an omnibus Response to Defendants' Motions to Dismiss.  (Docs. 87, 88.)  The Motions are fully briefed.  (Doc. 91, 92.)

The Court will deny the Motion to Dismiss the original Complaint as moot.  The Court will grant the Motion to Dismiss the FAC in part and will deny it in part.  The Court will also sua sponte dismiss Defendants Robbins and Williams for failure to serve.

**I.    Legal Standards**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation

---

[2] On August 13, 2024, Defendant Wexford Health Sources, Inc., filed an Answer to the FAC, and on August 15, 2024, Defendants Advanced Correctional Healthcare, Inc.; USA Medical & Psychological Staffing; S.C., Perkins; and Shields filed an Answer. (Docs. 75, 76.)  On September 3, 2024, Defendants AB Staffing Solutions, Heath, Lah, and Tate filed an Answer.  (Doc. 90.)

omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When deciding a Rule 12(b)(6) motion, the court generally considers only the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Id.*

## II.     Plaintiff's Allegations

The following facts are taken from the well-pleaded allegations of the FAC. They are presumed to be true for the purposes of analyzing the operative Motion to Dismiss.

On March 4, 2022, Benally was arrested and brought to the Navajo County Jail. (FAC ¶ 28.)  During intake, Benally told jail staff he had high blood pressure and chronic back pain.  (*Id.* ¶ 29.)  Benally mentioned that he was being treated with medication for both conditions.  (*Id.*)  He also gave staff the name of his primary-care physician.  (*Id.*) This information was recorded on Benally's intake form.  (*Id.*)  Jail staff did not take Benally's blood pressure or fill his prescriptions.  (*Id.* ¶ 32.)

After several days of delay verifying Benally's medications, Navajo County Jail staff, including Defendant Nurses Perkins, Shields, and Williams, administered his medications "sporadically."  (*Id.* ¶ 34.)  Benally went days at a time without receiving any medications, including for high blood pressure.  (*Id.*)  Without his medications, Benally's health deteriorated.  (*Id.*)  He lost weight, had sunken eyes, lost color in his face, and experienced a great deal of pain and discomfort.  (*Id.* ¶ 35.)

On March 24, 2022, Benally was transferred to the Coconino County Jail. (*Id.* ¶ 37.) On intake, Coconino County Jail staff took Benally's blood pressure, which was 166/117. (*Id.*) Benally told Defendant Nurses James and Lawver that he suffered from high blood pressure and back pain and that he took several medications to treat his medical conditions. (*Id.* ¶ 38.) Defendant James and Lawver communicated Benally's condition to Defendants Cersosimo and Wolfe and Nurse Lah. (*Id.* ¶ 41.)

Around 7:00 p.m. on April 17, 2022, Benally reported problems with dizziness and shortness of breath and saw Nurse Heath. (*Id.* ¶ 44.) Shortly after midnight on the morning of April 18, 2022, Coconino County Jail correctional staff called Nurse Heath to Benally's bunk. (*Id.* ¶ 45.) Benally told Nurse Heath that he was feeling very weak and dizzy. (*Id.*) Benally's heart rate was elevated, and his blood pressure was 142/106. (*Id.*) Nurse Heath told Benally to rest on his left side and notify medical staff if his symptoms changed. (*Id.*)

In the afternoon of April 18, 2022, Benally tried but could not stand up from his bunk. (*Id.* ¶ 46.) Another detainee contacted Defendants O'Brien and Fraser. (*Id.*) Defendant Fraser came to Benally's pod, and Benally told Fraser that he was short of breath and dizzy. (*Id.* ¶ 47.) Defendant Fraser saw that other detainees were trying to help Benally by placing wet washcloths on his head and chest. (*Id.*) Defendant Fraser took Benally's vital signs, which were normal. (*Id.* ¶ 48.) Defendant Fraser told Benally to drink more water and watched as Benally was escorted to a pod table to eat dinner. (*Id.*)

Almost immediately, at the pod table, Benally became dizzy. (*Id.* ¶ 49.) Other detainees on the pod came to help him and contacted Defendant O'Brien. (*Id.*) Defendant O'Brien called Defendant Fraser back to the pod. (*Id.*) Defendant Fraser "was told" that Benally could not stand up and was dizzy and had begun placing a wet washcloth on his head. (*Id.* ¶ 50.) Defendant Fraser began to examine Benally at the table. (*Id.* ¶ 51.) Benally placed his head on the table multiple times and began hyperventilating. (*Id.*) Defendant Fraser took Benally's vital signs, which showed dramatically increased blood pressure and oxygen saturation of 92%, a sign of hypoxia, or lack of oxygen entering the blood stream. (*Id.* ¶ 52.) Defendant Fraser repeatedly instructed Benally to slow down his

breathing. (*Id.* ¶ 53.) Benally did so, and Defendant O'Brien assisted Benally to his bunk. (*Id.* ¶ 54.) Defendant Fraser left the pod without providing any further treatment or assessment. (*Id.* ¶ 55.)

A few minutes later, Benally began breathing loudly at his bunk. (*Id.* ¶ 56.) Another detainee pressed the emergency call button and told Defendant O'Brien that Benally's chest pains were getting worse. (*Id.*) Defendant O'Brien relayed this information to the medical unit, and another nurse—either Defendant James, Nurse Heath, or Nurse Tate— entered the pod. (*Id.* ¶ 57.)

Defendant O'Brien and the nurse took Benally to the medical unit for monitoring. (*Id.* ¶¶ 58, 62.) There, Benally was not attended by medical personnel, no monitoring devices were placed on him, and he was given no medical interventions, such as oxygen. (*Id.* ¶ 61.) Rather, Benally was placed in a cell and monitored through "occasional" cell checks. (*Id.* ¶ 62.) Benally was left unattended for around twenty minutes after arriving at the medical unit. (*Id.* ¶ 63.)

At 6:03 p.m., a guard arrived on the medical unit to conduct cell checks. (*Id.* ¶ 68.) When the guard looked into Benally's cell, he noticed Benally face-down and tried to get his attention. (*Id.*) Benally was unresponsive, and the guard called a "Code 3." (*Id.*) Staff arrived and attempted to revive Benally but were unsuccessful. (*Id.*) Benally was pronounced dead shortly thereafter. (*Id.*) An autopsy determined his cause of death was pulmonary thromboembolism due to deep vein thrombosis. (*Id.*)

The FAC makes the following additional allegations. Defendant Fraser knew that chest pain and shortness of breath, accompanied by the other symptoms that Benally had reported, was an emergent medical issue that required immediate evaluation and treatment in an emergency-room setting. (*Id.* ¶ 64.) Despite this knowledge, Defendant Fraser failed to take (or instruct jail staff to take) any meaningful response to Benally's medical emergency. (*Id.* ¶ 65.) She did not instruct the jail staff to transport Benally to the emergency room where he could be evaluated, closely monitored, and treated with supplemental oxygen, anti-coagulation, medication or other methods to stabilize his

condition. (*Id.*) Instead, Fraser told Benally to calm down and repeatedly tried to leave his side, even though non-medical staff could see his life was in serious danger. (*Id.*) Defendant Fraser's command that Benally calm down and slow his breaching put his life further in danger, as his oxygen saturation indicated that he would not be able to receive sufficient oxygen if he slowed down his breathing. (*Id.* ¶ 66.) Defendant James and Nurses Heath and Tate, who were on duty, aware of Benally's medical condition, and who communicated with Defendant Fraser at the time, failed to intervene to secure appropriate medical care for Benally. (*Id.* ¶ 67.)

## III.    Section 1983 Medical Care Claims –Counts One and Two[3]

### A.    Respondeat Superior (Individual Capacity)

Defendants argue that Plaintiff's claims against Defendants Driscoll, Axlund, Clouse, Garcia, and Hirsch in their individual capacities fail because Plaintiff did not plead any underlying factual allegations against them. (Doc. 74 at 9.) Defendants contend Plaintiff has not made any allegations that "create a plausible inference" that Defendants Driscoll, Axlund, Clouse, Garcia, and Hirsch personally participated in any violation of Benally's rights. (*Id.*)

In her Response, Plaintiff asserts that Defendants Driscoll, Axlund, Clouse, Garcia, and Hirsch supervised the correctional officers and jail staff of their respective counties, and they may be held liable for carrying out the policies and practices of their respective counties. (Doc. 91 at 11-12.) Plaintiff "alleges that there exists within the jail policies and practices where healthcare staff disregard patients' objectively serious medical needs, refuse to treat these needs, fail to provide continuity of care for these needs, fail to obtain

---

[3] Although Plaintiff only specifically designates Navajo County as the Defendant in the heading for Count One and Coconino County as the Defendant in the heading for Count Two, Plaintiff asserts an official-capacity claim against Defendant Clouse, as well as individual-capacity claims against Defendants Clouse and Garcia in Count One. (Doc. 65 at 13-14.) In Count Two, Plaintiff asserts an official-capacity claim against Defendant Driscoll, as well as individual-capacity claims against Defendants Driscoll, Axlund, Hirsch, James, Lawyer, Cersosimo, Wolfe, Fraser, and O'Brien. (Doc. 65 at 14-17.)

emergency outside care for these needs, and fail to appropriately staff medical units." (*Id.* at 12.) She contends "[i]t is enough at this juncture for purposes of Section 1983 to allege that these supervisors knew or should have known of this unconstitutional conduct which resulted in Mr. Benally's death." (*Id.*)

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). However, a plaintiff may assert a claim against a supervisor "for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207-08. A supervisor may be liable "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. California Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

Supervisory liability is direct liability, which requires the plaintiff to allege that a supervisor breached a duty to the plaintiff and was the proximate cause of the injury. *Starr*, 652 F.3d at 1207. A causal connection can be "an affirmative link" between a constitutional deprivation and "the adoption of any plan or policy by [a supervisor,] express or otherwise showing [his or her] authorization or approval of such misconduct." *Rizzo*, 423 U.S. at 371. In other words, a supervisor can be liable for creating policies and procedures that violated a plaintiff's constitutional rights. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Plaintiff has not alleged that Defendants Clouse, Driscoll, Garcia, Axlund, and Hirsch personally participated in a deprivation of Benally's constitutional rights. Plaintiff

also has not alleged the requisite causal connection between any conduct by Driscoll, Axlund, Clouse, Garcia, and Hirsch and Benally's death. Plaintiff's general reference to "policies" is insufficient to support an inference that a particular Defendant created a policy or procedure that violated Benally's rights. Thus, the Court will dismiss the individual capacity claims against Defendants Clouse, Driscoll, Garcia, Axlund, and Hirsch.

## B.  Medical Care

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). To state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* A mere delay in medical care, without more, does not state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d

404, 407 (9th Cir. 1985).

### 1.    Defendants Lawver, Cersosimo, and Wolfe

Plaintiff alleges that Defendants Lawver, Cersosimo, and Wolfe knew Benally had serious medical conditions (high blood pressure and back pain), he was not receiving his medications as prescribed, and he was feeling and looking unwell and experiencing other serious symptoms, including dizziness and shortness of breath.  (FAC ¶ 42.)  Despite this knowledge, Defendants Lawver, Cersosimo, and Wolfe did not contact Benally's doctor or "take the necessary action" to ensure that Benally received prompt medical attention for his emergent symptoms.  (*Id.* ¶ 43.)

In their Motion, Defendants argue that Plaintiff alleges only that Defendants Cersosimo, Lawver, and Wolfe knew about Benally's medical history and that they were on duty.  (Doc. 74 at 10.)  Defendants contend that Plaintiff does not allege that Defendants Cersosimo, Lawver, and Wolfe "ever personally attended to or saw [Benally] for his medical needs."  (*Id.*)  Defendants assert that even construing the allegations in the light most favorable to Plaintiff, the allegations do not support an inference of deliberate indifference by Defendants Cersosimo, Lawver, and Wolfe where none of them are alleged to have personally participated in Benally's care.  (*Id.*)

In her Response, Plaintiff argues that Defendants Lawver, Cersosimo, and Wolfe were each aware of Benally's medical condition and symptoms.  (Doc. 91 at 11.)  Plaintiff contends that when Defendants Lawver and James took Benally's blood pressure on intake, it was high enough to be considered a hypertensive emergency, but they took no action to obtain review by a qualified medical professional for diagnosis and treatment.  (*Id.*)

As noted, Plaintiff alleges in the FAC that on March 24, 2022, jail staff took Benally's blood pressure, which was 166/117, and that that once Benally was at the Coconino County Jail, he told Defendant Lawver that he suffered from high blood pressure and back pain and was on several medications to treat these medical conditions.  However, Plaintiff does *not* allege that Defendant Lawver was one of the "Coconino County Jail staff" who took Benally's blood pressure on March 24, 2022.

Plaintiff further asserts that Lawver "communicated" Benally's condition to Defendants Cersosimo and Wolfe, but she does not allege when or how Lawver communicated Benally's condition to Cersosimo and Wolfe. Similarly, Plaintiff alleges that Defendants Lawver, Cersosimo, and Wolfe knew Benally was not receiving his medications as prescribed, was feeling and looking unwell, and was experiencing other serious symptoms, but she does not allege *how* these Defendants obtained any of this knowledge. Plaintiff does not describe any visits Benally had with Defendants Lawver, Cersosimo, or Wolfe or allege that he interacted with these Defendants at all between his intake and the time of his death. Plaintiff fails to state a claim in Count One against Defendants Lawver, Cersosimo, and Wolfe. The Court will grant Defendants' Motion to Dismiss as to Defendants James, Lawver, Cersosimo, and Wolfe.

### 2.    Defendant O'Brien

Plaintiff alleges that although Defendant Sergeant O'Brien assisted in transporting Benally from the pod to the medical unit and was aware that Benally's alarming symptoms were being ignored by the jail's medical staff, O'Brien did not intervene and obtain medical help for Benally. (FAC ¶ 62.) Defendants argue that Plaintiff's allegation that Defendant O'Brien was aware of Benally's serious medical needs "is nothing more than a conclusory allegation, which is insufficient to state a claim against" him. (Doc. 74 at 7.) Defendants also contend that Plaintiff does not allege that Defendant O'Brien "has any medical education, training, or experience such that it is plausible to infer that he knew [Benally] was experiencing a serious medical need based on the symptoms [Benally] presented with." (*Id.* at 7-8.) Defendants also assert that Plaintiff does not plead sufficient factual allegations to create a plausible inference that O'Brien failed to take available measures to abate any risk to Benally. (*Id.* at 8.)

In response, Plaintiff argues that "[t]hrough the time frame in question," Defendant O'Brien "repeatedly saw that Mr. Benally was in need of serious medical care, yet delayed meaningfully assisting until it was too late." (Doc. 91 at 9.) Plaintiff contends Defendant O'Brien saw that Benally could not stand on his own, saw detainees placing wet washcloths

on Benally's head, and saw Defendant Fraser "make no attempts to identify or treat these symptoms." (*Id.*) Plaintiff asserts that Defendant O'Brien also saw Benally become dizzy and unable to stand only 15 minutes later, saw Benally hyperventilating, and saw Defendant Fraser take Benally's vital signs but take no steps to identify or treat Benally's symptoms. (*Id.*) Finally, Plaintiff argues that Defendant O'Brien was told of Benally's chest pain and shortness of breath but did not conduct regular cell checks on Benally at the medical unit. (*Id.*)

Plaintiff's allegations do not support that O'Brien intentionally disregarded a substantial risk of serious harm to Benally. O'Brien's first alleged involvement in Benally's medical condition was at 4:55 p.m. on the afternoon of April 18, 2022, when another detainee contacted O'Brien, who contacted Defendant Fraser. (FAC ¶ 46.) Defendant Fraser entered the pod at 5:05 p.m. and left at 5:10 p.m. (*Id.* ¶¶ 47-48.) Benally "almost immediately" became dizzy at the pod table, detainees again contacted O'Brien, and O'Brien called Defendant Fraser back to the pod. (*Id.* ¶ 49.) Defendant Fraser returned to the pod at 5:13 p.m., three minutes after she had left. (*Id.*) After Defendant Fraser examined Benally and took his vital signs and Benally's hyperventilation had slowed, Defendant O'Brien helped Benally to his bunk. (*Id.* ¶ 54.) This took less than eight minutes. (*Id.*) Defendant Fraser left the pod at 5:21 p.m. (*Id.*) Eleven minutes after that, at 5:32 p.m., a detainee pressed the emergency call button and told O'Brien that Benally's chest pains were getting worse. (*Id.* ¶ 56.) O'Brien relayed the information to the medical unit. (*Id.* ¶ 57.) At 5:36 p.m., another nurse entered the pod. (*Id.*) In other words, in the 41 minutes between the time Plaintiff alleges O'Brien first became aware of Benally's condition, O'Brien responded to three calls for aid for Benally, summoned Defendant Fraser twice, and relayed information to the medical unit regarding Benally's worsening chest pain, which prompted a different nurse to go to the pod.

Citing two non-binding, extra-circuit decisions and a California district court decision, Plaintiff contends that Defendant O'Brien "may not escape liability based on the

argument that he lacks medical training." (*Id.* at 9-10.)[4]  Contrary to Plaintiff's assertions, as a correctional officer and not a medical provider, Defendant O'Brien was not required to question or overrule Defendant Fraser's treatment decisions.  As Defendants point out, Plaintiff has not alleged that Defendant O'Brien had any relevant medical training, and her allegations show that O'Brien took "reasonable available measures" to abate the risk to Benally by repeatedly summoning medical aid as soon as O'Brien became aware of Benally's medical need.  *Gordon*, 888 F.3d at 1125.  Moreover, Plaintiff has not alleged that Benally suffered injury because of any delay in O'Brien summoning medical aid.  *See*, *e.g.*, *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 955 (E.D. Cal. 2024) ("Given the nature of the injuries it is not obvious that medical intervention by the Officer Defendants (as opposed to trained medical personnel) would have made a difference in terms of the outcome"); *Hertig v. Cambra*, No. 1:04-CV-5633-ROS, 2009 WL 62126, at *4 (E.D. Cal. Jan. 8, 2009) ("[A] delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him."); *Ortiz v. City & Cnty. of San Francisco*, No. 18-cv-07727-HSG, 2020 WL 2793615, at *3–4 (N.D. Cal. May 29, 2020) (holding plaintiff failed to demonstrate the third and fourth elements of his deliberate indifference claim when defendant officers promptly summoned medical care after plaintiff was beaten despite their failure to take any other precautionary actions, and plaintiff failed to plead any injury caused by a delay in receiving treatment).  And although Plaintiff claims that O'Brien failed to conduct regular checks while Benally was in the medical unit, that allegation contradicts her allegation that Benally was monitored through "occasional" cell

---

[4] *Short v. Hartman*, 87 F.4th 593, 613 (4th Cir. 2023); *Howell v. NaphCare, Inc.*, 67 4th 302, 315-16 (6th Cir. 2023); *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941 (E.D. Cal. 2024).  In *Cravotta*, the district court concluded that the plaintiff had not stated a Fourteenth Amendment claim against officers for failing to administer CPR or other life-saving measures because the plaintiff failed to allege that the officers were trained in and could have reasonably provided CPR or other life-saving measures, that is, that those measures were "reasonably available" and failed to allege that his injury could have been alleviated had CPR or other life-saving measures been administered swiftly.  *Id.* at 955.

checks.  Plaintiff has not alleged sufficient facts to support a reasonable inference that O'Brien was the officer responsible for conducting checks on detainees in the medical unit. On the facts alleged, Defendant O'Brien's actions were not objectively unreasonable.  *See Castro*, 833 F.3d at 1071.  Plaintiff fails to state a claim in Count Two against Defendant O'Brien.  The Court will grant Defendants' Motion to Dismiss as to Defendant O'Brien.

### 3.    Defendant Fraser

Plaintiff alleges that when Defendant Fraser first saw Benally on the afternoon of April 18, 2022, Benally told Fraser that he was short of breath and dizzy.  At that time, Benally's vital signs were normal.  When Defendant O'Brien summoned Defendant Fraser back to the pod less than five minutes after she left, Fraser was told Benally could not stand up and was dizzy.  Benally began "vigorously" hyperventilating.  Fraser took Benally's vital signs, which showed "dramatically increased blood pressure" and an oxygen saturation of 92%, which is a sign of hypoxia.  Defendant Fraser left the dorm eight minutes later without trying to determine the cause of Benally's symptoms, seeking emergency assistance, or ordering monitoring.  (*Id.* ¶ 55.)

Defendants argue that Plaintiff's own allegations show Defendant Fraser immediately responded to Benally's pod twice on April 18, 2022, and took several actions to address Benally's condition, including taking his vital signs, instructing him to drink more water, making sure he could eat dinner, conducting an examination, and instructing him to slow down his breathing.  (Doc. 74 at 11.)  Defendants contend that Plaintiff has alleged no more than negligence by Defendant Fraser.  (*Id.*)

A medical provider can be deliberately indifferent even if she takes some action to address a detainee's condition.  Here, Plaintiff alleges that Defendant Fraser ignored Benally's dramatically increased blood pressure, hypoxia, and dizziness and failed to determine the cause of Benally's symptoms, seek emergency assistance, or order monitoring.  Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim against Defendant Fraser.  The Court will deny Defendants' Motion to Dismiss as to the Fourteenth Amendment medical care claim in Count Two against Defendant Fraser.

### 4.    Defendant James

Plaintiff alleges that when Defendant O'Brien called the medical unit the third time on the afternoon of April 18, 2022, a nurse—either Defendant James, Nurse Heath, or Nurse Tate—took Benally to the medical unit for monitoring but did not attempt to diagnose the cause of Benally's condition or obtain emergency help for him.  (FAC ¶¶ 58, 62.)  Plaintiff claims Benally was left unattended at the medical unit for twenty minutes, no monitoring devices were placed on him, he was given no medical interventions, and he was monitored only through "occasional" cell checks.  (*Id.* ¶¶ 61-63.)  Plaintiff alleges that Defendant James and Nurses Heath and Tate, who were on duty, aware of Benally's medical condition, and who communicated with Defendant Fraser at the time, failed to intervene to secure appropriate medical care for Benally.  (*Id.* ¶ 67.)

Defendants argue that Plaintiff has not alleged the identity of the "different detention nurse" who responded to Benally's pod, and in any event, even if it was Defendant James, James "clearly was not deliberately indifferent" to Benally because that "different detention nurse" merely transported Benally to the medical unit in a wheelchair. (Doc. 74 at 10.)  Defendants assert that Plaintiff has not alleged that any of the named nurses was qualified to diagnose Benally's condition or determine that his symptoms warranted review by a medical professional who could diagnose Benally's condition.  (*Id.*) Defendants also contend that Plaintiff has alleged, at most, a mere lack of due care by Defendant James, which is not sufficient to state a Fourteenth Amendment violation.  (*Id.*)

In her Response, Plaintiff argues Defendant James was aware of Benally's medical condition and symptoms.  (Doc. 91 at 11.)  Plaintiff asserts Defendant James conducted Benally's intake when he arrived at Coconino County jail and documented that his high blood pressure and back pain both required medications, and when James took Benally's blood pressure, it was high enough to be considered a hypertensive emergency, but she "did not act in response."  (*Id.*)  Plaintiff also contends that when Defendant James responded to Benally's pod due to his worsening medical condition, James did not attempt to identify or treat Benally's symptoms or contact emergency services, although James

"heard [Benally] hyperventilating loudly all the while." (*Id.*)  Plaintiff further argues that Defendant James saw Benally's worsening condition upon his arrival in the medical unit, but she made no attempts to contact emergency services.[5] (*Id.*)

Accepted as true, Plaintiff's allegations are sufficient state a Fourteenth Amendment medical care claim against Defendant James.  The Court will deny Defendants' Motion to Dismiss as to Defendant James.

## C.    Official-Capacity Claims

Defendants argue that Plaintiff's official-capacity claims against Defendants Driscoll and Clouse duplicate her claims against Coconino County and Navajo County and the Court should dismiss the counties because Driscoll and Clouse are the proper Defendants for Plaintiff's *Monell* claims.  (Doc. 74 at 4-5.)  In response, Plaintiff contends that under *Monell*, a litigant may sue an individual official, a municipality, or both, and each is considered a suit against the municipality for its own actions.  (Doc. 91 at 17.)

Plaintiff is correct.  A suit against a defendant in his or her official capacity is another way of pleading an action against the entity that employs the defendant.  *Kentucky*

---

[5] In their Reply, Defendants assert that Plaintiff includes factual allegations in her Response that she did not plead in the FAC.  (Doc. 92 at 5.)  They contend that Plaintiff now claims in her Response that when Defendants Lawyer and James took Benally's blood pressure, "it was high enough to be considered a hypertensive emergency, but they did not act in response" and that they "communicated" Benally's condition to Defendants Cersosimo and Wolfe, yet none of them made any attempts to ensure that Benally received his medication.  (*Id.* at 6.)  Defendants argue Plaintiff did not make either allegation in the FAC.  (*Id.*)  They further assert that Plaintiff now claims in her Response that "'Defendant James entered Mr. Benally's pod at approximately 5:36 p.m. on April 18, 2022 in response to his worsening medical condition, yet James did not attempt to identify or treat Mr. Benally's symptoms, and she did not contact emergency services.'"  (*Id.*) (quoting Response, Doc. 91 at 11.)  Defendants contend "[t]his is a blatant attempt to modify or amend [the] FAC" because the "actual allegations" in the FAC do not specifically identify Defendant James as the nurse who entered Benally's pod at approximately 5:36 p.m. on April 18, 2022, and to the contrary, the FAC alleges that a "different detention nurse" entered the pod and that it might have been any one of three different detention nurses who were on duty at the jail at the time.  (*Id.*)  Defendants' point is well-taken; however, for purposes of this Order, Plaintiff's mischaracterization of the allegations in the FAC is irrelevant because the Court only considers the allegations as made in the FAC.

*v. Graham*, 473 U.S. 159, 165 (1985).  The real party in interest is not the named defendant, but the entity that employs the defendant.  *Id.*  To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice.  *Id.*; *Monell*, 436 U.S. at 694.  Although the real party in interest for the official-capacity claims against Defendant Driscoll and Clouse are the respective counties that employ them, that is not a basis for dismissing the *counties* as Defendants.

### D.    Navajo County

#### 1.    Allegations Specific to Navajo County

In Count One, Plaintiff alleges Nurses Williams, Shields, and Perkins failed to provide Benally with proper medical care or access to medical care, and their misconduct was objectively unreasonable and undertaken intentionally, with malice, and/or with reckless indifference to Benally's rights.  (FAC ¶¶ 72-73.)  Alternatively, Plaintiff asserts Nurses Williams, Shields, and Perkins were deliberately indifferent to Benally's serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to Benally's health and safety.  (*Id.* ¶ 74.)  As a third alternative theory, Plaintiff claims that pursuant to Navajo County Jail policies and widespread practices (1) healthcare staff commonly disregards reports by patients of objectively serious medical needs; (2) healthcare staff refuses to provide adequate treatment to patients complaining of serious medical conditions or in need of medications; (3) healthcare staff fails to ensure continuity of care among medical and correctional staff; (4) employees prioritize profits and maintaining a competitive edge as a low-cost vendor at the expense of constitutionally adequate care; (5) inadequate levels of health care staffing are provided, including inadequately qualified staff; and (6) healthcare staff fail or refuse to arrange for detainees to be treated in outside facilities, even when an outside referral is necessary or proper.  (*Id.* ¶ 76.)  Plaintiff contends these policies and practices flourished because Defendants Navajo County, Navajo County Jail District, Clouse, and Garcia were indifferent to them.  (*Id.* ¶ 77.)  Plaintiff asserts these Defendants "directly encouraged the

very type of misconduct at issue," failed to provide adequate training and supervision of healthcare and correctional employees and failed to adequately punish and discipline prior instances of similar misconduct. (*Id.*)

### 2. Parties' Arguments

Defendants argue that Plaintiff "fails to create a plausible inference that any policy, custom, or practice was the moving force behind any violation of [Benally's] rights." (Doc. 74 at 12.) First, they contend that Plaintiff fails to set out the text of a specific written policy. (*Id.* at 13.) Second, Defendants assert that Plaintiff's allegations "are insufficient to state a *Monell* claim based on a theory that Navajo Entity Defendants maintained longstanding practices or customs" because Plaintiff fails to "delineate any other instances of alleged unconstitutional conduct by Navajo Entity Defendants and/or their employees." (*Id.*) Third, Defendants argue that Plaintiff's claim based on a failure-to-train theory fails because Plaintiff fails to allege any other instances of alleged constitutional violations by untrained Navajo Entity Defendants' employees to plausibly allege that Navajo Entity Defendants were on notice of any deficiency in their training program. (*Id.* at 14-15.)

Plaintiff responds that she has adequately pleaded a *Monell* claim because she "alleges that the jails maintain policies and practices that allow healthcare staff to disregard patients' objectively serious medical needs, refuse to treat these needs, fail to provide continuity of care for these needs, fail to bring emergency, outside care for these needs, and fail to appropriately staff medical units." (Doc. 91 at 14.) Plaintiff argues she also plausibly alleged that "the County was on notice for deficiencies in its training programs" because of "the number of cases where jail staff failed to appropriately respond to serious medical needs." (*Id.* at 15.)

### 3. Analysis

#### a. Deliberately Indifferent Policy or Practice

To state a claim based on a policy, practice, or custom of Navajo County, Plaintiff must allege facts (1) that Benally's constitutional rights were violated by an employee or employees of Navajo County; (2) that Navajo County has customs or policies that amount

to deliberate indifference; and (3) that the policies or customs were the moving force behind the violation of Benally's constitutional rights in the sense that the Navajo County could have prevented the violation with an appropriate policy. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110 (9th Cir. 2001).

The Court need not determine whether Plaintiff alleges facts to support a constitutional violation by employees of Navajo County because Plaintiff fails to allege facts to support that Navajo County had a policy, custom, or practice that amounted to deliberate indifference. A policy is "a deliberate choice to follow a course of action" made by the officials or entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Ninth Circuit has identified three ways to show a policy or custom of a municipality: (1) by showing a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See*

*Oyenik v. Corizon Health Inc.*, No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amount to a custom or practice of deliberate indifference) (citing *Oviatt*, 954 F.2d at 1478). But "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.* Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct." *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006).

Plaintiff does not identify a written Navajo County policy that allegedly resulted in Benally's death, and she only alleges facts regarding Benally; she does not allege facts regarding any other similar incidents in Navajo County that would support an inference that Defendants' conduct in this case reflects "a traditional method of carrying out policy." *See Trevino*, 99 F.3d at 918. Following the Supreme Court's decision in *Iqbal*, the Ninth Circuit has clarified that for a *Monell* claim to survive a motion to dismiss, the complaint (1) "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1216). Even accepting Plaintiff's factual allegations as true, she does not allege sufficient facts to "suggest an entitlement to relief" based on a widespread custom or practice. And Plaintiff does not allege facts to support the existence of a widespread custom or practice based solely on the events that resulted in Benally's death. According to Plaintiff's allegations, Benally was in Navajo County custody for 20 days. On intake, Benally told jail staff he had high blood pressure and suffered from back pain, for which he took medication, and

he gave jail staff the name of his primary-care physician, but staff did not take Benally's blood pressure or fill his prescriptions. Plaintiff claims that after several days of delay in verifying Benally's medications, Navajo County Jail staff administered his medications "sporadically," Benally went days at a time without receiving any of his medications, including his blood pressure medication. Without his medications, Benally's health deteriorated. These allegations are too vague to infer a widespread custom from jail staff's behavior toward Benally alone. Thus, Plaintiff fails to state a claim against Navajo County based on the existence of a written or unwritten policy.

Plaintiff also fails to state a claim based on Defendant Clouse's policy-making authority. She alleges no facts to support that Defendant Clouse made any decisions concerning Navajo County's policies with respect to medical care. And as discussed below, Plaintiff has not alleged facts to support a claim based on ratification.

### b.    Failure to Train or Supervise

To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of Canton v. Harri*s, 489 U.S. 378, 388 (1989)). A plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). Specifically, a plaintiff must allege facts to support that not only was particular training or supervision inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need." (quoting *City of Canton*, 489 U.S. at 390)). A plaintiff must also show a "sufficient causal connection between the supervisor's wrongful conduct

and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations omitted). A "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61.

Here, Plaintiff alleges no facts regarding any purported failure by Navajo County to train or supervise its employees with respect to recognizing, treating, or obtaining medical attention for detainees' serious medical needs. Plaintiff also fails to allege facts to support the existence of a pattern of similar incidents that would make the need for more or different training obvious. *See Clement*, 298 F.3d at 905. Plaintiff therefore fails to state a *Monell* claim against Navajo County based on failure to train or supervise.

### c.     Ratification

A municipality can be liable "for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999). To show ratification, a plaintiff must prove that authorized policymakers knew of a subordinate's actions "before the alleged constitutional violations ceased," and that they "made a deliberate choice to endorse" the subordinate's actions "and the basis" for them. *Id.* at 1239 (quoting *Praprotnik*, 485 U.S. at 127). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "In other words, in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, No. 08cv2357 BTM(PCL), 2010 WL 3911457 at *10 (S.D. Cal 2010).

Here, Plaintiff alleges no facts regarding any ratification of any subordinate's misconduct by any authorized policymaker before the alleged constitutional violation ceased. Plaintiff fails to state a claim against Navajo County based on ratification.

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to Count One.

**E.**    **Coconino County**

**1.**    **Allegations Specific to Coconino County**

In Count Two, Plaintiff alleges that Defendants James, Lawver, Cersosimo, Wolfe, Fraser, and O'Brien were aware of Benally's serious medical needs and the risk of harm to Benally if he did not receive appropriate medical care, but despite that knowledge, Defendants failed to provide Benally with proper medical care or access to medical care or intervene to provide such care.  (FAC ¶ 79.)  Alternatively, Plaintiff claims Defendants were deliberately indifferent to Benally's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or reckless indifference to Benally's health and safety.  (*Id.* ¶ 82.)  As a third alternative, Plaintiff alleges that Benally's injuries were caused by policies and practices of Defendants Coconino County, Coconino County Jail District, Driscoll, Axlund, and Hirsch.  (*Id.* ¶ 83.)  Plaintiff contends Coconino County has policies and widespread practices pursuant to which detainees receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which (1) healthcare staff commonly disregards reports by patients of objectively serious medical needs; (2) healthcare staff refuses to provide adequate treatment to patients complaining of serious medical conditions or in need of medications; (3) healthcare staff fails to ensure continuity of care among medical and correctional staff; (4) inadequate levels of health care staffing are provided, including inadequately qualified staff; and (5) healthcare staff fails or refuses to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper.  (*Id.* ¶ 84.)  Plaintiff asserts these policies and practices were allowed to flourish because Defendants Coconino County, Coconino County Jail District, Driscoll, Axlund, and Hirsch were indifferent to them.  (*Id.* ¶ 91.)  Plaintiff further claims these Defendants "directly encouraged the very type of misconduct at issue," failed to provide adequate training and supervision of healthcare and correctional employees, failed to adequately punish and discipline prior instances of similar misconduct, and enacted the policies described elsewhere in the FAC.  (*Id.*)

### 2.    Analysis

As noted, Plaintiff cannot state a claim against Coconino County for the alleged unreasonable conduct or deliberate indifference of its employees to Benally's serious medical needs.  Plaintiff therefore cannot state a claim against Coconino County on her first two alternative theories of liability.  The Court will evaluate whether she has stated a claim based on improper policy or custom, inadequate training and supervision, or ratification.

### a.    Policy or Custom

Plaintiff cites four examples of detainees who died between January 2019 and February 2022 in the Coconino County Jail to support her claim of a pattern of deliberate indifference.  In January 2019, a 20-year-old man, Kyle Martinson, died from pneumonia caused by strep throat.  (*Id.* ¶ 87.)  Martinson complained that his back was tender to the touch, but jail staff dismissed his complaint as "exaggerated."  (*Id.*)  Martinson complained that he could not breathe for days before his death and could barely walk just prior to his death.  (*Id.*)  On the day of this death, Martinson was seen hyperventilating in his cell, and his vital signs reflected a critically low oxygen level.  (*Id.*)

On September 12, 2019, Floyd Jackson was transferred to the Coconino County Jail with "symptoms so concerning that he was housed in a cell by himself."  (*Id.* ¶ 88.)  On September 15, 2019, Jackson died from peptic ulcer disease as he was being examined by Coconino County jail medical staff.  (*Id.*)

On July 29, 2020, a man was arrested and exhibited alarming medical symptoms during the booking process but refused to answer medical questions.  (*Id.* ¶ 89.)  Officers saw a laceration on his arm that appeared red, swollen, and hot to the touch.  (*Id.*)  On July 31, 2020, the man had a catastrophic medical emergency and died "despite an emergency surgery."  (*Id.*)

On February 14, 2022, a man died in the Coconino County Jail from an apparent suicide.  (*Id.* ¶ 90.)  Officers found the man hanging from a bedsheet in his cell during a routine cell check.  (*Id.*)

1    Defendants argue that none of Plaintiff's cited cases is similar enough to Benally's
2    case to put Coconino County on notice of a pattern of unconstitutional conduct that
3    amounted to a custom or practice. (Doc. 74 at 14.) In response, Plaintiff contends that in
4    each of the cited cases, Coconino County Jail staff and medical providers "saw detainees
5    with emergent symptoms deteriorate over the course of several days without intervention,"
6    and "[e]ach case illustrates that a serious medical condition was allowed to worsen, and
7    jail staff made no effort to call emergency services until it was too late." (Doc. 91 at 14.)

8    The Court concludes that three of Plaintiff's cited cases are too factually dissimilar
9    to support notice of the existence of a pattern of constitutional violations. Regarding Floyd
10    Jackson, because it is unclear what symptoms Jackson reported on intake and what medical
11    treatment, if any, Jackson received between his intake and his death three days later, while
12    medical staff were examining him. The July 2020 death is not sufficiently similar because
13    it involved an individual who refused to answer medical questions on intake died two days
14    after intake due to a nonspecific "catastrophic medical emergency," and it is unclear
15    whether he ever reported any symptoms or requested medical care. The last case does not
16    support the existence of a policy because it involved an individual who committed suicide
17    and there are no facts regarding the individual's medical treatment.

18    Plaintiff has not alleged sufficient similar incidents that would have put Coconino
19    County on notice of a pattern of similar incidents of constitutional violations. "Courts
20    require a plaintiff to plead multiple incidents of alleged violations in order to allow a
21    *Monell* claim based on policy, practice, or custom to proceed." *Hyer v. City & Cnty. of*
22    *Honolulu*, No. CV 19-00586 HG-RT, 2020 WL 7038953, at *8 (D. Haw. Nov. 30, 2020)
23    ("Prior to 2009, the Ninth Circuit . . . regularly held that a claim of municipal liability under
24    Section 1983 was sufficient to withstand a motion to dismiss based on nothing more than
25    bare allegations of an unconstitutional policy, practice, or custom. The low pleading
26    threshold was rejected by the United States Supreme Court in [*Iqbal*]. Since *Iqbal*, courts
27    in the Ninth Circuit have repeatedly rejected *Monell* claims based on conclusory allegations
28    that lack factual content from which one could plausibly infer municipal liability.")

(citations omitted). Plaintiff therefore has not alleged facts to support the existence of an improper practice or custom of Coconino County. *See Praprotnik*, 485 U.S. at 127; *Trevino*, 99 F.3d at 918.

Moreover, even if Plaintiff had alleged the existence of a Coconino County policy, custom, or practice, she fails to allege facts to support that the policy, custom, or practice was the "moving force" behind the violation of Benally's constitutional rights. *See Mabe*, 237 F.3d at 1110. To establish that a policy or custom is the "moving force" behind a constitutional violation, a plaintiff must allege a direct causal link between the policy or custom and the constitutional deprivation. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

As discussed above, Plaintiff plausibly alleges a Fourteenth Amendment claim against Defendants Fraser and James. However, Plaintiff does not allege any facts to support that Defendants Fraser and James made treatment decisions *pursuant to* a Coconino County policy, custom, or practice. Plaintiff fails to allege a causal link between a Coconino County policy, custom, or practice and Benally's death.

For the foregoing reasons, Plaintiff fails to state a § 1983 policy, custom, or practice claim against Coconino County.

### b.    Training and Supervision

Plaintiff alleges no facts regarding any purported failure by Coconino County to train or supervise its employees with respect to recognizing, treating, or obtaining medical attention for detainees' serious medical needs. Plaintiff fails to state a *Monell* claim against Coconino County based on failure to train or supervise.

### c.    Ratification

Plaintiff alleges no facts regarding any ratification of any subordinate's misconduct by any authorized policymaker before the alleged constitutional violation ceased. Plaintiff fails to state a claim against Coconino County based on ratification.

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Count Two as to Coconino County.

**IV.     State Law Claims**

Plaintiff concedes she does not intend to pursue state-law claims against the County Defendants and does not oppose dismissal of those claims.  (Doc. 91 at 17.)  The Court will therefore grant Defendants' Motion to Dismiss as to Counts Three through Six.

**V.     Defendants Robbins and Williams**

As noted, Plaintiff filed the original Complaint on March 12, 2024.  Plaintiff subsequently sought and was granted two extensions of time to serve the unserved Defendants.  (Docs. 38, 42, 56, 57.)  After Plaintiff filed her First Amended Complaint, she requested and was granted a third extension of time, until August 27, 2024, to serve the unserved Defendants.  (Docs. 66, 67.)  Plaintiff failed to serve Defendants Robbins and Williams.  The Court will therefore dismiss Defendants Robbins and Williams for failure to serve pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss the Complaint for Failure to State a Claim (Doc. 58) and Motion to Dismiss the First Amended Complaint for Failure to State a Claim (Doc. 74).

(2)     Defendants' Motion to Dismiss the Complaint (Doc. 58) is **denied as moot**.

(3)     Defendants' Motion to Dismiss the First Amended Complaint (Doc. 74) is **granted in part** and **denied in part**.   The Motion is **denied** as to the Fourteenth Amendment medical care claim in Count Two against Defendants Fraser and James.  In all other respects, the Motion is **granted**.

(4)     Count One of the First Amended Complaint is **dismissed without prejudice**.

(5)     Defendants Navajo County, Navajo County Jail District, Coconino County, Coconino County Jail District, Driscoll, Axlund, Clouse, Garcia, Lawver, Cersosimo, Wolfe, O'Brien, and Hirsch are **dismissed without prejudice**.

(6)     Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, Defendants Robbins and Williams are **dismissed** for failure to serve.

. . . .

(7)    All other matters remain with the Magistrate Judge for disposition as appropriate.

Dated this 17th day of March, 2025.

Michael T. Liburdi
United States District Judge