BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, P.C.
302 East Coronado Road
Phoenix, Arizona 85004
(602) 956-4438

David L. Stoll (#010728) dstoll@bhsslaw.com
N. Patrick Hall (#023246) phall@bhsslaw.com
Attorneys for Defendants Coconino
County, Coconino County Jail District,
Lisa Hirsch, Leann James, Shelby
Cersosimo, Summer Wolfe, Janeen Fraser
and Sheila Lawver

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Renalda Benally, as Administrator of the Estate of Gibson Benally, and on her own behalf, | ) No. 3:24-cv-08049-MTL-MTM |
|---|---|
| Plaintiff, | ) Defendants Nurse Leann James and Nurse Janeen Fraser's Statement of Facts in Support of Defendants' Motion for Summary Judgment |
| vs. | ) |
| Coconino County, et al., | ) |
| Defendants. | ) |

Pursuant to Rule 56(c), Fed. R. Civ. P., Defendants Nurse Leann James ("Nurse James") and Nurse Janeen Fraser ("Nurse Fraser") (collectively "Defendants") submit their Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment.

**STATEMENT OF FACTS**

1. This Court previously dismissed all claims against Defendants except for Plaintiff's Fourteenth Amendment medical care claim. (*See* Doc. 100 (March 18, 2025 Order) at 26).

Doc. 164318

2. Plaintiff claims that numerous Defendants failed to provide a former Coconino County Jail pretrial detainee, Gibson Benally ("Benally"), with "proper medical care or access to medical care, or intervene to provide such care, in violation of the United States Constitution." (Doc. 65 (FAC) at 14, ¶ 79).

3. Benally was transferred to Coconino County Detention Facility ("CCDF") as a pretrial detainee on or about March 24, 2022. (*Id.* at ¶ 37).

4. On or about March 25, 2022, Benally received an initial medical screen upon being transferred to CCDF. (*See* Exhibit 1 (CCDF Medical Records) at Bates Nos. BENALLY 000100-102).

5. On or about April 18, 2022, at approximately 5:03 p.m., Nurse Fraser, who has been a Registered Nurse since 1983, was called to attend to Benally. (*See* Exhibit 2 (Fraser Declaration) at ¶¶ 1-7).

6. At all relevant times, Nurse Fraser was employed by Coconino County. (*Id.* at ¶ 5).

7. Benally informed Nurse Fraser that he had not been feeling well for a few days and complained about dizziness. (*Id.* at ¶ 8).

8. Nurse Fraser measured Benally's vital signs on three separate occasions while Benally was laying down, sitting, and standing. (*Id.* at ¶ 9).

9. Based on her training and experience as a Registered Nurse, Nurse Fraser concluded that Benally's vital signs were within normal limits. (*Id.* at ¶ 10).

10. At approximately 5:09 p.m., Benally walked to a table to eat dinner and Nurse Fraser returned toward the nursing station to report on Benally. (*Id.* at ¶ 11).

11. As Nurse Fraser was returning to the nursing station, Nurse Fraser was called back to attend to Benally again at approximately 5:13 p.m. (*Id.* at ¶ 12).

12. Benally was sitting at the table and appeared to be hyperventilating. (*Id.* at ¶ 13).

13. Nurse Fraser encouraged Benally to slow down his breathing because he appeared to be anxious, which is a common experience for many inmates. (*Id.* at ¶ 14).

14. Benally was able to calm his breathing. (*Id.* at ¶ 15).

15. After Benally calmed his breathing, Nurse Fraser took Benally's vital signs again while he was sitting. (*Id.* at ¶ 16).

16. Benally's vitals appeared to be once again within normal limits based on her training and experience as a Registered Nurse. (*Id.* at ¶ 17).

17. At approximately 5:20 p.m., Benally was taken back to his bunk, and Nurse Fraser left his dorm at approximately 5:21 p.m. to return to the nursing station and continue her report on Benally. (*Id.* at ¶ 18).

18. Nurse Fraser did not interact with Benally at any point after 5:21 p.m. (*Id.* at ¶ 19).

19. While Nurse Fraser was reporting on Benally, someone called the nursing station regarding Benally. (*Id.* at ¶ 20).

20. Because Nurse Fraser's shift had ended, (*see* Exhibit 3 (Fraser Deposition) at p. 24, lines 3-12), Nurse Dayna Heath responded and moved Benally to the medical unit at approximately 5:36 p.m. (*See* Exhibit 2 (Fraser Declaration) at ¶ 21).

21. Benally never once complained to Nurse Fraser about chest pain during either of her two encounters with him. (*Id.* at ¶ 22).

22. Based on her observations, and her training and experience as a Registered Nurse, Nurse Fraser did not suspect that Benally was suffering from an imminent, life-threatening condition during either of her encounters with Benally. (*Id.* at ¶ 23).

23. If Nurse Fraser had known or suspected that Benally was suffering from an imminent, life-threatening condition, she would have called for an emergency response. (*Id.* at ¶ 24).

24. Nurse James was working in the nursing station at all relevant times and did not interact with or observe Benally at any time prior to approximately 6:10 p.m. on April 18, 2022, when Benally was found to be non-responsive by Sergeant Wagoner. (*See* Exhibit 4 (James Declaration) at ¶¶ 1-6).

25. Prior to 6:10 p.m. on April 18, 2022, Nurse James did not receive any information that would have caused her to know or suspect that Benally was suffering from an imminent, life-threatening condition. (*Id.* at ¶ 7).

26. If Nurse James had known or suspected that Benally was suffering from an imminent, life-threatening condition, she would have called for an emergency response. (*Id.* at ¶ 8).

27. Plaintiff's standard-of-care expert, Dr. Bruce Charash, did not render any opinions that were critical of Nurse James and, at the time of his deposition, he admitted that he could not recall who Nurse James was or how she was involved in this case. (*See* Exhibit 5 (Charash Deposition) at p. 52, lines 20-25, p. 53, lines 1-25).

28. Dr. Charash is a medical doctor with a specialty in cardiology who has never worked as a nurse in a correctional healthcare setting. (*Id.* at p. 5, lines 19-22).

29. Dr. Charash has never had a faculty appointment as a teacher at a nursing school. (*Id.* at p. 65, lines 14-21).

30. Dr. Charash has not reviewed any correctional healthcare guidelines at any point during his involvement in this case. (*Id.* at pp. 5, lines 23-25, p. 6, lines 1-12).

31. Dr. Charash admitted during his that Nurse Fraser did not suspect that Benally was suffering from a life-threatening condition:

> **N. Patrick Hall**: "Do you believe Nurse Fraser knew that Benally was experiencing a life-threatening condition?"
>
> **Dr. Charash**: "A, no one can know. You have to suspect. And obviously her actions don't reflect—I mean, it would be pretty horrible if she suspected and didn't do anything, so I don't even think that's in the discussion. That would be ridiculous."

Doc. 164318

4

(*Id.* at p. 50, lines 3-9).

32. Following Benally's death, the Coconino County Sheriff's Office ("CCSO") conducted an investigation and prepared Incident/Investigation Report No. S2201164. (*See* Exhibit 6 (Investigation Report) at Bates Nos. 000002-14).

33. CCSO concluded that Benally died from a pulmonary thromboembolism and that his manner of death was listed as "natural causes." (*Id.* at BENALLY 000014).

Dated this ___ day of December, 2025.

                                   BEAUGUREAU, HANCOCK,
                                   STOLL & SCHWARTZ, P.C.

                            By:/s/*N. Patrick Hall*
                                  David L. Stoll, Esq.
                                  N. Patrick Hall, Esq.
                                  302 East Coronado Road
                                  Phoenix, Arizona 85004
                                  Attorneys for Defendants Leann
                                      James and Janeen Fraser

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, and copies were delivered electronically via the CM/ECF filing system to all parties of record.

                                   */s/N. Patrick Hall*
                                   N. Patrick Hall

Doc. 164318