BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, P.C.
302 East Coronado Road
Phoenix, Arizona 85004
(602) 956-4438

David L. Stoll (#010728) dstoll@bhsslaw.com
N. Patrick Hall (#023246) phall@bhsslaw.com
Attorneys for Defendants Coconino
County, Coconino County Jail District,
Lisa Hirsch, Leann James, Shelby
Cersosimo, Summer Wolfe, Janeen Fraser
and Sheila Lawver

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renalda Benally, as Administrator of the Estate of Gibson Benally, and on her own behalf,<br><br>Plaintiff,<br><br>vs.<br><br>Coconino County, et al.,<br><br>Defendants. | No. 3:24-cv-08049-MTL-MTM<br><br>Defendants Nurse Leann James and Nurse Janeen Fraser's Statement of Facts in Support of Defendants' Motion for Summary Judgment |

Pursuant to Rule 56(c), Fed. R. Civ. P., Defendants Nurse Leann James ("Nurse James") and Nurse Janeen Fraser ("Nurse Fraser") (collectively "Defendants") submit their Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment.

### STATEMENT OF FACTS

1.    This Court previously dismissed all claims against Defendants except for Plaintiff's Fourteenth Amendment medical care claim. (*See* Doc. 100 (March 18, 2025 Order) at 26).

2.    Plaintiff claims that numerous Defendants failed to provide a former Coconino County Jail pretrial detainee, Gibson Benally ("Benally"), with "proper medical care or access to medical care, or intervene to provide such care, in violation of the United States Constitution." (Doc. 65 (FAC) at 14, ¶ 79).

3.    Benally was transferred to Coconino County Detention Facility ("CCDF") as a pretrial detainee on or about March 24, 2022. (*Id.* at ¶ 37).

4.    On or about March 25, 2022, Benally received an initial medical screen upon being transferred to CCDF. (*See* Exhibit 1 (CCDF Medical Records) at Bates Nos. BENALLY 000100-102).

5.    On or about April 18, 2022, at approximately 5:03 p.m., Nurse Fraser, who has been a Registered Nurse since 1983, was called to attend to Benally. (*See* Exhibit 2 (Fraser Declaration) at ¶¶ 1-7).

6.    At all relevant times, Nurse Fraser was employed by Coconino County. (*Id.* at ¶ 5).

7.    Benally informed Nurse Fraser that he had not been feeling well for a few days and complained about dizziness. (*Id.* at ¶ 8).

8.    Nurse Fraser measured Benally's vital signs on three separate occasions while Benally was laying down, sitting, and standing. (*Id.* at ¶ 9).

9.    Based on her training and experience as a Registered Nurse, Nurse Fraser concluded that Benally's vital signs were within normal limits. (*Id.* at ¶ 10).

10.    At approximately 5:09 p.m., Benally walked to a table to eat dinner and Nurse Fraser returned toward the nursing station to report on Benally. (*Id.* at ¶ 11).

11.    As Nurse Fraser was returning to the nursing station, Nurse Fraser was called back to attend to Benally again at approximately 5:13 p.m. (*Id.* at ¶ 12).

12.    Benally was sitting at the table and appeared to be hyperventilating. (*Id.* at ¶ 13).

13.    Nurse Fraser encouraged Benally to slow down his breathing because he appeared to be anxious, which is a common experience for many inmates. (*Id.* at ¶ 14).

14.    Benally was able to calm his breathing. (*Id.* at ¶ 15).

15.    After Benally calmed his breathing, Nurse Fraser took Benally's vital signs again while he was sitting. (*Id.* at ¶ 16).

16.    Benally's vitals appeared to be once again within normal limits based on her training and experience as a Registered Nurse. (*Id.* at ¶ 17).

17.    At approximately 5:20 p.m., Benally was taken back to his bunk, and Nurse Fraser left his dorm at approximately 5:21 p.m. to return to the nursing station and continue her report on Benally. (*Id.* at ¶ 18).

18.    Nurse Fraser did not interact with Benally at any point after 5:21 p.m. (*Id.* at ¶ 19).

19.    While Nurse Fraser was reporting on Benally, someone called the nursing station regarding Benally. (*Id.* at ¶ 20).

20.    Because Nurse Fraser's shift had ended, (*see* Exhibit 3 (Fraser Deposition) at p. 24, lines 3-12), Nurse Dayna Heath responded and moved Benally to the medical unit at approximately 5:36 p.m. (*See* Exhibit 2 (Fraser Declaration) at ¶ 21).

21.    Benally never once complained to Nurse Fraser about chest pain during either of her two encounters with him. (*Id.* at ¶ 22).

22.    Based on her observations, and her training and experience as a Registered Nurse, Nurse Fraser did not suspect that Benally was suffering from an imminent, life-threatening condition during either of her encounters with Benally. (*Id.* at ¶ 23).

23.    If Nurse Fraser had known or suspected that Benally was suffering from an imminent, life-threatening condition, she would have called for an emergency response. (*Id.* at ¶ 24).

24.    Nurse James was working in the nursing station at all relevant times and did not interact with or observe Benally at any time prior to approximately 6:10 p.m. on April 18, 2022, when Benally was found to be non-responsive by Sergeant Wagoner. (*See* Exhibit 4 (James Declaration) at ¶¶ 1-6).

25.    Prior to 6:10 p.m. on April 18, 2022, Nurse James did not receive any information that would have caused her to know or suspect that Benally was suffering from an imminent, life-threatening condition. (*Id.* at ¶ 7).

26.    If Nurse James had known or suspected that Benally was suffering from an imminent, life-threatening condition, she would have called for an emergency response. (*Id.* at ¶ 8).

27.    Plaintiff's standard-of-care expert, Dr. Bruce Charash, did not render any opinions that were critical of Nurse James and, at the time of his deposition, he admitted that he could not recall who Nurse James was or how she was involved in this case. (*See* Exhibit 5 (Charash Deposition) at p. 52, lines 20-25, p. 53, lines 1-25).

28.    Dr. Charash is a medical doctor with a specialty in cardiology who has never worked as a nurse in a correctional healthcare setting. (*Id.* at p. 5, lines 19-22).

29.    Dr. Charash has never had a faculty appointment as a teacher at a nursing school. (*Id.* at p. 65, lines 14-21).

30.    Dr. Charash has not reviewed any correctional healthcare guidelines at any point during his involvement in this case. (*Id.* at pp. 5, lines 23-25, p. 6, lines 1-12).

31.    Dr. Charash admitted during his that Nurse Fraser did not suspect that Benally was suffering from a life-threatening condition:

> **N. Patrick Hall**: "Do you believe Nurse Fraser knew that Benally was experiencing a life-threatening condition?"
>
> **Dr. Charash**: "A, no one can know. You have to suspect. And obviously her actions don't reflect—I mean, it would be pretty horrible if she suspected and didn't do anything, so I don't even think that's in the discussion. That would be ridiculous."

(*Id.* at p. 50, lines 3-9).

32.    Following Benally's death, the Coconino County Sheriff's Office ("CCSO") conducted an investigation and prepared Incident/Investigation Report No. S2201164. (*See* Exhibit 6 (Investigation Report) at Bates Nos. 000002-14).

33.    CCSO concluded that Benally died from a pulmonary thromboembolism and that his manner of death was listed as "natural causes." (*Id.* at BENALLY 000014).

Dated this ___ day of December, 2025.

BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, P.C.

By:/s/*David L. Stoll*_____
David L. Stoll, Esq.
N. Patrick Hall, Esq.
302 East Coronado Road
Phoenix, Arizona 85004
Attorneys for Defendants Leann
James and Janeen Fraser

## CERTIFICATE OF SERVICE

I hereby certify that on the ____ day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, and copies were delivered electronically via the CM/ECF filing system to all parties of record.

/s/*David L. Stoll*_____
David L. Stoll

Doc. 164318

# EXHIBIT 1

4/18/22, 7:33 PM                          CorEMR - BENALLY, GIBSON :: Summary | v5.5.0

## GIBSON BENALLY

### #J202201153

AHCCCS consent forms signed 2022/2023, Medical Exception-Lower Bunk, Medical Exception-Lower tier

Sex: Male
DOB: ▓▓▓▓▓▓▓(Age 53)
Height: 5ft 7in
Weight: 155 lbs
BMI: 24.3
SSN: ▓▓▓
Agency: CCDF
Location: MED E190 1
JMS ID: 9331
Allergies:
NKMA

Summary

| **Highlighted Chart Notes** |
| --- |
| Covid-19 test result from 04/01/22 was NEGATIVE. 04/02/2022 |

### Current Problems

| | Problem | Onset Date | Open Date |
| --- | --- | --- | --- |
| 1 | Hypertension | N/A | 08/02/2017 |

### Current Medications

| Medication | End Date |
| --- | --- |
| lisinopril30mg<br>1 tab By Mouth QD | 05/24/2022 MAR |
| Gabapentin100 mg,<br>Float medication in water and administer | 09/15/2022 MAR |
| lisinopril30mg<br>Received VO per SW,DNP, #395; give pt one tab qd for HTN | 04/24/2022 MAR |

### Tasks

Overdue Tasks: 0 View
Today's Tasks: 0 View
Upcoming Task: 1 View

### Intake Forms

| Form | Date Saved | |
| --- | --- | --- |
| CCDF Medical Screening Form-Initial | 03/25/2022 1452 | View |
| TB Form (Initial) | 04/03/2022 0903 | View |
| TB Form (Yearly) | - | Begin |

| Date | Patient Medical History |
| --- | --- |
| 04/18/2022 | Note: During his walk, Srgt. Waggoner noted that the I/M was face down on his bed in M |
| 04/18/2022 | Note: Called to F-Pod by Srgt. O'Brain at 1650 since I/M c/o SOB. I/M was found lying |
| 04/18/2022 | Note: Called to I/M bunk, reports feeling very weak and dizzy. Blood glucose 166, BP |
| 04/17/2022 | Prescription: lisinopril 30mg QD NP Lah, Fatima |
| 04/16/2022 | Document Stored: General Patient Chart Inmate Request |
| 04/16/2022 | Prescription: Gabapentin 100 mg, QHS NP Lah, Fatima |
| 04/16/2022 | Task: I/M has history of taking gabapentin 100mg po Q HS for back pain. He turned in (Completed) |
| 04/04/2022 | Document Stored: General Patient Chart Housing Units Medical Clearance Form |

Viewing 1-20 of 123 History Items
1
2
3
4
5
6
7
Next >

coremr/Modules/Chart/summary.php?pld=37367                                    1/2

**BENALLY 000096**

4/18/22, 7:33 PM                                    CorEMR - BENALLY, GIBSON :: Summary | v5.5.0

| Date | Patient Medical History |
|------|--------------------------|
| 04/04/2022 | Task: Lisinopril restarted - SW #395 Pt reports hx of htn; lisinopril 30mg Request (Completed) |
| 04/03/2022 | Task: Record PPD (Completed) |
| 04/02/2022 | Note: Covid-19 test result from 04/01/22 was NEGATIVE. |
| 04/02/2022 | Task: Covid test done 4/1/22, QED 4/3/22 (Completed) |
| 04/01/2022 | Completed Form: TB Form (Initial) by Shelley Cersosimo |
| 04/01/2022 | Task: Place PPD (Completed) |
| 03/28/2022 | Pulse: 78 BP: 135/89 |
| 03/28/2022 | Task: *check BP daily x 3 days; if any BP readings are elevated per our standing direc (Completed) |
| 03/27/2022 | Pulse: 72 BP: 129/93 |
| 03/27/2022 | Task: *check BP daily x 3 days; if any BP readings are elevated per our standing direc (Completed) |
| 03/26/2022 | Note: late entry: first dose of lisinopril given at 0840. |
| 03/26/2022 | Note: Received VO per SW,DNP, #395; order lisinopril 30mg 1 tab PO QD |

Viewing 1-20 of 123 History Items
1
2
3
4
5
6
7
Next >

BENALLY 000097

4/18/22, 7:31 PM        CorEMR - GIBSON BENALLY #J202201153 :: CCDF Medical Screening Form-Initial, Location: MED E190 1, Agency: CCDF, Inter...

# CCDF Medical Screening Form-Initial

**GIBSON BENALLY #J202201153**

| | |
|---|---|
| JMS ID: | 9331 |
| SSN: | ▬▬▬ |
| DOB: | ▬▬▬ |
| Age: | 53 |
| Agency: | CCDF |

| | |
|---|---|
| Location: | MED E190 1 |
| Ethnicity: | NON-HISPANIC |
| Interviewer: | RN James, Leann (03/25/2022 1452) |

| # | Question | Answer | |
|---|---|---|---|
| 1. | Have you been in custody at this jail before? If yes, are there any other names you have used? | ◉ Yes | |
| 2. | Are you a VETERAN of the United States Military? A yes response will automatically alert the Inmate Relations Officer ((IRO) of veteran status... | ☑ No | |
| 3. | Do you have private health insurance? (If yes, please indicate name of insurance if known) | ◉ No | |
| 4. | Do you have any medical problems that we should know about? If YES, DESCRIBE BRIEFLY...(supplement with a detailed nursing noet if indicated) | ◉ Yes | htn lisinopril 30mg unk acid reflux med reports hx of back pain with surgery last year at FMC, reports hardware placement. occasional sharp pain or numbness. Reports taking gabapentin qd; pt reports he was transfer from Holbrook and is also seen at Show Low Summit. slow uneven steady gait, slow to sit and stand from chair. |
| 5. | Do you have any allergies to food or medication? Do you have any special diet needs? If yes, please specify and generate special diet. | ◉ No | NKMA |
| 6. | Do you have any current rashes, open sores, or injuries such as cuts or sprains that we should know about? If YES, DESCRIBE BRIEFLY... (supplement with a detailed nursing note if indicated) | ◉ No | |
| 7. | Are you sick today? If YES, DESCRIBE BRIEFLY...(supplement with a detailed nursing note including temperature if indicated) | ◉ No | |
| 8. | Have you received the Covid vaccination? (If YES ask which type, when it was administered and if the full course has been completed) | ◉ No | |
| 9. | Do you have any special needs/requirements such as crutches, braces, wheelchair, hearing device, etc...If YES, DESCRIBE BRIEFLY..(supplement with a detailed nursing note if indicated and add medical exception and alert as necessary) | ◉ No | |
| 10. | Do you have any dental problems? IF YES and inmate wants to be seen by the dentist, please generate a dental task. | ◉ No | |
| 11. | Vitals: | Blood Pressure  166 [sys] 117 [dia]  Pulse  77 [beats per min] | actual weight |

coremr/Modules/Forms/form_record.php?form_record_id=137761&action=view_answers                    1/2

**BENALLY 000100**

4/18/22, 7:31 PM       CorEMR - GIBSON BENALLY #J202201153 :: CCDF Medical Screening Form-Initial, Location: MED E190 1, Agency: CCDF, Inter...

| | | Respirations | | breaths per min | |
|---|---|---|---|---|---|
| | | Temperature | 98.4 | °F | |
| | | Weight | 155 | lbs | |
| | | Height | 5ft 7in ⌄ | | |
| | | SPO2 | 24.3 | % | |
| 12. | Do you take any medications on a regular basis? If yes, document NAME/LOCATION of pharmacy. | ◉ Yes | | | see above |
| 13. | Do you have a regular doctor or clinic you go to when you are sick or hurt? If YES, document name and location if known. | ◉ Yes | | | Show Low Summit, FMC |
| 14. | Have you tested POSITIVE for Covid-19 in the last 3 months? If yes, please document approximate date and place. | ◉ No | | | |
| 15. | Have you ever had a positive tuberculosis skin test or PPD? If YES, please document where we can find those medical records...If no, and no record of PPD placement in last 12 months, generate task for PPD placement. | ◉ No | | | |
| 17. | How many days were you drinking or using drugs? | denies | | | |
| 18. | On average, how many drinks or what amount of recreational street drug(s) have you used each day? If heroin, opiates or benzodiazepines, list amount, dosage, frequency of use and time of last dose...Indicate if patient is using benzodiazepines and/or ETOH with opiates... | denies | | | |
| 19. | If the inmate is female, ask if pregnant or possibly pregnant...If the answer is "Yes" and currently using opiates, do a urine HcG immediately and follow standing directives for Opiate Detox (opiate withdrawl can be fatal to fetuses, see standing directives) | ◉ N/A | | | |
| 20. | Does the inmate appear to have any fine hand or tongue tremors? Piloerection? Sweating? Vomiting? If yes, please follow standing directives for ETOH/opiate withdrawal. | ◉ N/A | | | |
| 21. | Are you experiencing any withdrawal symptoms now? If yes, DESCRIBE BRIEFLY | ◉ N/A | | | |
| 22. | Do you have any mental health issues that we should know about? | ◉ No | | | |
| 23. | Do you have a psychiatrist or counselor that you use for mental health issues? If Yes, document name and location/address | ◉ No | | | |
| 24. | Are you currently involved in a substance abuse treatment program and if so, do you have an active prescription for medication assisted treatment such as Methadone, Buprenorphine or Naltrexone? If "Yes", please document name of medication, when they last took the medication, who prescribes it for the patient and which pharmacy they use. | ◉ No | | | |
| 25. | Do you want to hurt yourself or anyone else at this time? Do you want to take your life/kill yourself? If Yes, document a complete assessment note and initiate Suicide Watch and notify MHC. | ◉ No | | | |
| 26. | Have you ever attempted suicide in the past? If so, when? | ◉ No | | | |
| 27. | Does the inmate appear to understand the questions being asked of him/her? If an interpretor has been used to help with this assessment, please document. | ◉ Yes | | | |
| 28. | Is the individual engaging in any atypical behavior or emotional displays? If Yes, assess and refer to MHC as necessary... | ◉ No | | | |
| 29. | Race | ◉ Native American | | | |

BENALLY 000101

## ⌂TB Form (Initial)

**GIBSON BENALLY #J202201153**

| | |
|---|---|
| JMS ID: | 9331 |
| SSN: | |
| DOB: | |
| Age: | 53 |
| Agency: | CCDF |

| | |
|---|---|
| Location: | MED E190 1 |
| Ethnicity: | NON-HISPANIC |
| Interviewer: | Temp RN Cersosimo, Shelley (04/03/2022 0903) |

| | | | |
|---|---|---|---|
| 1. | Have you tested positive for Tuberculosis in the past? | ○ Yes<br>◉ No | |
| 2. | Race | ○ Caucasian<br>○ Asian<br>○ Hispanic<br>○ Native American<br>○ African American<br>○ Pacific Islander<br>◉ Other | |

**PLACEMENT**

| | | | |
|---|---|---|---|
| 3. | Date and Time PPD Test was given:<br>(Entering this information will create a nurse task to read the test results in 48-72 hours). | 04-01-22 0800 | |
| 4. | Placement location | ◉ Right forearm<br>○ Other (please specify) | |

**READING**

| | | | |
|---|---|---|---|
| 5. | Date & Time Read (should be 48-72 hours after placement) | | 04-03-22 0800 |
| 6. | MM INDURATION<br>Be sure that you are measuring INDURATION only and not redness. | 0 MM | |
| 7. | Schedule a Chest X-Ray? | ○ Yes<br>◉ No | |
| 8. | X-ray results: | NA | |

**GUIDELINES FOR DEFINING POSITIVE RESULTS:**

1) An induration of 5 or more MM is considered positive for:
a) People who are HIV+; b) Close contacts of known infectious individuals; c) People whose chest x-ray results indicate previous TB disease; and d) IV drug users with unknown HIV status.
2) An induration of 10 or more MM is considered positive for the remainder of the population that we screen at the jail.

Isolate only if individual has fever, cough, night sweats, recent weight loss or other signs of active TB.

| | | |
|---|---|---|
| Results | ○ +<br>◉ - | |

**BENALLY 000102**

4/18/22, 7:31 PM                          CorEMR - BENALLY, GIBSON :: Tasks | v5.5.0

## GIBSON BENALLY

### #J202201153

AHCCCS consent forms signed 2022/2023, Medical Exception-Lower Bunk, Medical Exception-Lower tier

Sex: Male
DOB: ▓▓▓▓▓▓ (Age 53)
Height: 5ft 7in
Weight: 155 lbs
BMI: 24.3
SSN: ▓▓▓▓▓▓
Agency: CCDF
Location: MED E190 1
JMS ID: 9331
Allergies:
NKMA

Tasks
Historic (36)
## Tasks

Viewing 1-10 of 36 items
1
2
3
4
Next >

| | | |
|---|---|---|
| 1<br><br>04-16-2022 | Doctor/NP<br>At staff request<br>I/M has history of taking gabapentin 100mg po Q HS for back pain. He turned in an IRF requesting to restart. See records from Show Low Summit.<br><br>[Created by: Temp RN Cersosimo, Shelley at 04-16-2022 14:09:41]<br>[Completed by: Wolfe PNP, Summer at 04-16-2022 16:06:28] | Update Notes<br><br>• **Completed Appointment** - Gabapentin ordered to be floated in water. [PNP Wolfe, Summer on 04-16-2022] |
| 1<br><br>04-04-2022 | Doctor/NP<br>At staff request<br>Lisinopril restarted - SW #395<br><br>Pt reports hx of htn; lisinopril 30mg<br>Requesting records to verify. Pt with elevated BP, will continue to monitor per SD.#407<br><br>3/26 per Show Low Summit records scanned, pt rx'd the following meds as of 1/4/22:<br>levofloxacin 750mg 1 tab PO qd expired 1/10/22<br>percocet 1 tab PO PRN expired 1/29/22<br>gabapentin 100mg qhs expired 1/29/22 (back pain w/ hardware in place)<br>Lisinopril 30mg 1 tab qd expires 10/12/22<br>Pt has hx of GERD, HTN back pain, hx of h. pylori, GI bleed in Jan<br><br>[Created by: RN James, Leann at 03-25-2022 15:00:01]<br>[Completed by: Wolfe PNP, Summer at 03-29-2022 14:02:36] | Update Notes<br><br>• **Completed Appointment** - Completed Appointment [PNP Wolfe, Summer on 03-29-2022] |
| 1<br><br>04-03-2022 | Nurse - TB<br>At staff request<br>Record PPD<br>[Created by: Temp RN Cersosimo, Shelley at 04-01-2022 09:10:35]<br>[Completed by: Cersosimo Temp RN, Shelley at 04-03-2022 09:02:29] | Update Notes<br><br>• **Completed Appointment** - Completed Appointment [Temp RN Cersosimo, Shelley on 04-03-2022] |
| 1<br><br>04-02-2022 | Covid Test Pending<br>At staff request<br>Covid test done 4/1/22. QED 4/3/22<br>[Created by: RN LAWVER, Shelia at 03-25-2022 07:39:02]<br>[Completed by: Fraser, Janeen at 04-02-2022 15:37:32] | Update Notes<br><br>• **Completed Appointment** - Completed Appointment [Fraser, Janeen on 04-02-2022] |
| 1<br><br>04-01-2022 | Nurse - TB<br>At staff request<br>Place PPD<br>[Created by: RN LAWVER, Shelia at 03-25-2022 07:38:30]<br>[Completed by: Cersosimo Temp RN, Shelley at 04-01-2022 09:10:00] | Update Notes<br><br>• **Completed Appointment** - Completed Appointment [Temp RN Cersosimo, Shelley on 04-01-2022] |
| 1<br><br>03-28-2022 | Nurse - Vital Signs<br>At staff request<br>*check BP daily x 3 days; if any BP readings are elevated per our standing directives (>140/90), generate a task to continue BP checks 2 x per week x 2 weeks and enter a task for medical provider to review BP at the end of that 2 week period<br><br>[Created by: RN James, Leann at 03-25-2022 14:52:33]<br>[Completed by: Young, Damon at 03-28-2022 09:42:25] | Update Notes<br><br>• **Completed Appointment** - Completed Appointment [Young, Damon on 03-28-2022] |
| 1 | Nurse - Vital Signs<br>At staff request<br>*check BP daily x 3 days; if any BP readings are elevated per our standing directives | Update Notes<br><br>• **Completed Appointment** - Completed |

coremr/Modules/Chart/tasks.php?viewing_type=historic&pid=37367                                    1/2

BENALLY 000103

4/18/22, 7:31 PM                                    CorEMR - BENALLY, GIBSON :: Tasks | v5.5.0

| | | |
|---|---|---|
| 03-27-2022 | (>140/90), generate a task to continue BP checks 2 x per week x 2 weeks and enter a task for medical provider to review BP at the end of that 2 week period<br><br>[Created by: RN James, Leann at 03-25-2022 14:52:33]<br>[Completed by: LAWVER RN, Shella at 03-27-2022 09:17:12] | Appointment [RN LAWVER, Shella on 03-27-2022] |
| 1<br><br>03-26-2022 | Nurse - Vital Signs<br>At staff request<br>*check BP daily x 3 days; if any BP readings are elevated per our standing directives (>140/90), generate a task to continue BP checks 2 x per week x 2 weeks and enter a task for medical provider to review BP at the end of that 2 week period<br><br>[Created by: RN James, Leann at 03-25-2022 14:52:33]<br>[Completed by: LAWVER RN, Shella at 03-26-2022 08:34:18] | Update Notes<br><br>• Completed Appointment - Completed Appointment [RN LAWVER, Shella on 03-26-2022] |
| 1<br><br>03-26-2022 | Doctor/NP<br>At staff request<br>Pt reports hx of htn; lisinopril 30mg<br>Requesting records to verify. Pt with elevated BP, will continue to monitor per SD.#407<br><br>3/26 per Show Low Summit records scanned, pt rx'd the following meds as of 1/4/22:<br>levofloxacin 750mg 1 tab PO qd expired 1/10/22<br>percocet 1 tab PO PRN expired 1/29/22<br>gabapentin 100mg qhs expired 1/29/22 (back pain w/ hardware in place)<br>Lisinopril 30mg 1 tab qd expires 10/12/22<br>Pt has hx of GERD, HTN back pain, hx of h. pylori, GI bleed in Jan<br><br>[Created by: RN James, Leann at 03-25-2022 15:00:01]<br>[Last modified: James RN, Leann at 03-26-2022 08:45:15] | Update Notes<br><br>• Rescheduled Appointment - received VO for lisinopril; r/s task to office hours. [RN James, Leann on 03-26-2022] |
| 1<br><br>03-25-2022 | Needs Assessment<br>At staff request<br>needs assessment<br><br>[Created by: RN LAWVER, Shella at 03-25-2022 07:37:20]<br>[Completed by: James RN, Leann at 03-25-2022 14:52:45] | Update Notes<br><br>• Completed Appointment - Completed Appointment [RN James, Leann on 03-25-2022] |

Viewing 1-10 of 36 Items
1
2
3
4
Next >

BENALLY 000104

4/18/22, 7:31 PM                          CoreEMR - BENALLY, GIBSON :: Chart Notes | v5.5.0

## GIBSON BENALLY

### #J202201153

AHCCCS consent forms signed 2022/2023, Medical Exception-Lower Bunk, Medical Exception-Lower
tier

Sex: Male
DOB: ████████ (Age 53)
Height: 5ft 7in
Weight: 165 lbs
BMI: 24.3
SSN: ████████
Agency: CCDF
Location: MED E190 1
JMS ID: 9331
Allergies:
NKMA

Chart Notes
# Chart Notes

| Type: Medical Note ⌄ | Date: 04/18/2022 19:14    Author: Fraser, Janeen | Related Problems |
| Access: Medical Staff | During his walk, Srgt. Waggoner noted that the I/M was face down on his bed in Medical 190. He did not respond to attempts to gain his attention. I/M was found nonresponsive, was moved to the floor of his cell and chest compressions were initiated at 1803. Srgt. Waggoner called out for help and Code 3. Nurses Heeth #954 and Tate #958 were first to arrive on the scene. Oxygen was initiated at 15 LPM via ambu bag and the AED pads were applied to his chest, Nurse #954 took over compressions, Nurse #956 maintained the oxygen via ambu bag and provided breaths per CPR guidelines. Central Control was called and requested that paramedics be summoned to the Medical Department for an active code. At 1806, the AED was activated and compressions were recommended to be resumed. Compressions were resumed at 1807. At 1808, Srgt. O'Brein took over compressions. The AED had compressions be stopped, no shock was recommended and compressions were resumed. At 1809, the airway was repositioned and maintained by Nurse James #407. The ambu bag and oxygen continued to be maintained by Nurse #956 with breaths given per CPR guidelines. Nurse #954 took over compressions at this time. At 1810, I/M was noted to be diaphoretic and his skin was cool to the touch. The AED requested that compressions cease, no shock was recommended and compressions were resumed. At 1812, Lt. Hover stepped in to provide compressions. Nurse #407 reported that the I/M pupils were fixed at that time. At 1813, the AED requested that compressions cease, no shock was recommended and compressions were resumed. At 1813, Nurse #407 noted that the I/M had frothing around his mouth. She continued to assist with positioning of his head while Nurse #956 maintained the oxygen via ambu bag and provided breaths. Nurse #954 took over chest compressions. At 1815, the AED was analyzing, no shock was recommended and CPR was resumed. At 1816, paramedics from Guardian arrived on scene. At 1817, paramedic staff stepped in to provide chest compressions. At 1818, compressions were stopped for AED analyzing, no shock was recommended and chest compressions were taken over by Nurse #954 at 1819. At 1820, Nurse #954 completed chest compressions and the paramedic staff resumed compressions at 1821. Complete care was then transferred to the paramedic staff at this time. | |
| Type: Medical Note ⌄ | Date: 04/18/2022 17:53    Author: Fraser, Janeen | Related Problems |
| Access: Medical Staff | Called to F-Pod by Srgt. O'Brein at 1650 since I/M c/o SOB. I/M was found lying on his bed upon my arrival. He reported that he started feeling poorly on Thursday (April 14). He stated that he felt dizzy. Other I/M were gathered around him and had placed cool, wet washcloths on his head and chest. BP was 119/77, P 116, O2 sats 98%. I/M was instructed to sit up on the edge of the bed. BP 115/77, P 100. He was then instructed to stand with a BP of 114/70, P 121. I/M stated that he had Covid-19 in early 2020. He denied any lingering symptoms since then. I/M reported only drinking four glasses of water/day. He was reassured that his vital signs were normal. He walked to the table to eat his dinner. As I was walking back to the Medical Department, Srgt. O'Brein was calling for me again. He stated that the I/M was reporting being dizzy. I/M was found sitting at the table. The other inmates had placed a dripping, wet washcloth on his head. I/M was found to be hyperventilating. His BP was 148/65, P 62, O2 sats 92%. He had to be repeatedly encouraged to slow down his breathing. Once he was more calm, his BP was 107/79, P 51. Within minutes of leaving the pod, Srgt. O'Brein called the Medical Department to report that I/M was c/o chest pain. He was transported to the | |

coremr/Modules/Chart/notes.php?pid=37367                                                                    1/2

BENALLY 000105

4/18/22, 7:31 PM                          CorEMR - BENALLY, GIBSON :: Chart Notes | v5.5.0

|  | Medical Department via w/c. After leaving the pod, his breathing slowed and he appeared to relax. Report verbally given to night nurse. |  |
|---|---|---|
| Type: Medical Note<br>Access: Medical Staff | **Date:** 04/18/2022 00:25          **Author:** RN Heath, Dayna<br>Called to I/M bunk, reports feeling very weak and dizzy. Blood glucose 166, BP 142/106 HR 100. No s/s of distress, no diaphoresis, no vomiting, or blurred vision. Encouraged I/M to rest on L side and to notify medical staff for any status change. I/M verbalized understanding. | Related Problems |
| Type: Medical Note<br>Access: Medical Staff | **Date:** 04/02/2022 15:37          **Author:** Fraser, Janeen<br>Covid-19 test result from 04/01/22 was NEGATIVE. | Related Problems |
| Type: Medical Note<br>Access: Medical Staff | **Date:** 03/26/2022 12:43          **Author:** RN James, Leann<br>late entry: first dose of lisinopril given at 0840. | Related Problems |
| Type: Medical Note<br>Access: Medical Staff | **Date:** 03/26/2022 08:46          **Author:** RN James, Leann<br>Received VO per SW,DNP, #395; order lisinopril 30mg 1 tab PO QD | Related Problems |
| Type: Medical Note<br>Access: Medical Staff | **Date:** 03/25/2022 14:48          **Author:** RN James, Leann<br>LLLB given d/t fragility; hx of back surgery with hardware placement. | Related Problems |
| Type: Misc. Note<br>Access: Medical Staff | **Date:** 09/09/2017 10:02          **Author:** Guthrie, Andrea<br>LLLB - started ETOH protocol | Related Problems |

**BENALLY 000106**

4/18/22, 7:31 PM                              CorEMR - Flow Sheets :: Vital Signs | v5.5.0

## GIBSON BENALLY

### #J202201153

AHCCCS consent forms signed 2022/2023, Medical Exception-Lower Bunk, Medical Exception-Lower tier

Sex: Male
DOB: ▮▮▮▮▮ (Age 53)
Height: 5ft 7in
Weight: 155 lbs
BMI: 24.3
SSN: ▮▮▮▮▮
Agency: CCDF
Location: MED E190 1
JMS ID: 9331
Allergies:
NKMA

Flow Sheets
Vital Signs
# Vital Signs

Viewing 1-23 of 23 Flow Records

| User | Record Date | Pos | BP Sys | BP Dia | Pulse | Resp. | Temp. | Weight | Height | BMI | $S_pO_2$ | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Young, Damon | 03/28/2022 0941 | Sitting | 135 | 89 | 78 | | | | | | | |
| RN LAWVER, Sheila | 03/27/2022 0916 | Sitting | 129 | 93 | 72 | | | | | | | |
| RN LAWVER, Sheila | 03/26/2022 0834 | Sitting | 150 | 98 | 79 | | | | | | | |
| RN James, Leann | 03/25/2022 1452 | Sitting | 166 | 117 | 77 | | 98.4 °F | 155 lbs | 5ft 7in | 24.30 | | actual weight |
| Hirsch, Lisa | 09/12/2017 0921 | Sitting | 154 | 113 | 78 | | | | | | | alert, no FTT/hand tremors, denies N/V |
| Worfolk-Elam, Laura | 09/11/2017 0911 | Sitting | 149 | 104 | 92 | | | | | | | no FHT/FTT, no pilo, no hallucinations |
| Worfolk-Elam, Laura | 09/11/2017 0800 | Sitting | 153 | 105 | 89 | | | | | | | alert - no ftt no fht no diaphoresis denies n/v |
| Guthrie, Andrea | 09/09/2017 1006 | Sitting | 169 | 102 | 108 | | | 194 lbs | 5ft 7in | 30.40 | | self reports ht |
| Guthrie, Andrea | 09/09/2017 0847 | - - - | | | | | | | 5ft 7in | .00 | | |
| RN Fulmer, Katrina | 08/30/2017 0719 | Sitting | 157 | 104 | 86 | | | | | | | |
| Hirsch, Lisa | 08/29/2017 0816 | Sitting | 139 | 102 | 89 | | | | | | | |
| RN Fulmer, Katrina | 08/29/2017 0856 | Sitting | 145 | 104 | 96 | | | 191 lbs | 5ft 7in | 29.90 | | |
| Guthrie, Andrea | 08/16/2017 0922 | Sitting | 134 | 99 | 84 | | | | | | | alert - no ftt no fht no diaphoresis denies n/v |
| RN Fulmer, Katrina | 08/14/2017 0753 | Sitting | 152 | 108 | 86 | | | | | | | alert, no fht/ftt, denies n/v |
| RN Fulmer, Katrina | 08/13/2017 0750 | Sitting | 152 | 109 | 90 | | | | | | | alert, no fht/ftt, c/o nausea |
| Worfolk-Elam, Laura | 08/13/2017 0651 | Sitting | 175 | 109 | 82 | | | | | | | No FHT/ FTT, alert and oriented |
| RN Fulmer, Katrina | 08/12/2017 1535 | Sitting | 166 | 114 | 128 | | | | | | | +FHT/FTT, c/o nausea, started on protocol, given green band |
| Worfolk-Elam, Laura | 08/12/2017 1015 | Sitting | 164 | 114 | 113 | | | 198 lbs | 5ft 7in | 31.00 | | |
| RN Fulmer, Katrina | 08/02/2017 0730 | Sitting | 137 | 100 | 71 | | | | | | | |
| Guthrie, Andrea | 08/01/2017 0810 | Sitting | 149 | 101 | 78 | | | | | | | |
| Hirsch, Lisa | 07/31/2017 0803 | Sitting | 147 | 100 | 79 | | | | | | | |
| Hirsch, Lisa | 07/30/2017 0755 | Sitting | 147 | 103 | 88 | | | | | | | |
| Worfolk-Elam, Laura | 07/27/2017 1043 | Sitting | 131 | 94 | 82 | | | 200 lbs | 5ft 7in | 31.30 | | ht/wt per inmate |

Viewing 1-23 of 23 Flow Records

**BENALLY 000107**

4/18/22, 7:31 PM                          CorEMR - BENALLY, GIBSON :: Medication | v5.5.0

## GIBSON BENALLY

### #J202201153

AHCCCS consent forms signed 2022/2023, Medical Exception-Lower Bunk, Medical Exception-Lower
tier

Sex: Male
DOB: ▮▮▮▮▮▮▮ (Age 63)
Height: 5ft 7in
Weight: 155 lbs
BMI: 24.3
SSN: ▮▮▮▮▮▮
Agency: CCDF
Location: MED E180 1
JMS ID: 9331
Allergies:
NKMA

Medication
Medications
# Medication

| Medication | Start Date | End Date | Clinician | Status | Dist |
|---|---|---|---|---|---|
| Gabapentin100 mg.<br>Float medication in water and administer | 04/16/2022 | 05/15/2022 | NP Fatima Lah | O Pending<br>Blister Pack | Sched |
| lisinopril30mg<br>1 tab By Mouth QD | 04/25/2022 | 05/24/2022 | NP Fatima Lah | O Pending<br>Blister Pack | Sched |
| lisinopril30mg<br>Received VO per SW,DNP, #395; give pt one tab qd for HTN | 03/26/2022 | 04/24/2022<br>(EXPIRING<br>SOON) | PNP Summer Wolfe | O Pending<br>Blister Pack | Sched |

coremr/Modules/Chart/medication.php?pid=37367

**BENALLY 000108**

No ENEMIES

**COCONINO COUNTY**
# SHERIFF'S OFFICE
*Jim Driscoll, Sheriff*

## COCONINO COUNTY DETENTION FACILITY
## HOUSING UNITS MEDICAL CLEARANCE FORM

**PURPOSE:** Form is to be completed ONLY by MEDICAL STAFF when clearing an inmate from MEDICAL/ISOLATION/BEHAVIORAL hold from any cell designated for Medical/Behavioral Isolation or Quarantine, to be moved to another housing assignment.

**INMATE NAME:** *Gibson Benally*

**INMATE DATE OF BIRTH:** ▓▓▓▓▓

**IS THE INMATE:**
Alert and Oriented (x3)          YES ☒ NO ☐        A307
Able to ambulate on own          YES ☒ NO ☐        04/03/22
Without S/S of COVID-19          YES ☒ NO ☐

**IF ANY OF THE ABOVE IS NO, DO NOT TRANSFER.**

**DOES THE PATIENT HAVE ANY CURRENT MEDICAL EXCEPTIONS?**     YES ☒ NO ☐
**IF YES, SPECIFY. (USE SPACE BELOW):**
                                    LLB

**INMATE IS BEING TRANSFERRED FROM THE FOLLOWING LOCATION:**

GENERAL POPULATION ☐
QUARANTINE          ☒
ISOLATION           ☐
MEDICAL/BEHAVIOR    ☐

**INMATE IS TO BE TRANSFERRED TO THE FOLLOWING LOCATION:**

GENERAL POPULATION ☒   LOCATION: F3 (18)
QUARANTINE          ☐   LOCATION: _____   END DATE: __/__/__
ISOLATION           ☐   LOCATION: _____   END DATE: __/__/__

**ADDITIONAL NOTES (PENDING TEST, ETC.):**

**CLEARED BY:** *Carmen Yazzi, RN*   04/03/22 @ 1535
                RN/NP/MD              DATE/TIME

DETENTION STAFF: Please be aware that an inmate on any MEDICAL/ISOLATION/BEHAVIORAL hold cannot be moved from their current housing assignment UNLESS cleared by Medical Staff and a Medical Clearance Form is signed by an RN/NP/MD. If any time prior to or during the movement, you feel the inmate's condition changes and warrants another evaluation by an RN/NP/MD, notify medical staff immediately. Otherwise, please sign and return this form to Medical Staff.

**TRANSFERRED BY:** _____  467  4/3/22 @ 1057
                    SIGNATURE/BADGE      DATE/TIME

*"SERVICE TO COMMUNITY"*

911 E. Sawmill Rd. • Flagstaff, AZ 86001 • phone (928) 774-4523 or (1-800) 339-7033 • www.coconino.az.gov/sheriff.aspx

**BENALLY 000109**

## COCONINO COUNTY SHERIFF'S OFFICE
## INMATE REQUEST FOR HEALTH SERVICES

Print Name: _Gibson Benally_          DOB: ▮▮▮▮▮▮

Date: _4-14-22_          Dorm: _F-300_

You are required to be truthful. Failure to be cooperative and any abuse of the health care system or its staff could cause a delay in delivery of care to you and others, and may result in disciplinary action. Use this form to describe one issue only and return to nursing staff.

Nature of problem or request:

_I was told my records well be check Before I get my pain pills. nothing yet I came here. March 24, 2022. I was getting gabpentin and hydro codine for my back outside_

Service Requested: __X__ medical  _____ mental health  _____ dentist

I understand that, per ARS 31-161, I will be charged a $10.00 Health Service fee (excluding exemptions granted by statute) for each visit/treatment that I am herein requesting. I understand I do not have the right to dictate treatment or who provides treatment.

_Gibson Benally_

Inmate's Signature (signature needed for consent to treatment)

---

### HEALTH CARE DOCUMENTATION

Received by Nursing Staff: (DATE/TIME/BADGE NUMBER) _905   0800   4/6/22_

Subjective: _C/O Back Pain_

Objective: BP: _____ P: _____ SaO2%: _____ R: _____ T: _____
(If indicated)

Assessment: _Would like to restart gabapentin._

Plan: _Refer to NP for her consideration._

Refer to: ____ Physician/NP  ____ Mental Health  ____ Dental  ____ Charge RN

Badge #: _489_  Title: _RN_  Date: _4-16-22_  Time: _1400_

BENALLY 000110

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| March 25, 2022 at 4:17:35 PM MST | 72093_SUMMIT_HELTHCA | 1022 | 38 | Received |

03/25/22  19:08:47  72093_SUMMIT_HELTHCA -> CCSO                72093_SUMMIT_HELTHCA Page 001

This message was sent securely using Zix®

This message is for the designated recipient(s) only. It may contain privileged, confidential, proprietary, or otherwise private information that is legally protected. If you have received it in error, please notify the sender immediately and delete the original. You are prohibited from using or distributing this email without permission. Thank you.

This message was secured by Zix®.

**BENALLY 000111**

# EXHIBIT 2

## SWORN DECLARATION OF JANEEN FRASER

I, Janeen Fraser, being first duly sworn, upon my oath, depose, and say:

1.    I am above the age of 18 and I am competent to provide the information in this Declaration.

2.    I have been named as a party in Arizona District Court No. 3:24-v-08049-MTL-MTM.

3.    I have personal knowledge concerning the matters set forth below based on my firsthand witness of events, as well as my personal review of information contained in medical records produced as Bates Nos. BENALLY 000096-111 in Arizona District Court No. 3:24-cv-08049-MTL-MTM, and information provided in Coconino County Sheriff's Office Investigation Report No. S2201164, produced in Arizona District Court Case No. 3:24-cv-08049-MTL-MTM as Bates Nos. BENALLY 000002-12.

4.    I have worked as a Registered Nurse since 1983.

5.    I am a former employee of Coconino County, which employed me as a Registered Nurse at the Coconino County Detention Facility in Flagstaff, Arizona.

6.    I was employed in this capacity between approximately 2021-2023.

7.    On or about April 18, 2022, at approximately 5:03 p.m., I was called to attend to an inmate named Gibson Benally ("Benally").

8.    Benally stated that he had not been feeling well for a few days and complained to me about dizziness.

9.    I measured Benally's vital signs on three occasions while Benally was laying down, sitting, and standing.

10.    Based on my training and experience as a Registered Nurse, I concluded that Benally's vital signs were within normal limits.

11.    At approximately 5:09 p.m., Benally walked to a table to eat dinner and I returned toward the nursing station to report on Benally.

12.    As I was returning to the nursing station, I was called back to attend to Benally again at approximately 5:13 p.m.

13.    Benally was sitting at the table and seemed to be hyperventilating.

14.    I encouraged Benally to slow down his breathing because he appeared to be anxious, which is a common experience for many inmates.

15.    Benally was able to calm his breathing.

16.    After Benally calmed his breathing, I took his vital signs again while he was sitting.

17.    Benally's vitals appeared to be once again within normal limits based on my training and experience as a Registered Nurse.

18.    At approximately 5:20 p.m., Benally was taken back to his bunk, and I left his dorm at approximately 5:21 p.m. to return to the nursing station and continue my report about Benally.

19.    I did not interact with Benally at any time after 5:21 p.m.

20.    While I was reporting on Benally, someone called the nursing station regarding Benally.

21.    Nurse Dayna Heath responded and moved Benally to the medical unit at approximately 5:36 p.m.

22.     Benally never once complained to me about chest pain during either of my encounters with him.

23.     Based on my observations, and my training as a Registered Nurse, I did not suspect that Benally was suffering from an imminent, life-threatening condition during either of my two encounters with him.

24.     If I had known or suspected that Benally was suffering from an imminent, life-threatening condition, I would have called for an emergency response.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and recollection.

DATED this _5th_ day of December, 2025.

Janeen Fraser, RN

# EXHIBIT 3



UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


RENALDA BENALLY,

      Plaintiff,

vs.        Case Number:  3:24-cv-08049-MTL-MTM

Coconino County, et al.,

      Defendants.

_____


REMOTE STREAMING DEPOSITION OF

JANEEN RENE FRASER, RN


TAKEN ON

WEDNESDAY, JUNE 11, 2025

9:03 A.M.


GRAND FORKS, NORTH DAKOTA 58201

NAEGELI
DEPOSITION & TRIAL

(800) 528 - 3335
NAEGELIUSA.COM

*Nationwide*

COURT REPORTING

LEGAL VIDEOGRAPHY

REMOTE DEPOSITIONS

TRIAL PRESENTATION

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS

*Powerful*
LITIGATION SUPPORT

NAEGELI
DEPOSITION & TRIAL | (800) 528-3335
NAEGELIUSA.COM

```
 1                    REMOTE APPEARANCES

 2

 3   Appearing on behalf of the Plaintiff, Renalda

 4   Benally:

 5   MIKAYLA S. YOUNG, ESQUIRE

 6   Loevy & Loevy

 7   311 North Aberdeen Street, 3rd Floor

 8   Chicago, Illinois 60607

 9   (312) 243-5900

10   young@loevy.com

11

12   Appearing on behalf of the Defendants, Fraser and

13   James:

14   DAVID L. STOLL, ESQUIRE

15   Beaugureau Hancock Stoll & Schwartz, PC

16   302 East Coronado Road

17   Phoenix, Arizona 85004

18   (602) 956-4438

19   dstoll@bhsslaw.com

20

21

22

23

24

25
```

```
 1              REMOTE APPEARANCES (CONTINUED)

 2

 3   Appearing on Behalf of the Defendant, Wexford:

 4   JOHN KLECAN, ESQUIRE

 5   Jones Skelton & Hochuli, PLC

 6   40 North Central Avenue, Suite 2700

 7   Phoenix, Arizona 85004

 8   (602) 263-4408

 9   jklecan@jshfirm.com

10

11   Appearing on Behalf of the Defendants, Advanced

12   Correctional Healthcare, Inc., USA Medical and

13   Psychological Staffing, Perkins, and Shields:

14   LYNETTE ODOM, ESQUIRE

15   Broening Oberg Woods & Wilson, PC

16   2800 North Central Avenue, Suite 1600

17   Phoenix, Arizona 85004

18   (602) 258-7700

19   lo@bowwlaw.com

20

21

22

23

24

25
```

JANEEN FRASER                        June 11, 2025                        4
85897

```
 1              REMOTE APPEARANCES (CONTINUED)

 2

 3  Appearing on Behalf of the Defendants Dayne Heath,

 4  AB Staffing:

 5  TOM SLUTES, ESQUIRE

 6  Slutes Sakrison & Rogers

 7  4801 East Broadway Boulevard, Suite 301

 8  Tucson, Arizona 85711

 9  (520) 624-6691

10  tslutes@sluteslaw.com

11

12  Appearing on Behalf of Defendants Coconino County,

13  Navajo County, Driscoll, Axlund, O'Brien, Navajo

14  County, Navajo County Jail, Garcia, and Clouse:

15  ASHLEE B. HESMAN, ESQUIRE

16  Struck Love Acedo, PLC

17  3100 West Ray Road, Suite 300

18  Chandler, Arizona 85226

19  (480) 420-1600

20  ahesman@strucklove.com

21

22

23

24

25
```

JANEEN FRASER                        June 11, 2025                              5
85897

```
 1                          EXAMINATION INDEX

 2                                                        PAGE

 3

 4    EXAMINATION BY MS. YOUNG                              8

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JANEEN FRASER                    June 11, 2025                         6
85897

```
 1                        EXHIBIT INDEX

 2    EXHIBIT                                          PAGE

 3

 4                      (NONE MARKED)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              REMOTE DEPOSITION OF

2            JANEEN RENE FRASER, RN

3                  TAKEN ON

4          WEDNESDAY, JUNE 11, 2025

5                  9:03 A.M.

6

7          THE REPORTER:  We're on the record at 9:03

8    a.m.

9          Ms. Fraser, please raise your right hand.

10         Do you affirm under penalty of perjury

11   that the testimony you're about to give will be the

12   truth, the whole truth, and nothing but the truth?

13         THE DEPONENT:  I do.

14         THE REPORTER:  Will each attorney please

15   state their name and whom they represent?

16         MS. YOUNG:  Mikayla Young on behalf of the

17   plaintiff.

18         MR. STOLL:  David Stoll on behalf of

19   defendants Fraser and James.

20         MS. HESMAN:  Ashlee Hesman on behalf of

21   Coconino County, Coconino County Jail District,

22   James Driscoll, Bret Axlund and Patrick O'Brien,

23   Navajo County, Navajo County Jail District, Ernie

24   Garcia, and David Clouse.

25         MR. KLECAN:  Jack Klecan on behalf of

1  Wexford.

2          MR. SLUTES:  Tom Slutes for Dayna Heath

3  and a couple other nurses.

4          MS. ODOM:  Lynette Odom on behalf of

5  defendants Advanced Correctional Healthcare, Inc.,

6  USA Medical, and Psychological Staffing, April

7  Perkins, and Desiree Shields.

8          THE REPORTER:  All right.  Thank you.  You

9  may proceed.

10 JANEEN RENE FRASER, RN, having been first duly

11 affirmed to tell the truth, was examined, and

12 testified as follows:

13 EXAMINATION

14 BY MS. YOUNG:

15     Q.   Good morning, Ms. Fraser.  Could you go

16 ahead and state your full name and spell it for me?

17     A.   Sure.  My name is Janeen Rene Fraser.

18 J-a-n-e-e-n, R-e-n-e, F-r-a-s-e-r.

19     Q.   And what is your current occupation and

20 place of employment?

21     A.   I'm -- I'm currently working as a

22 registered nurse and a certified diabetes educator.

23 I work remotely for a company called IQVIA.

24     Q.   And how long have you been there?

25     A.   Since August of 2024.

```
 1              THE DEPONENT:  I'm assuming, yes.
 2   BY MS. YOUNG:
 3        Q.   And do you recall how much longer you were
 4   on the clock after this incident?
 5        A.   I was actually getting ready to leave when
 6   they called the code.  My shift had ended.
 7        Q.   And do you recall how long past your shift
 8   ending you stayed?
 9        A.   I mean, when the code was over, and the
10   debriefing was over.  I don't know the exact time.
11        Q.   Can you give me an estimate?
12        A.   Maybe two hours.  I don't know.
13        Q.   And do you recall what happened once
14   emergency medical services showed up?
15        A.   They took over his care.
16        Q.   And was he called at the jail or once he
17   was taken off the premises?
18        A.   I believe at the jail.
19        Q.   I think that's all the questions I have if
20   anybody has any --
21              MS. HESMAN:  I have nothing.
22              MR. STOLL:  Nor I.
23              MR. KLECAN:  Nor I.
24              MS. ODOM:  I don't either.
25              MR. STOLL:  Oh, she will read and sign.
```

# EXHIBIT 4

## SWORN DECLARATION OF LEANN JAMES

I, Leann James, being first duly sworn, upon my oath, depose, and say:

1.      I am above the age of 18 and I am competent to provide the information provided in this Declaration.

2.      I have been named as a party in Arizona District Court No. 3:24-v-08049-MTL-MTM.

3.      I have personal knowledge concerning the matters set forth below based on my firsthand witness of events, as well as my personal review of information contained in medical records produced as Bates Nos. BENALLY 000096-111 in Arizona District Court No. 3:24-cv-08049-MTL-MTM, and information provided in Coconino County Sheriff's Office Investigation Report No. S2201164, produced in Arizona District Court Case No. 3:24-cv-08049-MTL-MTM as Bates Nos. BENALLY 000002-12.

4.      I have been a licensed Registered Nurse in the State of Arizona since 2017.

5.      I was employed by Coconino County at the Coconino County Detention Center on or about April 18, 2022.

6.      I did not personally interact with or observe inmate Gilbert Benally ("Benally") at any time on April 18, 2022, until approximately 6:10 p.m., after Sergeant Wagoner found Benally nonresponsive in the Detention Center's medical unit.

7.      Prior to Benally being found nonresponsive at approximately 6:10 p.m., I did not receive any information that would have given me reason to know or suspect that Benally was suffering from an imminent, life-threatening condition.

Scanned with
CamScanner

8.      If I had known or suspected that Benally was suffering from an imminent, life-threatening condition, I would have called for an emergency medical response.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and recollection.

DATED this ___ day of December, 2025.

LeAnn James, RN

# EXHIBIT 5

Transcript of the Testimony of

# Bruce Charash MD

November 17, 2025

Benally v. Coconino County, et al



3240 E. Union Hills Drive, Suite 159
Phoenix, AZ  85050
Office: 888.606.1973 / 602.265.5974
Fax: 602.265.1332
brs@bamfordreporting.com
www.bamfordreporting.com

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


Renalda Benally, as              )
Administrator of the Estate      )
of Gibson Benally, and on        )
her own behalf,                  )
                                 )
          Plaintiff,             )
                                 ) No. 3:24-v-08049-MTL-MTM
     vs.                         )
                                 )
Coconino County; et al.,         )
                                 )
          Defendants.            )
_____)


DEPOSITION OF BRUCE CHARASH, M.D.

(Videoconference)


New York, New York
November 17, 2025
12:01 p.m. (EST)



TAKEN BY:  Wanda J. Curry, RMR
           CR No. 50366 (AZ)

Benally v. Coconino County, et al                    Bruce Charash MD

Page 2

```
 1                        I N D E X

 2    BRUCE CHARASH, M.D.

 3                      EXAMINATION
                                      Page   Line
 4
      BY:  Mr. Hall .  .  .  .  .  .  .  .  .  . 4      6
 5    BY:  Mr. Slutes  .  .  .  .  .  .  .  . 56        7
      BY:  Mr. Hall (Further).  .  .  .  .  .  . 66     7
 6

 7

 8

 9
                        EXHIBITS
10    No.                                       Page

11    Exh. 1  CCSO Incident/Investigation Report  22
              (BENALLY 000002-000016)
12

13

14

15

16                      RECESSES
                                      Page   Line
17    (Recess at 12:23 p.m.; resumed at 12:28 p.m.) 22   2
      (Recess at 1:06 p.m.; resumed at 1:16 p.m.)  51   18
18

19

20

21

22

23

24

25
```

Benally v. Coconino County, et al                    Bruce Charash MD

Page 3

1          BE IT REMEMBERED that the deposition of

2     BRUCE CHARASH, M.D., was taken via videoconference in

3     New York, New York, before WANDA J. CURRY, a Certified

4     Reporter, Certificate No. 50366, in and for the State

5     of Arizona, on November 17, 2025, commencing at

6     12:01 p.m. (EST).

7

8     APPEARANCES:

9     For Plaintiff:
              LOEVY + LOEVY
10            Maria Makar, Esq.
              makar@loevy.com
11            311 North Aberdeen Street, 3rd Floor
              Chicago, Illinois  60607
12            312.243.5900

13    For Defendants Leann James and Janeen Fraser:
              BEAUGUREAU, HANCOCK, STOLL & SCHWARTZ, PC
14            N. Patrick Hall, Esq.
              phall@bhsslaw.com
15            302 East Coronado Road
              Phoenix, Arizona  85004
16            602.956.4438

17    For Defendant AB Staffing Solutions, LLC:
              SLUTES SAKRISON & ROGERS, PC
18            Tom Slutes, Esq.
              tslutes@sluteslaw.com
19            4801 East Broadway Boulevard, Suite 301
              Tucson, Arizona  85711
20            520.624.6691

21    Also present:  Jessie Barajas

22

23

24

25

Benally v. Coconino County, et al                    Bruce Charash MD

Page 4

1              BRUCE CHARASH, M.D.,

2    called as a witness herein, having been first duly

3    sworn to tell the truth, the whole truth, and nothing

4    but the truth, was examined and testified as follows:

5

6                        EXAMINATION

7    BY MR. HALL:

8         Q.    Good morning, Dr. Charash.

9               Is that how you pronounce your last name?

10        A.    It's easier to go Charash, like the word

11   "cherish" but Charash.

12        Q.    Okay.  Charash.

13              I'm Patrick Hall and I represent two of the

14   defendants, Janeen Fraser and Leann James.  And I'll be

15   asking questions and then I'll be followed by some

16   other lawyers today.

17              How many times have you given a deposition

18   before?

19        A.    You mean my entire life?

20        Q.    Yeah.

21        A.    I would say over 350 times in the last nearly

22   48 years -- in nearly 40 years.

23        Q.    Okay.  So I assume we don't need to go over

24   any of the rules?

25        A.    No.

Page 5

 1      Q.   All right.  Do you have your entire file with
 2  you today?
 3      A.    Well, I printed out just my copies of my own
 4  report, part of the investigative report and the
 5  autopsy, but I have, in my computer, the file.  I, you
 6  know, was electronically sent it.
 7      Q.   Okay.  Other than the materials listed in
 8  your initial report, have you reviewed anything else
 9  since authoring your rebuttal report?
10      A.    No.  I'm -- obviously the rebuttal report
11  includes the reports of the two defense expert --
12  defense experts, sorry, Dr. McMunn's -- McMunn's
13  report.
14      Q.   Okay.  And other than McMunn's report, have
15  you received anything else since the time of your
16  initial report?
17      A.    I have not.
18      Q.   Okay.  Let's see.
19           Let's just get into your education and
20  training.  Have you ever worked in a correctional
21  health care setting before?
22      A.    No.
23      Q.   Okay.  Have you reviewed any correctional
24  health care guidelines in preparation for your
25  deposition today?

Benally v. Coconino County, et al                    Bruce Charash MD

Page 6

1      A.    No.

2      Q.    Have you reviewed any correctional health

3    care guidelines at any point during your participation

4    in this case?

5      A.    No.

6      Q.    So I assume it's fair to say you don't have

7    any criticisms of any of the defendants based on any

8    guidelines or policies and procedures for correctional

9    health care?

10     A.    I will not be commenting on internal policies

11   and procedures, only on what standard of practice would

12   be.

13     Q.    Okay.  And would it be fair to say you don't

14   understand what the standard of practice would be for a

15   correctional health care?

16     A.    I disagree.

17           I think that in all fairness, on a certain

18   level, the standard of care is determined by the

19   facilities and technology and resources of any given

20   place.  So an institution like a prison has less

21   resources than a hospital.

22           I'm talking, though, about the most

23   fundamental standard of care of any health care worker

24   seeing a person with the complaints, that this patient

25   needs to be sent to an advanced center.

Benally v. Coconino County, et al                    Bruce Charash MD

Page 50

1   spend time.  She just made a snap decision that this
2   was anxiety.
3        Q.   Do you believe Nurse Fraser knew that Benally
4   was experiencing a life-threatening condition?
5        A.   A, no one can know.  You have to suspect.
6             And obviously her actions don't reflect -- I
7   mean, it would be pretty horrible if she suspected and
8   didn't do anything, so I don't even think that's in the
9   discussion.  That would be ridiculous.
10            But my point is you can't know he's
11  life-threatening.  You have to suspect that he might be
12  in a life-threatening condition.
13            By the way, I remembered -- and this is going
14  to sound absurd -- but I testified as -- when we --
15  when I was rebooting my computer, it hit me.  Literally
16  last week, I think, or early -- I testified for the
17  Loevy firm.  It wasn't with Ms. Makar, but I did a case
18  called -- well, actually it was -- I mean, it wasn't --
19  I think it's an incarceration case.
20       Q.   Okay.  And do you know the name of that case?
21       A.   Rogers.
22       Q.   Rogers?
23       A.   And I remember that I did a third case.  The
24  original case I did with them was called Benally, and I
25  think Ms. Makar and I worked on that one.

Benally v. Coconino County, et al                    Bruce Charash MD

Page 52

1    just had a name.  See, I'm having a hard day today.

2                    MS. MAKAR:  Boyer.

3                    THE WITNESS:  Boyer, thank you.

4                    I did a case called Boyer.  It was a jail

5    case, a woman who died in jail.  And I was deposed in

6    that case, but -- I wrote reports, but there was no

7    trial.

8                    Then I did a case with them a month ago,

9    around October 17th, with a deposition, and that was

10   the case called Rogers, and that was another

11   incarcerated person.

12                   And now this case, Benally, is my third case

13   for the Loevy firm and I'm being deposed today.  So

14   three cases, and today's the third out of three

15   depositions.

16       Q.    BY MR. HALL:  Okay.  So you've given

17   depositions in all three of the cases that you've

18   handled with the Loevy firm?

19       A.    You could say it's three out of three.

20       Q.    Okay.  As I mentioned earlier, I also

21   represent Defendant James and I don't see any opinions

22   against her in your initial report.

23                   Am I safe to assume that you didn't find

24   fault with any of her actions?

25       A.    Can you just remind me who she is, in case

Benally v. Coconino County, et al                    Bruce Charash MD

1    I'm just forgetting?  Who -- what was James' --

2    Ms. James' role?

3          Q.   Ms. James?

4          A.   Yes.

5          Q.   She was another nurse inside the correctional

6    health care.

7          A.   Okay.  That's what I thought, but I don't

8    remember seeing her.  I don't know to what degree she

9    interfaced that day.  I just can't remember what her

10   interface was.

11              I'm critical of the health care system.

12   Individually, yes, I have specific criticisms of

13   Nurse Fraser and Nurse Heath, but I don't remember --

14   but I didn't mention her in my report so I don't

15   remember what her role was.

16         Q.   Okay.  So is it -- it would be safe to say

17   you don't have any criticism of Defendant James?

18         A.   Unless she had a role in delaying getting an

19   ambulance, no.

20         Q.   Okay.  And as you sit here right now, you

21   don't even know what her involvement was?

22         A.   Yeah, I remember she was a nurse, but I don't

23   remember her -- what she was doing that day, if

24   she's -- you know, did she see him in the cell?  I

25   don't remember what her role was.

Page 65

1          Now I'm in private practice.  So when a

2     patient of mine gets admitted, I not only teach the

3     doctors in training but also the nurses about the

4     medicine and about, you know, nursing responsibilities.

5     But I don't -- I don't have an official nursing school

6     credential.

7          Q.    And the teaching of nurses is on a

8     case-by-case basis, kind of almost like a residency or

9     something; is that right?

10          A.    Well, it is now, although for the years --

11     the 20 years I was hired by hospitals, I gave formal

12     lectures to nurses.

13          Q.    Right.

14          So -- but you have not been, I guess, just in

15     the last -- well, at any time during your career, you

16     have not given, let's say, full time or most of your

17     time to teaching in an accredited nursing school; am I

18     correct?

19          A.    Yeah, we never had an affiliation with any

20     nursing school.  So I've never had a faculty

21     appointment at a nursing school.

22          MR. SLUTES:  All right.  Thank you, Doctor.

23     I have no other questions.

24          THE WITNESS:  Okay.

25          MS. MAKAR:  I don't have any questions.

Benally v. Coconino County, et al                    Bruce Charash MD

Page 68

1    please.

2              Just a condensed.

3              COURT REPORTER:  Okay.  Sounds good.

4              (Concluded at 1:35 p.m.)

5              (Exhibit 1 marked for identification.)

6

7                   (Signature Not Requested)
                     BRUCE CHARASH, M.D.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Benally v. Coconino County, et al                    Bruce Charash MD

Page 69

1   STATE OF ARIZONA      )
                          )   ss.
2   COUNTY OF MARICOPA    )

3

4           BE IT KNOWN that the foregoing deposition was

5   taken by me, WANDA J. CURRY, RMR, Arizona Certified

6   Reporter #50366; that BRUCE CHARASH, M.D., before

7   testifying, was duly sworn by me according to law; that

8   the proceedings were taken down by me in shorthand and

9   thereafter reduced to print by computer-aided

10  transcription under my direction; that deposition

11  review and signature was not requested; that the

12  transcript consisting of 69 pages is a full, true and

13  accurate transcript of all proceedings and testimony

14  had and adduced upon the taking of said deposition; and

15  preparation, production and distribution of the

16  transcript and copies comply with law and code as

17  required by ACJA 7-206(F)(3), all done to the best of

18  my skill and ability.

19          I FURTHER CERTIFY that I am in no way related

20  to nor employed by any of the parties hereto nor am I

21  in any way interested in the outcome hereof.

22          DATED at Phoenix, Arizona, November 30, 2025.

23

24  _____
    Wanda J. Curry, RMR    Bamford Reporting Service, Inc.
25  CR NO. 50366 (AZ)       CRF NO. R1051

# EXHIBIT 6



## CCSO

911 EAST SAWMILL ROAD FLAGSTAFF AZ 86001
9287745253

JIM DRISCOLL
SHERIFF

**Incident / Investigation Report**

Incident Number # : S2201164

| Incident Information |
|---|

| Reported Date : | Occured From : | Occured To : | Reporting Officer : |
|---|---|---|---|
| 04/18/2022 19:05 | 04/18/2022 19:05  MON | | FELDMAN, MINDY ELYSE (1040237) |

**Incident Location :**
951 E SAWMILL RD  FLAGSTAFF, 86001

**Lead Investigator :**
MEYER, TRISTAN G (1044882)

| Case Status : | Status Date : | Disposition : | Disposition Date : |
|---|---|---|---|
| INFORMATION OR NON-CRIME | 04/19/2022 21:17 | NOT APPLICABLE | 04/20/2022 13:01 |

| Associated Name Summary | | | |
|---|---|---|---|
| FULL NAME | TYPE | INVOLVEMENT | DOB |
| BENALLY, GABRIELLE | INDIVIDUAL | INVOLVED, OTHER | ▮ |
| BENALLY, GIBSON | INDIVIDUAL | VICTIM | ▮ |
| BENALLY, RENALDA | INDIVIDUAL | INVOLVED, OTHER | ▮ |
| GARCIA, JOSEPH ALBERT | INDIVIDUAL | WITNESS | ▮ |

| Offense Information | | | |
|---|---|---|---|
| Offense Code : | Offense Description : | Severity : | DV : | Attempt : |
| DEATH - NATURAL | DEATH - NATURAL | MISDEMEANOR | NO | COMPLETED |

FLAGSTAFF PD: LOEVY & LOEVY, ATTORNEYS AT LAW - CS

Incident Number : S2201164

BENALLY 000002

| Narrative | | | |
|---|---|---|---|
| Supplement # :<br>S2201164-0000 | Title :<br>MEF S22-01164 | Author :<br>FELDMAN, MINDY ELYSE (1040237) | Entered On :<br>04/20/2022 01:17 |

PATROL DR # S22-01164

DEPUTY MINDY FELDMAN #106

C208:  04/20/2022

ASSIGNMENT:

On 04/18/2022 at approximately 1905 hours I was assigned to investigate a death that occurred at the Coconino County Detention Facility (CCDF), 951 E Sawmill Rd.

INVESTIGATION:

I arrived at the Coconino County Sheriff's Office, 911 E Sawmill Rd, at approximately 1815 hours to begin my patrol shift. Upon my arrival I noticed Flagstaff Fire Department was outside of CCDF. Shortly after I noticed Guardian Medical had also arrived at CCDF.

FIRE:

Flagstaff Fire Department responded to the above incident. Please refer to their report, F22004382, for further information.

MEDICAL:

Guardian Medical responded to the above incident. Please refer to their report, 2205656, for further information.

INVESTIGATION CONTINUED:

At approximately 1905 hours I was informed an inmate, later identified as Gibson BENALLY, was deceased. Dispatch advised the detention staff had already notified the on-call Detective and the Medical Examiner.

CRIMINAL INVESTIGATION NOTIFICATION:

On 04/18/2022 at approximately 1905 hours I contacted the on-call Detective, Detective MEYER. Upon contact, Detective MEYER advised the detention staff notified him and the Medical Examiner. Please refer to Detective MEYER'S report for further.

Incident Number : S2201164

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW : CS

BENALLY 000003

MEDICAL EXAMINER NOTIFICATION:

The Medical Examiner was advised of the above incident by the detention staff. Please refer to the detention staff's reports, S22001163, for further.

INVESTIGATION CONTINUED:

Upon my arrival at CCDF a member of the detention staff brought me to the medical unit where GIBSON was located. After arriving in the medical unit I met with Detention Sergeant OBRIEN. Detention Sergeant OBRIEN showed me where GIBSON was located.

I observed crime scene tape marking off the area where GIBSON'S body was. GIBSON'S body was in front of cell E190. I noted GIBSON on his back with medical equipment hooked up to his body. I did not see anything else of note on GIBSON'S body.

After showing me where GIBSON was, I spoke with Detention Sergeant OBRIEN. The following is a synopsis of my interview with Detention Sergeant OBRIEN.

INTERVEIW WITH DETENTION SERGEANT OBRIEN:

Detention Sergeant OBRIEN advised he was not the first detention staff on scene. Detention Sergeant OBRIEN advised Detention Sergeant WAGONER was the first unit to arrive. Detention Sergeant OBRIEN advised GIBSON was originally in Fpod, cell F300, and was complaining of dizziness and shortness of breath. Detention Sergeant OBRIEN advised he moved GIBSON to the medical unit E190 at approximately 1745 hours on 04/18/2022 for closer observation. Detention Sergeant OBRIEN stated approximately 15 minutes after being moved to the medical unit Detention Sergeant WAGONER conducted a check on GIBSON and found him unresponsive. Detention Sergeant OBRIEN advised CPR was immediately started. Detention Sergeant OBRIEN advised CPR was in progress when he showed up. Detention Sergeant OBRIEN mentioned multiple nurses saw GIBSON throughout his time in CCDF due to the medical complaints he made. Detention Sergeant OBRIEN mentioned Detention Nurse FRASER saw him approximately two times while GIBSON was in Fpod. Detention Sergeant OBRIEN thought GIBSON possibly had a panic attack. Detention Sergeant OBRIEN advised he believed GIBSON was pronounced deceased at approximately 1839 hours. Detention Sergeant OBRIEN advised there were approximately eight other individuals in Fpod with GIBSON and GIBSON was booked into CCDF on 03/24/2022 at approximately 1200 hours. Detention Sergeant OBRIEN suggested I contact Detention Sergeant WAGONER, Detention Nurse FRASER, and Detention Nurse HEATH for more information. See Detention Sergeant OBRIEN'S report, S2201163, for further information.

INVESTIGATION CONTINUED:

I contacted Detention Nurse FRASER and Detention Nurse HEATH next who were still in the medical unit. The following is a synopsis of my interviews with the Detention Nurses.

INTERVIEW WITH DETENTION NURSE FRASER:

Detention Nurse FRASER advised GIBSON had been complaining of medical issues since last Thursday 04/14/2022. Detention Nurse FRASER stated she saw GIBSON around 1700 on 04/18/2022 for complaints of being dizzy. Detention Nurse FRASER advised GIBSON'S vitals were all at the correct levels. Detention Nurse FRASER stated she checked GIBSON'S blood pressure three times and it did not

FLAGSTAFF PD; LOEVY & LOEVY: ATTORNEYS AT LAW; CS

Incident Number : S2201164

BENALLY 000004

appear to be elevated. Detention Nurse FRASER also checked GIBSON'S Oxygen (O2) levels which appeared to be the correct levels. Detention Nurse FRASER mentioned GIBSON'S pulse was slightly elevated, but she believed it was due to him hyperventilating. Detention Nurse FRASER advised GIBSON to take deep breaths which lowered his pulse to a correct level. Detention Nurse FRASER mentioned GIBSON stated he was not drinking enough water. Detention Nurse FRASER stated GIBSON was taking medication for ████████████████ ██████████████████. Detention Nurse FRASER advised she had no further information to provide. This ended my contact with Detention Nurse FRASER.

It was later found out GIBSON was on ████████████, for a previous back injury. In addition GIBSON was taking ████████████ his blood pressure.

INTERVIEW WITH DETNETION NURSE HEATH:

Detention Nurse HEATH advised after she was requested to respond to help GIBSON she brought the AED and began CPR. Detention Nurse HEATH mentioned she also started O2. Detention Nurse HEATH advised she performed multiple rounds of CPR on GIBSON and believed he possibly went into cardiac arrest. Detention Nurse HEATH stated she saw GIBSON in Fpod for medical complaints on 04/17/2022 at approximately 1900 hours and he had not requested to be seen again until 04/18/2022 at approximately 1700 hours. Detention Nurse HEATH advised she did not believe GIBSON was seen by any Detention nurses between those two time frames. Detention Nurse HEATH had no further information to provide. This ended my contact with Detention Nurse Heath.

INVESTIGATION CONTINUED:

I was brought back to Intake to Interview Detention Sergeant WAGONER next. While being brought to intake, Detective MEYER had arrived and was going to the medical unit to see the deceased. The following is a synopsis of my interview with Detention Sergeant WAGONER.

INTERVIEW WITH DETENTION SERGEANT WAGONER:

Detention Sergeant WAGONER advised he went to complete a check on GIBSON at approximately 1806 hours on 04/18/2022 and noticed GIBSON was laying face down on the bed with an arm hanging over the side. Detention Sergeant WAGONER stated something along the lines of "It did not look like he laid that way on purpose." Detention Sergeant WAGONER stated he did not see GIBSON moving and appeared to not be breathing. Detention Sergeant WAGONER advised at approximately 1808 hours he called out "code" to the nurses and began CPR. Detention Sergeant WAGONER stated the nurses arrived to help him provide aid to GIBSON. Detention Sergeant WAGONER advised he would retrieve the security footage for the incident as well as the security footage in Fpod before GIBSON was moved to medical. Detention Sergeant WAGONER uploaded the security footage to his report, S2201163. Please see Detention Sergeant WAGONER'S report for further information.

INVESTIGATION CONTINUED:

I went back to the medical unit to meet with Detective MEYER. The Medical Examiner showed up shortly after. Detective MEYRE and the Medical Examiner took pictures of the body. I provided the medical examiner with a yellow tag and she took custody of the deceased.

This ended my involvement in the case.

BODY CAMERA:

████████████

Incident Number : S2201164

FLAGSTAFF PD: LOEVY & LOEVY, ATTORNEYS AT LAW: CS

**BENALLY 000005**

The investigation was recorded on my department issued body camera. Please refer to the video for more information and detail.

ENCLOSURES:

MVD Information for Gibson BENALLY

DISPOSITION:

Referred to CI.

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEY'S AT LAW : CS

Incident Number : S2201164

BENALLY 000006

| Supplement # :<br>S2201164-0001 | Title :<br>MEYER SUPP A | Author :<br>MEYER, TRISTAN G (1044882) | Entered On :<br>04/28/2022 13:19 |
|---|---|---|---|

CCSO CI DR# S22-01164

OFFICER: DETECTIVE TRISTAN MEYER #43

SUPERVISOR: SERGEANT ETHAN MITKOWSKI #25

INVESTIGATION CONTINUED:

On 04/18/22 at approximately 1856 hours, I was contacted as the on-call detective by Detention Sergeant WAGONER and notified of a death investigation in the medical unit at the Coconino County Detention Facility. WAGONER told me that the deceased subject had recently been moved to the medical unit in a single cell and that the death appeared to be medical event related. I was advised that the deceased person was Gibson BENALLY and that the Medical Examiner's Office had already been notified of the incident.

I was subsequently contacted by Deputy FELDMAN, who advised that she had been notified of the death by dispatch and would be responding to take the initial report.

I arrived at the Coconino County Detention Facility at approximately 1930 hours and contacted Deputy FELDMAN, who advised me of the initial investigative work she had already completed, refer to Deputy FELDMAN's original report for further information. I was then brought to the medical unit by detention staff and made the following scene and body observations.

SCENE/BODY OBSERVATIONS:

I noted the doorway entering the medical unit was sealed with crime scene tape and that approximately half the medical unit hallway was cordoned off with crime scene tape. I observed GIBSON to be lying on his back in the medical unit hallway just outside medical unit room # E190. I noted GIBSON appeared to be a middle aged Native American male wearing a Coconino County Detention Facility issued inmate jumpsuit. I observed evidence of medical intervention in the form of a tube inserted into GIBSON's mouth, AED/lead pads attached to his chest and abdomen and what appeared to be a pic line inserted into his left leg. I noted GIBSON's jumpsuit to be opened at the top to allow access to his chest area, the legs of his jumpsuit appeared to have been cut by responding medical personnel. I looked GIBSON's body over in the location I found him and did not observe any notable injuries or sources of blood emanating from his person. In looking at the bottom of his feet, I did observe a small spot of dried red in color liquid consistent with blood on the bottom of his right toes. In looking at his hands and arms, I did not see any injuries that would be consistent with defensive wounds.

Upon entering dorm E190, I observed there to be a cart containing lifesaving equipment just inside the dorm door. I

FLAGSTAFF PD, LOEVY & LOEVY: ATTORNEYS AT LAW : CS

Incident Number : S2201164

noted none of GIBSON's personal property in the dorm. In looking at GIBSON's bed (where I was advised he had been discovered) I noted a small amount of liquid containing food particles, consistent with vomit. On the right side of the dorm wall, I saw two spots of dried red in color liquid consistent with blood. Detention staff subsequently brought my attention to a detention facility box containing GIBSON's personal property. I was advised that this property had been brought with him when he was transported to the medical unit, but had not been provided to him yet due to the short time he had been in the medical unit.

INVESTIGATION CONTINUED:

Detention staff subsequently advised me that GIBSON had been booked into the detention facility on 03/24/22 and that he had been moved to the medical unit approximately 30 minutes prior to being discovered unresponsive in his cell.

I subsequently looked through GIBSON's personal property to see if there was anything in there that may have contributed to his death. I did not locate anything aside from commissary related items, legal paperwork and detention facility issued property. This property was subsequently provided to detention facility staff, I was later advised that it had been secured in temporary evidence for safekeeping purposes.

During my on-scene investigation, I was contacted by Detention Lieutenant HOVER and provided with GIBSON's detention facility medical records, these records will be enclosed with this supplement.

While on scene, Medical Examiner's Office Forensic Investigator HAMANN arrived on scene to complete her on scene investigation.

During this time, I contacted the other inmates housed in the medical unit, identified as Carletta TAFOLLA, Nicole CONLIN and Narinder SINGH to ask if they had any information to share regarding this investigation. Inmates TAFOLLA and CONLIN were in bed upon contact and indicated they had been sleeping. Inmate SINGH did not have any information to add to the investigation. These contacts were recorded on Deputy FELDMAN's body worn camera.

After HAMANN had completed her initial on scene investigation, GIBSON's body was rolled over, I made the following observations.

BODY OBSERVATIONS CONTINUED:

Upon viewing GIBSON's back and neck/back of the head areas, I did not observe any injuries of note. I did not note any sources of blood emanating from his person.



Incident Number : S2201164

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW: CS

INVESTIGATION CONTINUED:

Custody of GIBSON's body was subsequently turned over to Forensic Investigator HAMANN.

While on scene, Deputy FELDMAN provided me information that the detention facility had been contacted by a concerned party advising that she was GIBSON's daughter and asking about his status following his medical incident. Deputy FELDMAN advised that the name of the potential daughter was unknown. She subsequently provided me with a potential contact number for this person as well as the contact information from a Renelda BENALLY, who GIBSON had been contacting by phone while at the jail.

PHOTOGRAPHS:

During my on-scene investigation, I took photograph #s 1-59 with my department issued digital camera. These photographs have been downloaded to the Criminal Investigations shared drive.

INVESTIGATION CONTINUED:

I subsequently conducted OnCall research for GIBSON and located Flagstaff Police Department report # P17-11714. Upon reviewing this report, I noted that RENELDA had been the reporting party for GIBSON being a missing person, this report identified her as his daughter. I was subsequently advised that RENELDA was again contacting the Detention Facility by phone requesting an update on the status of her father.

At approximately 2116 hours, I spoke with RENELDA by telephone and conducted next of kin notification with her. It should be noted that RENELDA was extremely distraught with the news of her father's death, so I was unable to provide her basic information about the disposition of GIBSON's remains. This contact was recorded, the recording has been downloaded to the Criminal Investigations shared drive.

At approximately 2141 hours, I received a phone call from GIBSON's other daughter, verbally identified as Gabrielle BENALLY, and was able to provide her further information regarding the incident. This contact was recorded, the recording has been downloaded to the Criminal Investigations shared drive.

On 04/19/22, I reviewed the Inmate Log Report regarding the RFID log for GIBSON, which documented the security checks performed on GIBSON on each day he was at the Detention Facility. I noted this log documented 61 checks on 04/14/22, 48 checks on 04/15/22, 46 checks on 04/16/22, 53 checks on 04/17/22 and approximately 52 checks on 04/18/22. A copy of this Inmate Log Report was downloaded to the Criminal Investigations shared drive.

Incident Number : S2201164

FLAGSTAFF PD; LOEVY & LOEVY; ATTORNEYS AT LAW; CS

On 04/20/22, I conducted Telmate research regarding calls GIBSON had placed while at the Detention Facility. I noted that the last call he had placed was on 04/07/22. In reviewing this call, GIBSON did not complain of any medical symptoms similar to the symptoms he experienced during this incident. I then searched for any text messages GIBSON may have sent or received while in custody, I did not locate any.

I then searched the suspected phone numbers for GIBSON's family through the Telmate system and located two phone calls placed on 04/18/22 to phone number associated with a person who was unidentified in the Telmate system. These calls were placed from an inmate who verbally identified himself on the calls as "Roman BEGAY". In reviewing the calls, BEGAY appears to be speaking with one of GIBSON's family members. BEGAY notifies the suspected family member of GIBSON's medical event. These two calls have been downloaded to the Criminal Investigations shared drive. I also noted an additional phone call placed on 04/19/22 from inmate Joseph GARCIA's Telmate profile to the suspected family member, in this call, GARCIA indicates that his bunk was near GIBSON's bunk.

I subsequently reviewed GIBSON's detention facility medical records. A copy of these medical records will be enclosed with this supplemental report.

MEDICAL RECORD REVIEW:

I reviewed GIBSON's chart notes and observed an entry dated 04/18/22 at 0025 hours. This entry was entered by Detention Facility Nurse HEATH and documented that nursing staff was called to GIBSON's bunk for reports that he was feeling very weak and dizzy. GIBSON was subsequently evaluated, encouraged to rest and notify medical staff if his status changed.

I observed another chart note entry dated 04/18/22 at 1753 hours entered by Nurse FRASER. This entry documented that nursing staff had been called to F-Pod at 1650 hours regarding GIBSON. GIBSON had advised that he had been feeling poorly since 04/14 and that he was dizzy. He was evaluated and then walked to the dorm table to eat dinner. The chart note documented that the responding nurse was called back to the pod a short time later for GIBSON complaining of being dizzy. The chart notes documented that upon contacting GIBSON, he was hyperventilating, but that his breathing slowed during the contact. The chart notes documented that he was evaluated again during this contact. The chart note documented that minutes later, nursing staff was contacted and advised that GIBSON was complaining of chest pain and was subsequently transported out of the dorm to the medical unit by wheelchair. This chart note documented that upon leaving the pod, GIBSON's breathing slowed and he appeared to relax.

I noted an additional chart note entry dated 04/18/22 at 1914 hours by Nurse FRASER, this entry documents the detention facility medical staff's response to GIBSON's medical emergency.

In GIBSON's medical records, I saw an Inmate Request For Health Services form dated 04/14/22. I noted that this form mentioned medications for his back pain, but did not mention any other medical issues.

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW: CS

Incident Number : S2201164

BENALLY 000010

INVESTIGATION CONTINUED:

On 04/21/22 at approximately 1125 hours, I contacted Joseph GARCIA in an intake intoxilyzer room and conducted an interview with him.

INTERVIEW WITH JOSEPH GARCIA:

This interview was recorded, the recording has been downloaded to the Criminal Investigations shared drive. The following is a synopsis of the interview, the recording should be consulted directly for further information.

I told GARCIA that I wanted to ask him some questions about GIBSON and confirmed that he had been on the bunk next to GIBSON. GARCIA indicated that GIBSON's chest had been hurting him and that nursing staff had come down to evaluate him a couple of times. GARCIA then spoke of a previous incident where GIBSON had fallen when he was coming out of the shower. He indicated that GIBSON's medical incident had occurred around dinner time and that he had been complaining of blacking out. GARCIA indicated that he believed that he was having a heart attack or a stroke. He described that nursing staff had responded, evaluated him, advised he was ok and then left. GARCIA indicated that GIBSON had gotten worse, so the same nurse had responded again, had evaluated him again and said that he was ok. He told me that GIBSON had gotten even worse and a different nurse had responded with a wheelchair and had removed him from the dorm. I asked GARCIA when GIBSON had previously fallen, he advised that he had fallen the day before he had been removed from the dorm at approximately 1500-1530 hours. I asked what symptoms GIBSON had been complaining of during the incident, he told me that he had been having trouble breathing and that his chest hurt.

INVESTIGATION CONTINUED:

During the course of this investigation, I reviewed detention facility video surveillance footage and body worn camera footage for this incident. This video footage has been downloaded to the Criminal Investigations shared drive.

VIDEO SURVEILLANCE REVIEW:

Upon reviewing the video of the medical hallway, I noted that GIBSON was brought to medical cell number E190 at approximately 1739 hours. At this time, GIBSON can be heard with labored breathing and making incoherent noises. At approximately 1741 hours, Sergeant OBRIEN closes the cell door and leaves the area. As he is leaving, he can be heard speaking with a detention facility nurse. A short time later, the nurse walks past GIBSON's cell to put the wheelchair he was transferred to the unit in away. At approximately 1751 hours, I male inmate can be heard making a moaning type of noise, it is not certain if this inmate was GIBSON or another male inmate in the medical unit.

At approximately 1806 hours, Sergeant WAGONER arrives in the medical unit to conduct a security check. After visually observing GIBSON for approximately one minute, WAGONER begins attempting to gain his attention by knocking on the cell door. A few seconds later, WAGONER enters the cell and begins calling GIBSON's name. WAGONER then quickly walks out of the cell and attempts to gain a nurse's

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW: CS

Incident Number : S2201164

BENALLY 000011

attention, advising that there was a problem. WAGONER then returns to the cell and shouts GIBSON's name. A few seconds later (at approximately 1808 hours), WAGONER exits the cell and advises "Uh, Code 3" and motions with his hands for nursing staff to respond to the cell. A female voice responds "Code 37", WAGONER replies "Yeah, I think he's gone." A few seconds later, nursing staff arrives at the cell with lifesaving medical equipment.

At approximately 1809 hours, nursing staff can be heard advising to call 911. The video then shows multiple detention facility staff in GIBSON's cell, an AED can be heard being utilized. At approximately 1812 hours, detention officers remove GIBSON from the cell and place him in the medical unit hallway. Nursing staff then begins performing CPR and rescue breaths on GIBSON. Detention officers and nursing staff alternate performing lifesaving measurers until EMTs from the Flagstaff Fire Department arrive at approximately 1821 hours and subsequently take over care of GIBSON. At approximately 1846 hours, an EMT indicates to stop lifesaving measures (it should be noted that the time of death was called as 1839 hours on the video surveillance).

Upon reviewing the F-300 dorm surveillance video, GIBSON can be seen at his bunk initially. At approximately 1655 hours, he stands up. A short time later, he lies back down on his bunk. At approximately 1656 hours, an inmate sitting at a dayroom table stands up and goes to GIBSON's bunk. At approximately 1657, the inmate pushes the pod emergency call button. At approximately 1658 hours, the inmate advises that he has an emergency with one of the inmates. At approximately 1659 hours, Sergeant OBRIEN enters the dorm and asks inmate Joseph GARCIA what is going on, GARCIA advises that he (GIBSON) is having the same problems he had last night and that he was blacking out. OBRIEN uses the radio to notify nursing staff and exits the housing dorm. At approximately 1703 hours, a nurse arrives with another detention officers and proceeds to GIBSON (who is at his bunk) while OBRIEN distributes dinner trays to the dorm. At approximately 1704 hours, OBRIEN enters the dorm and proceeds to BENALLY's bunk area with the nurse and other detention officer. At approximately 1709 hours, GIBSON is escorted to the dorm table area and is provided a dinner tray. At approximately 1710 hours, the nurse and detention officers leave the dorm.

A short time later, other inmates gather around GIBSON and appear to be trying to assist him. At approximately 1711 hours, an inmate runs to the dorm door, pushes the button and knocks, less than 30 seconds later, a detention officer runs into the dorm and proceeds to GIBSON. At approximately 1713 hours, OBRIEN enters the dorm with the same detention nurse that previously responded. The inmates are asked if GIBSON fell, an inmate then advises that he can not stand up. The detention nurse then re-evaluates GIBSON at the dorm table he is sitting at. During the evaluation, GIBSON places his head on the table multiple times, his breathing can be heard on the dorm audio recording. At approximately 1720 hours, the detention officers assist GIBSON back to his bunk. At approximately 1721 hours, the detention officers and nurse exit the dorm.

At approximately 1725 hours, GIBSON can be heard breathing loudly at his bunk. At approximately 1732 hours, an inmate walks from GIBSON's bunk to the door, pushes the emergency button and advises that GIBSON is saying that his chest pains are getting worse. At approximately 1736 hours, a different detention nurse enters the dorm with a wheelchair and removes him from the dorm.

BODY WORN CAMERA REVIEW:

Upon reviewing the portion of Lieutenant HOVER's body worn camera that was filmed from inside GIBSON's cell, I observed detention officers and nursing staff administering CPR and applying the AED to GIBSON in the cell. Approximately two and a half minutes into the video, HOVER and a detention sergeant remove GIBSON from the cell for more room to perform lifesaving measures.

INVESTIGATION CONTINUED:

Over the course of this investigation, I reviewed the original and supplemental reports for detention staff authored reports (CCSO report # S22-01163) and Deputy FELDMAN's original report for this case.

ENCLOSURES:

Incident Number : S2201164

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW: CS

1. Copy of Gibson BENALLY's detention facility Medical Records (53 pages)

DISPOSITION:

Case open, pending final autopsy report from Medical Examiner's Office.

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW : CS

Incident Number : S2201164

BENALLY 000013

| Supplement # :<br>S2201164-0002 | Title :<br>MEYER SUPP B | Author :<br>MEYER, TRISTAN G (1044882) | Entered On :<br>06/10/2022 11:20 |

CCSO CI DR# S22-01164

OFFICER: DETECTIVE TRISTAN MEYER #43

SUPERVISOR: SERGEANT ETHAN MITKOWSKI #25

INVESTIGATION CONTINUED:

On 06/09/22, I received a Coconino County Medical Examiner's Office Final Autopsy Protocol report. This report documented BENALLY's cause of death as "Pulmonary thromboembolism" due to "Deep venous thrombosis, left lower leg" with other significant conditions of "Chronic alcohol abuse; hypertension; left leg ulcer with abscess formation". His manner of death was documented as "Natural". Refer to enclosed copy of Coconino County Medical Examiner's Office Final Autopsy Protocol report for further information.

ENCLOSURES:

1. Copy of Coconino County Medical Examiner's Office Final Autopsy Protocol report (17 pages)

DISPOSITION:

Case closed, non-crime.

FLAGSTAFF PD: LOEVY & LOEVY: ATTORNEYS AT LAW: CS

Incident Number : S2201164

BENALLY 000014