Lee Phillips
Law Office of Lee Phillips, P.C.
209 N. Elden Street
Flagstaff, AZ 86001
928.779.1560
928.779.2909
leephillips@leephillipslaw.com

Arthur Loevy *admitted pro hac vice*
Locke Bowman *admitted pro hac vice*
Maria Makar *admitted pro hac vice*
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
Tel: (312) 243-5900
Fax: (312) 243-5902
makar@loevy.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Renalda Benally, as Administrator of the Estate of Gibson Benally, and on her own behalf, | |
| Plaintiff, | No. 3:24-cv-08049-MTL-MTM |
| vs. | Plaintiff's RESPONSES to Defendants AB STAFFING, DAYNE HEATH, FATIMA LAH, AND TYLER TATE'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| Coconino County *et al.*, | |
| Defendants. | |

Plaintiff, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby submit the following Response to the AB Staffing Defendants' Statement of Facts in support of their Motion for Summary Judgment.

1

1. AB Staffing is a temporary staffing company in the business of recruiting qualified medical personnel to government healthcare clients. (*See* Ex. A; Supplemental Staffing Agreement attached.)

   **Undisputed.**

2. AB Staffing entered into a contract with Coconino County Jail where it would provide medical personnel including Defendants Fatima Lah, NP; Tyler Tate, LPN; and Dayne Heath, RN to work at Coconino County Jail. (*See Id*.)

   **Undisputed.**

3. Decedent Gibson Benally was admitted into Coconino County Jail on March 24, 2022, and underwent initial medical screening on March 25, 2022. (*See* Ex. B; Coconino County Jail Medical Records at 000100 attached.)

   **Undisputed.**

4. The decedent had a history of hypertension and a standing directive was documented indicating "check BP daily x 3 days; if any BP readings are elevated per our standing directives (> 140/90), generate a task to continue BP checks 2 x per week x 2 weeks and enter a task for medical provider to review BP at the end of that 2 week period." (*See Id.* at 000104.)

   **Undisputed that Defendant James added this task to Mr. Benally's chart on March 26, 2022.**

   **Disputed that this directive was followed. Mr. Benally's sitting blood pressure was checked only once/day on March 25, 26, 27, and 28. Although multiple readings were >140/90, his blood pressure was not checked again until April 18, 2022. ECF 151-1 at 15-16.**

5. On March 26, 2022, medical received a verbal order to administer Lisinopril 30 mg which was given at 0840 hours. (*See Id.* at 000097.)

   **Undisputed that Defendant James administered Mr. Benally's first dose of lisinopril on March 26, 2022, at 0840 hours.**

6. The medical record and investigative report indicates that Defendant Fatima Lah, NP, was not present and working at Coconino County Jail on the night of April 17, 2022 and on April 18, 2022. (*See generally,* Ex. B and Ex. C attached.)

   **Undisputed.**

7. On April 17, 2022 at approximately 1900 hours Defendant Dayne Heath, RN, saw the decedent in F-pod for medical complaints. (*See* Ex. C; Coconino Investigation Report at 000005 attached.)

   **Undisputed.**

8. On April 18, 2022 at 00:25, Defendant Heath documented "Called to 1/M bunk, reports feeling very weak and dizzy. Blood glucose 166, BP 142/106 HR 100. No sis of distress, no diaphoresis, no vomiting, or blurred vision. Encouraged 1/M to rest on L side and to notify medical staff for any status change. 1/M verbalized understanding." (*See* Ex. B at 000106.)

   **Undisputed.**

9. Nurse Heath stated that the decedent had not requested to be seen again until April 18, 2022 at approximately 1700 hours. (*See* Ex. C at 000005.)

   **Undisputed that Nurse Heath made this claim.**

10. On April 18, 2022, the decedent was seen on surveillance standing up and then going back to lay on his bunk at 1655 hours. (*See* Ex. C at 000012.)

    **Undisputed, but clarify that Mr. Benally is noted to "stand[] up" then "a short time later, he lies back down on his bunk" without walking away or going back to his bunk. ECF 149 at 44.**

11. At approximately 1657, an inmate pushed the pod emergency call button upon observing the decedent lying in his bunk. (*See Id.*)

    **Disputed. At approximately 1657, an inmate pushed the pod emergency button after approaching Mr. Benally's bunk and observing that he is "having the same problems he had last night and that he is blacking out." ECF 149 at 44.**

12. At approximately 1658 hours, the inmate advised that he had an emergency with one of the inmates, referring to the decedent. (*See Id.*)

    **Undisputed.**

13. At approximately 1659 hours, Sergeant O'Brien was informed by the inmate that the decedent was having the same problems he had last night and that he was blacking out. (*See Id.*)

    **Undisputed.**

3

14. Based on this information, Sergeant O'Brien notified nursing staff and exited the housing dorm. (*See Id.*)

    **Undisputed, but clarify that Sergeant O'Brien's reports to nursing staff were also based on his own observations of Mr. Benally and Mr. Benally's complaints. ECF 149 at 26; SOAF ¶25.**

15. At approximately 1703 hours, Co-Defendant Janeen Fraser, RN, arrived at the housing dorm with detention officers and proceeded to examine the decedent. (*See Id.*)

    **Disputed that Nurse Fraser conducted a medically acceptable medical examination. ECF 149 at 68; ECF 149 at 77.**

16. Co-Defendant Fraser documented that at this time, the decedent reported that he started feeling poorly on Thursday (April 14) and stated that he felt dizzy. (*See* Ex. B at 000105.)

    **Disputed as to when Mr. Benally reported that he had been feeling ill. Mr. Benally reported on April 14, 2022, that he was feeling ill. SOAF ¶10.**

17. Co-Defendant Fraser documented the following: "BP was 119/77, P 116, 02 sats 98%. 1/M was instructed to sit up on the edge of the bed. BP 115/77, P 100. He was then instructed to stand with a BP of 114/70, P 121 […] He was reassured that his vitals signs were normal. (*See Id.*)

    **Undisputed.**

18. At approximately 1709 hours, the decedent was escorted to the dorm table area and was provided a dinner tray. (*See* Ex. C at 000012.)

    **Undisputed.**

19. At approximately 1710 hours, Co-Defendant Fraser and the detention officers left the dorm. (*See Id.*)

    **Undisputed.**

20. At approximately 1711 hours, an inmate ran to the door, pushed the emergency button and less than 30 seconds later, Sergeant O'Brien ran into the dorm to examine the decedent. (*See Id.*)

    **Undisputed.**

21. Sergeant O'Brien then reported to Co-Defendant Fraser that the decedent was feeling dizzy. (*See Id.*)

    **Undisputed.**

22. At approximately 1713 hours, Sergeant O'Brien and Co-Defendant Fraser re-entered the dorm and an inmate then advised that the decedent could not stand up. (*See Id.*)

    **Undisputed.**

23. Co-Defendant Fraser then re-evaluated the decedent at the dorm table he was sitting at where he was found to be hyperventilating. (*See* Ex. B at 000105.)

    **Disputed that Nurse Fraser conducted a medically acceptable medical evaluation. ECF 149 at 68; ECF 149 at 77.**

24. Co-Defendant Fraser found that the decedent's BP was 148/65, P 62, 02 sats 92%. (*See Id.*)

    **Undisputed.**

25. The decedent was repeatedly encouraged to slow down his breathing. (*See Id.*)

    **Undisputed.**

26. Once the decedent was more calm, Co-Defendant Fraser found that his BP was 107/79, P 51. (*See Id.*)

    **Disputed that Mr. Benally calmed down or that his drop in blood pressure and pulse was a result of calming down. ECF 149 at 68; ECF 149 at 77.**

27. At approximately 1720 hours, the detention officers assisted the decedent back to his bunk. (*See* Ex. C at 000012.)

    **Undisputed.**

28. At approximately 1721 hours, the detention officers and Co-Defendant Fraser exited the dorm. (*See Id.*)

    **Undisputed.**

29. At approximately 1725 hours, the decedent could be heard breathing loudly at his bunk. (*See Id.*)

**Undisputed.**

30. At approximately 1732 hours, an inmate pushed the emergency button and advised that the decedent was saying that his chest pains are getting worse. (*See Id.*)

**Undisputed.**

31. Sergeant O'Brien informed the medical department that the decedent was having chest pains. (*See* Ex. B at 000105.)

    **Disputed. Sergeant O'Brien informed the medical department that Mr. Benally was having worsening chest pain. ECF 151-1 at 14, 55, 63.**

32. At approximately 1736 hours, Defendant Dayne Heath, RN, who was not yet on shift, entered the dorm with a wheelchair and removed the decedent from the dorm for closer observation. (*See* Ex. C at 000012); (Ex. D; Heath Testimony at 9:25-10:2 attached.)

    **Disputed that Mr. Benally was removed from his dorm for the purpose of observation. Mr. Benally was not under observation following his removal from the dorm. SOAF ¶63.**

33. On the way to medical cell number E190, Defendant Heath testified that the decedent was having some shortness of breath, but was able to talk, and she did not notice the decedent being diaphoretic. (*See* Ex. D at 14:14-15:16.)

    **Undisputed that is Nurse Heath's deposition testimony.**

34. At approximately 1739 hours, Defendant Heath and the decedent arrived at the medical cell number E190. (*See* Ex. C at 000011.)

    **Undisputed.**

35. Once at the pod, Defendant Heath testified that the decedent was able to stand but observed him to be having some pain and shortness of breath. (*See* Ex. D at 14:14-15:16.)

    **Disputed. The cited deposition testimony does not support the statement. Nurse Heath did not evaluate Mr. Benally or observe him alive after leaving him in the medical unit. ECF 151-1 at 56.**

36. Defendant Heath believed that because the decedent's vital signs were normal that he was having an anxiety attack. (*See Id.* at 22:3-8.)

> **Disputed. There is evidence that Nurse Heath believed Mr. Benally was experiencing an acute, physiological medical condition. SOAF ¶42.**

37. Surveillance footage indicated that at this time the decedent could be heard with labored breathing and was making incoherent noises. (*See* Ex. C at 000011.)

> **Undisputed that surveillance footage indicates that Mr. Benally had loud, labored breathing while in transit to the medical unit.**
>
> **Clarify that at approximately 5:51pm, a detainee in the medical unit was moaning so loudly that the sound was picked up by the jail's video cameras. SOAF ¶64. It can be inferred that this was Mr. Benally, considering there is no evidence in the record of another detainee moaning in the medical unit, and Mr. Benally had been making incoherent noises a short time prior. SOAF ¶64.**

38. At approximately 1741 hours, Sergeant O'Brien and Defendant Heath left the medical cell. (*See Id*.)

> **Undisputed.**

39. Defendant Heath testified that she returned back to the medical office and let Co-Defendant Fraser know that the decedent was in the medical cell. (*See* Ex. D at 16:7-12.)

> **Undisputed that is her testimony.**

40. At approximately 1806 hours, a detention officer arrived in the medical unit to conduct a security check and visually observed the decedent. (*See* Ex. C at 000011.)

> **Undisputed.**

41. At approximately 1808 hours, the detention officer exited the cell and notified the nursing staff of a "Code 3." (*See Id*. at 000011-12.)

> **Undisputed but clarify that the detention officer tried to get the nurses' attention prior to calling the Code 3. ECF 151-1 at 63; SOAF ¶70.**

42. At approximately 1808 hours, Defendants Tate and Heath, as well as Co Defendant Fraser arrived at the cell with lifesaving medical equipment. (*See Id.* at 000012.)

7

**Undisputed.**

43. At approximately 1809 hours, the nurses advised officers to call 911. (*See Id*.)

    **Undisputed that the "nursing staff can be heard advising to call 911," but clarify that the nurses' usual practice was followed here, which was to yell Code 3 and central control would call EMS. SOAF ¶71; SOAF ¶72.**

    **Clarify that the nurses did not advise central control of any information about the incident so they could relay it to emergency services, as was their usual practice. Ex. 1 at 3:20-25; Ex. 2 at 3:04-06; Ex. 3 at 3:13-23; Ex. 4 at 3:08-4:06.**

44. Detention officers and the nursing staff performed lifesaving measures until EMTs from the Flagstaff Fire Department arrived at approximately 1821 hours and subsequently took over care of the decedent. (*See Id*.)

    **Undisputed.**

45. At approximately 1846 hours, an EMT indicated to stop lifesaving measures. (*See Id*.)

    **Undisputed.**

46. The time of death was called at 1839 hours. (*See Id*.)

    **Undisputed.**

47. Plaintiff Renalda Benally was notified via telephone at 2116 hours of the decedent's death. (*See* Ex. C at 000009.)

    **Undisputed.**

48. Plaintiff filed a first amended complaint pleading the following claims against Defendants: medical negligence, wrongful death, survival, intentional infliction of emotional distress, and a section 1983 claim. (*See* Doc. 65.)

    **Undisputed.**

49. Plaintiff's standard of care expert Bruce Charash, MD is an internist with a cardiology specialty. (*See* Ex. E; Charash CV attached.)

    **Undisputed.**

50. Dr. Charash has disclosed an expert declaration and rebuttal report where he is not critical of the care and treatment of Defendants Lah, Tate, or AB Staffing but only addresses Defendant Heath's care and treatment of decedent on April 17, 2022 and April 18, 2022. (*See* Ex. F; Charash Report attached); (Ex. G; Charash Rebuttal attached); (*See* Ex. H; Charash Testimony at 53:12-13; 56:25-57:5 attached.)

    **Disputed. Dr. Charash is critical of the care Mr. Benally received, the individuals who had contact with Mr. Benally and delayed calling 911, and the "health care system" at the jail. ECF 151-1 at 48 (Charash Dep. at 53:03-54:17).**

51. Dr. Charash testified that he has never worked as a nurse in a correctional setting nor he has taught nurses at an accredited institution. (*See* Ex. H at 13:12-13; 64:15-65:21.)

    **Undisputed.**

52. Dr. Charash is critical of Defendant Heath's care and treatment of decedent on April 17, 2022 in that Defendant Heath should have rechecked his blood pressure again but he fails to connect this criticism to the decedent's death. (*See Id*. at 58:1-19.)

    **Disputed. Dr. Charash is critical of other aspects of Defendant Heath's care, including her decision not to call 911 in light of Mr. Benally's symptoms including high blood pressure. ECF 149 at 73-74. Dr. Charash opined only that Mr. Benally did not die of a hypertensive crisis. Ex. 5 at 49:14–59:01.**

53. A.R.S. § 12-2604 requires parties to retain a standard of care expert in the same specialty as the Defendant practitioner. *See Rasor v. Northwest Hosp., LLC*, 239 Ariz. 546, 567, ¶ 11, 373 P.3d 563 (App. 2016).

    **Disputed. A.R.S. § 12-2604 requires that the standard of care expert have the same specialty as the defendant in cases where the defendant is a specialist. There is no evidence that Defendants are specialists. SOAF ¶5 (Heath Dep. 11:08-19 testifying that on-duty nurses were responsible for any medical issue that arose).**

54. Plaintiff has not retained a Nurse Expert Witness who is critical of Defendant Lah, Tate, and Heath. (*See generally*, Ex. F and G.)

    **Undisputed.**

55. Plaintiff has not retained an expert witness who is critical of Defendant AB Staffing. (*See Id*.)

**Disputed. Dr. Charash is critical of the care Mr. Benally received, the individuals who had contact with Mr. Benally and delayed calling 911, and the "health care system" at the jail. ECF 151-1 at 48 (Charash Dep. 53:03-54:17).**

56. Defendants have retained Michael Munn, NP, as a standard of care expert who is supportive of the defendant's care and treatment. (*See* Ex. I; Munn Report attached.)

**Disputed. Dr. Munn has not disclosed opinions that are sufficiently developed or supported to show his position on the defendants' care and treatment.**

DATED: January 12, 2026                        RESPECTFULLY SUBMITTED,

                                               /s/ Maria Makar
                                               *One of Plaintiff's Attorneys*

Arthur Loevy *admitted pro hac vice*           Lee Phillips
Maria Makar *admitted pro hac vice*            Law Office of Lee Phillips, P.C.
Loevy & Loevy                                  209 N. Elden Street
311 N. Aberdeen Street                         Flagstaff, AZ 86001
Chicago, IL 60607                              Tel: (928) 779-1560
Tel: (312) 243-5900                            Fax: (928) 779-2909
Fax: (312) 243-5902                            leephillips@leephillipslaw.com
Makar@loevy.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, and copies were delivered electronically via the CM/ECF filing system to all parties of record.

/s/ Maria Makar
*One of Plaintiff's Attorneys*